1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT  OF TEXAS
2                            DALLAS DIVISION

3

4    SAMSUNG ELECTRONICS AMERICA,   §
     INC.,                          §
5                                   §
          Plaintiff,                §
6                                   §
     VS.                            §
7                                   §        CASE NO. 3:15-CV-04108-D
     YANG KUN "MICHAEL" CHUNG,      §
8    THOMAS PORCARELLO,             §
     YOON-CHUL "ALEX" JANG,         §
9    JIN-YOUNG SONG,                §
     ALL PRO DISTRIBUTING, INC.,    §
10                                  §
          Defendants.               §
11

12   ============================================================

13              TELEPHONIC STATUS CONFERENCE

14                      JULY 5, 2016

15

16                      VOLUME I OF I

17   ============================================================

18       On the 5th day of July, 2016, a Telephonic Status

19   Conference in the above-entitled and numbered cause came on to

20   be heard before the **Honorable Sidney A. Fitzwater,** United

21   States District Judge for the Northern District of Texas,

22   presiding.

23

24
     Proceedings reported by mechanical stenography; transcript
25   produced by computer.

Stacy Mayes Morrison
Official Court Reporter

```
 1                  VOLUME I (PAGES 1 - 26)

 2

 3              PROCEEDINGS FOR JULY 5, 2016

 4                                                        PAGE
```

```
 5   CAPTION...............................................    1

 6   INDEX.................................................    2

 7   APPEARANCES...........................................    3

 8   TELEPHONIC STATUS CONFERENCE..........................    5

 9   ROLL CALLED...........................................    5

10   COURT'S INTRODUCTION..................................    7

11   MR. MOSCOWITZ'S ARGUMENT..............................    8

12   MR. LOWENSTEIN'S ARGUMENT.............................   15

13   COURT'S OBSERVATIONS..................................   19

14   MR. MOSCOWITZ'S RESPONSE..............................   21

15   MR. LOWENSTEIN'S RESPONSE.............................   21

16   MR. ANSLEY'S RESPONSE.................................   22

17   COURT'S RULING........................................   22

18   MS. KELLOW'S ARGUMENT.................................   23

19   MR. CHOE'S COMMENT....................................   25

20   REPORTER'S CERTIFICATE................................   26
```

```
21

22

23

24

25
```

```
 1              A-P-P-E-A-R-A-N-C-E-S (VIA TELEPHONE)

 2

 3   FOR THE PLAINTIFF:           MR. JEFFREY J. ANSLEY,
                                  MR. JEFFREY S. LOWENSTEIN,
 4                                MR. BENJAMIN L. RIEMER, and
                                  MR. GREG KELMINSON
 5                                Bell, Nunnally & Martin, LLP
                                  Attorneys at Law
 6                                3232 McKinney Avenue,
                                  Suite 1400
 7                                Dallas, Texas  75204

 8

 9
     FOR DEFENDANT ALL PRO
10   DISTRIBUTING, INC.:          MR. BARRY A. MOSCOWITZ and
                                  MS. RACHAEL CHONG WALTERS
11                                Thompson, Coe, Cousins &
                                      Irons, LLP
12                                Attorneys at Law
                                  Plaza of the Americas
13                                700 N. Pearl St., 25th Floor
                                  Dallas, Texas 75201-2832
14
                                          AND
15
                                  MR. ARMEN G. MITILIAN
16                                Freeman, Freeman & Smiley, LLP
                                  Attorneys at Law
17                                1888 Century Park East
                                  Suite 1900
18                                Los Angeles, California  90067

19

20
     FOR DEFENDANT YOON-CHUL
21   "ALEX" JANG:                 MR. JASON EDWARD CHOE
                                  Choe Walker
22                                Attorneys at Law
                                  2000 Royal Lane, Suite 205
23                                Dallas, Texas  75229

24

25
```

```
 1   FOR DEFENDANT JIN-YOUNG          MS. V. ELIZABETH KELLOW
     SONG:                           Marshall & Kellow, LLP
 2                                   Attorneys at Law
                                     4099 McEwen STE 440
 3                                   Dallas, Texas  75244

 4

 5

 6   FOR DEFENDANT YANG KUN
     "MICHAEL" CHUNG:                MR. YANG KUN CHUNG
 7                                   Pro Se
                                     5506 Corot Ct
 8                                   Fairfax, Virginia  22032

 9

10

11   COURT REPORTER:
                                     MS. STACY MAYES MORRISON
12                                   Official Court Reporter
                                     205 E. 5th, LB #F13263
13                                   Amarillo, Texas  79101
                                     (806) 672-6219

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>**TELEPHONIC STATUS CONFERENCE**</u>

JULY 5, 2016

**(The following took place in chambers with all below-named parties present via telephone.)**

**THE COURT:** It's 5:15. This is Judge Fitzwater. The Court at this time is conducting a Telephonic Status Conference on the Motion to Compel of All Pro Distributing that was filed on May 24, 2016.

I'm going to begin by calling the roll of the attorneys who have indicated that they wish to participate in the conference, and then I'm going to give some housekeeping instructions that will help the court reporter.

Is Mr. Moscowitz on the line?

**MR. MOSCOWITZ:** Yes, Your Honor.

**THE COURT:** Ms. Walters?

**MS. WALTERS:** Yes, Your Honor.

**THE COURT:** Mr. Mitilian?

**(No response.)**

**MR. MOSCOWITZ:** Your Honor, this is Barry Moscowitz. I don't believe Mr. Mitilian is going to attend. I know he indicated he initially was going to, but I don't think he is any longer.

**MR. MITILIAN:** Actually, Barry, this is --

**MR. MOSCOWITZ:** Oh.

**MR. MITILIAN:** -- Armen Mitilian on behalf of All

1  Pro, and I am on the line.  I just dialed in.

2          MR. MOSCOWITZ:  Okay.  Thank you.

3          THE COURT:  Mr. Ansley?

4          MR. ANSLEY:  Yes, Your Honor.

5          THE COURT:  Mr. Lowenstein?

6          MR. LOWENSTEIN:  Yes, Your Honor.

7          THE COURT:  Mr. Riemer?

8          MR. RIEMER:  Yes, Your Honor.

9          THE COURT:  Mr. Kelminson?

10         MR. KELMINSON:  Yes, Your Honor.

11         THE COURT:  Mr. DeVoss?

12         MS. WALTERS:  Your Honor, this is Rachael Walters.

13  Mr. DeVoss just sent me an e-mail stating that he would not

14  participate in the hearing based on your statement that only

15  the parties who need to participate are those involved in the

16  Motion to Compel.

17         THE COURT:  Thank you.  Mr. Choe?

18         MR. CHOE:  Yes, Your Honor.

19         THE COURT:  Ms. Kellow?

20         MS. KELLOW:  Yes, Your Honor.

21         THE COURT:  Mr. Chung?

22         MR. CHUNG:  Yes, Your Honor.

23         THE COURT:  The court reporter will be assisted in

24  making her record if Counsel will identify themselves before

25  they speak.

1          If we get down to the point where it's largely two

2    attorneys addressing the Court, then you won't need to do that

3    anymore because she can differentiate between you, but until

4    that's clear, I'll ask that you identify yourself so that the

5    record will be accurate.

6          Let me begin by stating that the purpose of this

7    status conference is to attempt to resolve, to the extent

8    possible, the Motion to Compel.  Since the Amended Rules of

9    Civil Procedure were adopted on December 1, courts have been

10   attempting to reduce delay and expense involved with

11   litigation, particularly in the area of discovery, where

12   possible.  There are instances where this cannot be done, and

13   the Court needs to refer the motion to the Magistrate Judge.

14   There are instances where a hearing or fuller briefing is

15   required, but in those instances where it appears possible to

16   the Court that some form of prompt conference and working with

17   Counsel will enable the Court to resolve a discovery dispute,

18   it's going to endeavor to do that.

19          And so, in this case, after reviewing the Motion to

20   Compel and the short letter response that I permitted to the

21   motion, I thought it possible that, by conducting this sort of

22   informal telephonic conference, it would be possible to get

23   this matter resolved, reducing the expenses to the parties and

24   getting on with the litigation.  So that is by way of

25   background.

1        Because the last update that I have under my

2   protocol is for Mr. Ansley, I'm going to begin by calling on

3   Mr. Moscowitz to advise the Court of where he sees this matter

4   standing, and then we'll -- the Court will hear from Counsel

5   further.

6        So, Mr. Moscowitz, you may proceed if you like.

7        **MR. MOSCOWITZ**:  Thank you, Your Honor.  And we

8   certainly appreciate you conducting this status conference and

9   are hopeful that, at the conclusion of the status conference,

10  we may be on a path towards resolution as to -- as opposed to

11  a more expensive and time-consuming alternative through an

12  actual hearing and perhaps some additional briefing.

13       And here's where we see it, and I'd like to start

14  with sort of the big picture, and then we can drill down as

15  the Court requires.  Our primary focus is in -- and what we

16  relied upon in the Motion to Compel has to -- is on the *Heller*

17  case.  And I think in part what *Heller* stood for was the

18  parties aren't supposed to play games anymore with discovery.

19       And, unfortunately, it is our belief that, even

20  though Samsung has amended some of their responses and they

21  have produced some additional documents from when we filed our

22  Motion to Compel, we still are lacking the fundamental answers

23  that require -- that we believe Samsung is required to provide

24  and the fundamental documents that we also believe they're

25  required to provide.  For example, we have asked in many of

```
 1    our requests for production that we be given the documents
 2    that support the various claims that they have made.  To date,
 3    we have no documents, none, that are supportive of their
 4    claims.
 5            We have lifted -- we have said -- we have requests
 6    for production that are lifted straight from their complaint,
 7    and we have nothing in response from Samsung regarding those
 8    factual allegations that they make.
 9            I want to point the Court to just a few quick
10    examples so Your Honor can get a sense of what we're dealing
11    with.
12            In Samsung's Amended Objections and Responses to
13    Defendant All Pro's First Request For Production, we asked for
14    all communications involving Song, who is one of the
15    Defendants, and All Pro regarding the Samsung auction
16    process --
17        (Feedback on phone line.)
18            MR. MOSCOWITZ:  -- from the date the auction
19    process --
20            COURT REPORTER:  Excuse me.
21            MR. MOSCOWITZ:  -- was implemented --
22            COURT REPORTER:  Excuse me, excuse me.
23            THE COURT:  Mr. Moscowitz, let me get you to stop
24    and start over.  We got some feedback on the call.  I don't
25    know why.
```

1          MR. MOSCOWITZ:  Oh, okay.

2          THE COURT:  Could you --

3      (Court reporter read back Page 8, Lines 13-15.)

4          THE COURT:  And that's where we lost you.

5          MR. MOSCOWITZ:  Okay.  Regarding the Samsung auction

6  process from the date the auction process was implemented by

7  Samsung to current.

8          And the response that we received basically said,

9  "We're not going to be looking for any documents."

10         If we go to the answer for Request For Production

11  No. 30, where we ask for all communications between All Pro

12  and the employee defendants for the period of time that

13  Plaintiff alleges the improper acts made the basis of this

14  suit occurred, we received --

15      (Phone ringing, cuts out voice.)

16         MR. MOSCOWITZ:  -- objections, and then we were

17  promised we would have documents by June 17th that were

18  responsive, and we got no documents that are responsive.

19         What we have also received, Your Honor --

20         UNIDENTIFIED CALLER:  Hello, hello.

21         MR. MOSCOWITZ:  Yes, hello.

22         UNIDENTIFIED CALLER:  This is Bell Nunnally &

23  Martin, the receptionist's desk.  Can I help you?

24         THE COURT:  I don't think the call was intended for

25  you.  Something must have happened with our conference call,

1    if you'd like to hang up.

2            **UNIDENTIFIED CALLER**:   All right.

3            **MR. MOSCOWITZ**:  Judge, we have asked for documents

4    that support the basis of their claims.

5            And what we have received in response are threefold.

6    One is not a single document.  Number two, an assertion that

7    requests for documents asking them to support their claims

8    call for legal conclusions, and they have said that they're

9    privileged.  We don't have a proper privilege log.  And so,

10   Your Honor, we could -- we could honestly go on and on through

11   these requests.

12           I think what the Court should know is what Samsung

13   has done thus far is, they have continually represented

14   through their responses to discovery that they're going to be

15   getting us documents by specific dates on a rolling

16   production.

17           Number one, we believe that that's improper, but,

18   number two --

19       **(Phone feedback and garbled voices in background.)**

20           **MR. MOSCOWITZ**:  -- we still don't have the

21   documents.  So when they say they're going to give us

22   documents on a particular date, they give us a couple of

23   documents that have nothing to do with the issues raised in

24   our Motion to Compel.  So it's --

25           **MR. LOWENSTEIN**:  Your Honor and Mr. Moscowitz --

1              MR. MOSCOWITZ:  -- our hope that any suggestions

2     that the Court may have, but this discovery process has gone

3     on, you know, for quite some time with very little progress

4     from our perspective.

5              MR. LOWENSTEIN:  Your Honor, this is Jeff

6     Lowenstein.  I apologize for interrupting, but we somehow got

7     dropped off the call about four minutes ago, so I think we

8     missed -- after the comments about the communications between

9     Song and All Pro, we got dropped off.  So I hate to ask Mr.

10    Moscowitz to do it one more time, but is there any way we

11    could have Mr. Moscowitz just repeat what came after that.

12             THE COURT:  This is Judge Fitzwater.  You may.  He

13    gave some examples, and I think he can give those examples

14    again.

15             MR. LOWENSTEIN:  Sure.

16             THE COURT:  And you will pick up on it, Mr. Ansley

17    [*sic*].  So go ahead, Mr. Moscowitz.

18             MR. MOSCOWITZ:  Thank you, Your Honor.  One of the

19    examples that we gave would be Samsung's response to Request

20    For Production No. 18, where we ask for communications between

21    the Defendant Song and All Pro regarding the Samsung auction

22    process.  All we received are objections.  And in the end,

23    Samsung's response is, "We're just not going to look for it

24    because it's too voluminous or it would be too burdensome."

25             With respect to Request For Production 30, we ask

1  for communication between All Pro and the employee defendants

2  for a period of time that Plaintiff alleges the improper acts

3  made the basis of this suit occurred.  We got nearly a page of

4  objections, and then at the very end, Samsung indicated that

5  they would be producing documents responsive to this request

6  on June 17th and on a rolling basis thereafter.  And to date,

7  we have not received any documents that are responsive to this

8  request.

9        We have asked for numerous requests for production

10  related to Samsung's damages that they claim they incurred.

11  The only response that we've ever received is, "We'll

12  supplement."  And that's it, not a single page, not a single

13  bit of information.

14        We have asked for documents to support their claims

15  and causes of action.  And, Your Honor, one of the things and

16  primary things that Samsung has alleged is that my client, All

17  Pro, engaged in bribes and kickbacks and sold counterfeit

18  phones, interfered with the codefendant employees' contracts,

19  and we have asked for very specific documents to support those

20  causes of action.  And we have received zero, not a single

21  one.

22        We have -- we have also asked -- in connection with

23  documents, you know, the documents to support their

24  allegations, Samsung has argued in their -- in their responses

25  to the requests for production through their objections that,

1    when we ask for documents to support a cause of action, that

2    that actually calls for a legal conclusion.  Alternatively,

3    they have argued that the documents that support their various

4    causes of action are privileged.  And we have never received a

5    privilege log.  Nothing.

6           And our position has been, and continues to be, and

7    was raised with Mr. Riemer and his associate at the meeting

8    that we had, that if it is Samsung's contention that certain

9    things that support their claims, such as the interviews that

10   we know that took place of the various Defendants, not All

11   Pro, but the other Defendants, if they're contending that

12   those interviews are privileged, then they can't use those

13   interviews.  They can't use any information obtained in those

14   interviews.

15          And so just to kind of wrap it up, what we -- we're

16   open to any and all suggestions.  And, like I said at the

17   onset, we appreciate the Court taking the time to do this and

18   to deal with this issue, but their amended responses have

19   changed nothing with respect to our Motion to Compel except

20   like six or seven where Samsung produced the contracts between

21   Samsung and All Pro, documents that we already have.

22          And, literally, Your Honor, without exaggerating, we

23   could go through all of these, you know, and there are

24   instances where we have produced 1,000 pages of correspondence

25   between us and Samsung, and when Samsung has been asked for

 1 | the identical type of information, they give us one or two

 2 | pages, and that just doesn't make sense.  We have documents

 3 | between us and various employees with Samsung that we

 4 | produced, and we would expect at the very least to get those

 5 | documents back in response to our requests for production, but

 6 | have not.

 7 | So, Your Honor, like I said, we're more than willing

 8 | to listen and work with Mr. Ansley and his team, but from our

 9 | perspective, very little, if any, progress has been made on

10 | this issue since we filed our motion.

11 | **THE COURT:**  All right.  Thank you, Mr. Moscowitz.

12 | At this time, I'll hear from Samsung.

13 | **MR. LOWENSTEIN:**  Your Honor, this is Jeff

14 | Lowenstein.  I'm going to take the lead.  I'm responding for

15 | Samsung.

16 | The intent and attempt -- and, again, we also

17 | appreciate your time.  I know you're busy and taking up your

18 | evening for us, so we appreciate that.  And our goal is to try

19 | to resolve these types of issues.

20 | Are you getting the same feedback on me that --

21 | **THE COURT:**  Yes, we just started getting some

22 | feedback.

23 | **MR. LOWENSTEIN:**  I'll talk slowly to try to minimize

24 | that.

25 | **MR. MOSCOWITZ:**  I can hear you, but it's rough.

Telephonic Status Conference (7/6/2016)

1          **COURT REPORTER**:  Me too.  I'm the court reporter.

2          **MR. LOWENSTEIN**:  Is there somebody participating by

3    cellphone or something that's causing this?

4          **THE COURT**:  I don't know.  This is Judge Fitzwater.

5    That was a little better just then.

6          **MR. LOWENSTEIN**:  Okay.  I'll keep trying.  So the

7    approach that we outlined in our response, our brief response,

8    which was consistent with what we kind of see All Pro doing in

9    response to our discovery, is that there are many moving parts

10   to this case.  There's a considerable amount of discovery.

11   It's a case involving fraud and stealing from a company that

12   was obviously done with the intent of not letting the company

13   figure it out.  Much of what was uncovered was through an

14   internal investigation, and we are in the process of

15   collecting and going through and sorting out privileged from

16   not privileged and work product from not work product and

17   producing it as we can.

18          The statements that nothing substantively relating

19   to our claims has been provided is just not true.  The primary

20   issue that All Pro is involved with — and the Court may or

21   may not be familiar with the details there — was that All Pro

22   was involved with the conspiracy with some of the employees

23   and other vendors in obtaining Samsung phones or parts through

24   an auction process that was rigged to benefit All Pro, where

25   All Pro was leaked information and then was allowed to get

1    into this auction process with an upper hand on other vendors

2    to undermine Samsung's ability to maximize its return on those

3    auctions.

4            We have produced bidding information relating to

5    those auctions.  We have produced information relating to the

6    thresholds set by the internal employees in order to ensure

7    that All Pro was one of the few that got to participate in the

8    auctions.  We've produced internal records relating to the

9    auctions that the employees compiled.  So there has been

10   information that relates to the claims asserted against All

11   Pro.

12           There are also a substantial amount of e-mails from

13   the e-mails that were compiled by these people.  That is

14   something that's going to take a process to go through because

15   they've asked for years and years and years of e-mails that

16   are probably in the hundreds of gigabytes, if not more, of

17   data to go through, and that's going to cost a substantial

18   amount of money and time for Samsung to go through.

19           Again, as I pointed out, this is an ongoing process

20   where we're continuing to do the work.  We produced what we

21   can so far and are working very hard and have many people

22   working on it on Samsung's dime to pull together the

23   information.

24           There may be a time, Your Honor, when we have

25   information we come across that we're going to have to fight

1    about, and we are going to provide a privilege log, and it's

2    going to outline the things that we think are privileged or

3    work product, and there may be a dispute over that.

4         There may come a time where we say we've exhausted

5    our resources and don't have anything else to produce, and

6    we're not going to produce anything else.  We haven't said

7    that yet about anything from what I know.  At which point, we

8    may have a fight about that as well.

9         But the reason that we framed our letter brief the

10   way we did was to say, we're not there yet.  I mean, this is a

11   lot of information.  This case is in its early stages.  We're

12   a long time off from, you know, expert deadlines and other

13   things like that, and there's time for us to do this right.

14        I think All Pro, in going through its information,

15   has kind of taken the same approach and said, "Either our --

16   we're having an ongoing production and we're going to get you

17   information," or, in some instances, said, "Refer to your own

18   documents, Samsung; we're not going to give you ours," which

19   we haven't really chewed up that issue yet, but I think both

20   parties are experiencing the concept of, when you've got a lot

21   of information and a lot of years to deal with, you have to go

22   through it and get to it.

23        And so I don't want to nitpick on the examples that

24   Mr. Moscowitz gave, but, for example, where he said in

25   response to RP -- Request For Production 18 that we said we're

1    not giving them anything or not going to do the search, that's

2    not what the response says.  There's a whole lot more words

3    than that in the amended response, and we've provided them a

4    whole lot more explanation than "We're not going to do any

5    work."

6            We're doing lots of work.  We're going to go through

7    a lot of e-mails and try to figure out a way, and hopefully

8    work with Mr. Moscowitz on search terms for that, but go

9    through a process to get them what they want.  And if they

10   determine after going through that that we didn't do it or

11   we're refusing to produce things they're entitled to, then we

12   might be back to the Court, but I hope that's not the case.

13           I just think that this is greatly premature.

14   Samsung is not playing games.  Samsung is a large

15   international company.  This is highly sensitive information

16   where they were defrauded and stolen from by vendors and

17   employees.  They're very sensitive about this information, so

18   they want us to go through this process in a way where we're

19   not just dumping information out there that competitors and

20   employees that stole from them can just have it.

21           But we also, of course, want to pull together all

22   the information that supports our claims, because, obviously,

23   that's what we need to do to support our claims.

24           **THE COURT**:  This is Judge Fitzwater.  Let me make a

25   couple of observations and then give Counsel an opportunity to

1   be heard further.

2           It seems to me, from listening to Counsel and

3   reading the submissions, that we need firm deadlines for the

4   disclosure of discovery that is un -- where the scope and the

5   details are uncontested.  Depositions cannot begin if Counsel

6   are concerned that they'll have to retake a key deposition.

7           And then we need a process in place to resolve those

8   issues for matters that are contested and firm deadlines for

9   doing that.

10          An example of a firm deadline for discovery that's

11  uncontested would be something where All Pro is asking Samsung

12  to disclose documents that support allegations of the

13  complaint.  This is not a case where Samsung is the Defendant

14  and saying, "We are surprised that we were sued; we haven't

15  been working on our documents."

16          This is a case where Samsung is the Plaintiff.  It

17  strikes me that Samsung, even with issues of Korean

18  translations and issues of privilege and so forth, ought to

19  know before it ever filed the suit the documents that it

20  believes support its claims.

21          So I would like to get Counsel's views about getting

22  Counsel to give us -- to work on firm deadlines where the

23  discovery requests are not subject to dispute and then a

24  process for resolving those that are, again, with the idea

25  that we're trying to do this as efficiently and as quickly as

1  possible, so that we don't end up with a lot of unnecessary

2  cost and delay.

3          Mr. Moscowitz?

4          **MR. MOSCOWITZ**:  Judge, as far as the process that

5  you've outlined, we would be agreeable to working with Mr.

6  Ansley and the other attorneys at Bell Nunnally regarding

7  that.

8          We believe that the -- you know, that there should

9  be documents that they -- that should not be contested, and

10 we'd be happy to try and work with them on a firm deadline to

11 provide those documents.

12         And then as to the second category of requests, for

13 those for which there is just no working it out, getting the

14 matter set for a hearing with either Your Honor or your

15 Magistrate Judge, and we would be more than agreeable to do

16 that.

17         **THE COURT**:  Mr. Ansley?

18         **MR. LOWENSTEIN**:  This is Mr. Lowenstein.  That

19 process --

20         **THE COURT**:  I'm sorry, yes.

21         **MR. LOWENSTEIN**:  The process sounds -- Mr. Ansley is

22 dying to talk, but I'm going to keep talking over him.

23      **(Laughter.)**

24         **MR. LOWENSTEIN**:  I think that process makes sense,

25 Your Honor.

```
 1          THE COURT:  All right.  And did Mr. Ansley want to
 2    be heard at this time?
 3          MR. ANSLEY:  Thank you, Your Honor.  This is Jeff
 4    Ansley.  I do agree with what Mr. Lowenstein just said.  That
 5    process, as outlined by Mr. Moscowitz, does make sense.  It's
 6    just a matter, Your Honor, I believe of identifying the timing
 7    in which we would be producing documents as the Court
 8    identified to support our claims.
 9          MR. LOWENSTEIN:  And the other undisputed --
10          COURT REPORTER:  Who was that and what did you say?
11          MR. LOWENSTEIN:  This is Mr. Lowenstein.  The ones
12    that support our claims and on the areas where there's no
13    dispute as to production, which I think is what the Court
14    outlined.
15          THE COURT:  Would you be in a position to report
16    back to the Court seven days from now, next Tuesday, by
17    something in writing.  It could be a letter that would outline
18    how you're going to approach these categories and dates?
19          Mr. Moscowitz?
20          MR. MOSCOWITZ:  Yes, Your Honor, we would.
21          THE COURT:  Mr. Lowenstein?
22          MR. LOWENSTEIN:  Yes, Your Honor, we would.
23          THE COURT:  All right.  Then what I'm going to do
24    is, I'm going to continue to defer any briefing on this
25    motion, and I'll hear back from you through some letter or
```

1    alternative written filing that's due by 5:00 p.m. next

2    Tuesday where you outline what I've identified.  And if you

3    need to consult the record, the court reporter is available to

4    produce that for you.

5          Now, let me ask if any other attorney who's

6    participating, or we have a pro se party as well, wishes to be

7    heard before we conclude the call.

8          MS. KELLOW:  Your Honor, this is Elizabeth Kellow,

9    Counsel for Jin-Young Song, one of the employee defendants,

10   whose name actually has come up once or twice in this

11   argument.

12         We also have been -- and I'm getting some feedback.

13   Are you as well?

14         THE COURT:  I am, but if you speak slowly, the court

15   reporter can still follow you.

16         MS. KELLOW:  I will speak slowly.  We are also

17   having some discovery issues as well with Plaintiff Samsung on

18   our document requests that we raised back at -- it would have

19   become effective at our 26(a) conference back in March.

20         Luckily, in light of the Court's requirement for the

21   meet and confer, which I very much appreciate, Mr. Ansley, Mr.

22   Riemer and I met in person in my offices last Wednesday to go

23   through each and every one of the issues that has been a

24   problem to date.  And, by problem, I mean similar problems to

25   what Mr. Moscowitz described about lack of production, lack of

1    a date certain by which production would be made, and/or

2    standing on objections to requests for what facially and I

3    would say in actuality are clearly relevant documents.

4         I believe we had a very productive meeting last

5    Wednesday with Mr. Ansley and Mr. Riemer, and it is my hope

6    that we will be able to work through these issues, along the

7    same lines you have outlined and suggested for Samsung's

8    attorneys and All Pro's attorneys.  However, we had an e-mail

9    exchange this afternoon that indicates, if we don't work

10   through those, we will have further problems.  I expect we

11   will be able to work through those, particularly with the

12   Court's observations, which I find most helpful this

13   afternoon.

14        So, in short, we are having some difficulties as

15   well.  I don't think Samsung would disagree with that, but I

16   also believe we have a hope ⸺ and I think it's a mutual hope

17   ⸺ that we will be able to work through ours without having to

18   bother the Court further, particularly if we walk kind of in

19   lockstep with All Pro and Samsung on their respective

20   discovery disputes.

21        **THE COURT**:  Thank you, Ms. Kellow.  This is Judge

22   Fitzwater.

23        Mr. Ansley or Mr. Riemer, do you wish to be heard,

24   or Mr. Lowenstein, in response?

25        **MR. LOWENSTEIN**:  This is Mr. Lowenstein.  The sole

 1    correction, just for the record's sake, is that it was Mr.

 2    Riemer and I that were present at the meeting, not Mr. Ansley.

 3    Other than that, we are hopeful that we can work out things

 4    with Ms. Kellow as well along the same lines, and I think we

 5    did have a productive meeting with her and gotten a long way

 6    on resolving the issues that she had raised.

 7              MS. KELLOW:  I do apologize, Mr. Lowenstein.

 8              MR. LOWENSTEIN:  It's all right.

 9              THE COURT:  All right.  This is Judge Fitzwater.

10    Anyone else who wishes to be heard before we conclude the

11    conference?

12       (No response.)

13              THE COURT:  All right.  Thank you all.

14              MR. CHOE:  (Garbled.)  This is --

15              THE COURT:  I'm sorry, did someone wish to be heard?

16              MR. CHOE:  Yeah.  This is Jason Choe, and I'm the

17    attorney for Yoon-Chul "Alex" Jang, and there's nothing that

18    we would like to add at this time.

19              THE COURT:  All right.  Thank you.  I'm going to

20    hang up at this time.  I'm not sure if that will keep the rest

21    of y'all from conferring if you need to, but I'm going to hang

22    up.

23              And, as I say, there will be a docket entry

24    reflecting this, and the court reporter has made a record of

25    the hearing or the conference.  All right.  Thank you,

1    Counsel.

2              MS. KELLOW:  Thank you, Your Honor.

3              MR. MOSCOWITZ:  Thank you, Your Honor.

4              MR. LOWENSTEIN:  Thank you, Your Honor.

5              THE COURT:  Thank you very much.  Goodbye.

6         (End of Telephone Conference for 07/05/2016.)

7

8

9                   *   *   *   *   *   *

10

11       I certify that the foregoing is a correct transcript from

12    the record of proceedings in the above-entitled matter.  I

13    further certify that the transcript fees format comply with

14    those prescribed by the Court and the Judicial Conference of

15    the United States.

16

17    s/Stacy Mayes Morrison____          7/8/2016_____
      Stacy Mayes Morrison                Date
18    Official Court Reporter

19

20

21

22

23

24

25