IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAMSUNG ELECTRONICS　　　　§
AMERICA, INC.,　　　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　　　　　Plaintiff,　　§
　　　　　　　　　　　　　　　　§　Civil Action No. 3:15-CV-4108-D
VS.　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　§
YANG KUN "MICHAEL" CHUNG,　　§
et al.,　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　§
　　　　　　　　　　Defendants.　§

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Samsung Electronics America, Inc. ("Samsung")[1] alleging

claims related to a scheme involving the distribution of service parts for Samsung devices,

defendant All Pro Distributing, Inc. ("All Pro") moves under Fed. R. Civ. P. 12(b)(6) to

dismiss Samsung's first amended complaint ("amended complaint") for failure to state a

claim on which relief can be granted.  For the reasons that follow, the court grants the motion

in part and denies it in part, and grants Samsung leave to replead.

---

[1]Samsung is the U.S. subsidiary of the Korean company Samsung Electronics Co., Ltd. ("Samsung Ltd.").  It recently merged with Samsung Telecommunications America, LLC ("Samsung Telecom"), another Samsung Ltd. subsidiary. The two subsidiaries now operate as one unit in the United States, but during the events giving rise to this case, Samsung Telecom was a separate entity.  For ease of reference, the court will refer to the new, consolidated company rather than differentiate between the subsidiaries.

I

Samsung is the U.S. subsidiary of Samsung Electronics Co., Ltd., a Korean company.[2] Samsung produces and sells, among other things, cell phone replacement parts for use by third parties in servicing and refurbishing Samsung devices. Samsung enters into agreements with these third-party servicers and distributors to sell the replacement parts, which it does not authorize for sale on the open market. In 2008 Samsung and All Pro entered into an agreement under which All Pro purchased parts for service. In 2011 the companies entered into a distributor agreement for certain Samsung products. And in 2013 All Pro signed an accessory distribution agreement authorizing it to sell accessory products to authorized Samsung retailers. No agreement permitted unauthorized use of trademarks or unauthorized distribution of Samsung products.

Samsung alleges that All Pro and four Samsung employees whose employment involved the management and sale of Samsung parts, and who Samsung alleges exerted control over Samsung's Services Operations Department—Michael Chung ("Chung"), Thomas Porcarello ("Porcarello"), Yoon-Chul "Alex" Jang, and Jin-Young Song (collectively, the "Employee Defendants")—were involved in an unlawful scheme centering

_____

[2]In deciding this Rule 12(b)(6) motion, the court construes Samsung's amended complaint in the light most favorable to Samsung, accepts all well-pleaded factual allegations, and draws all reasonable inferences in its favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

on service parts.  As it relates to All Pro, the scheme had two main components: (1) providing "build kits"—a collection of all replacement parts necessary to construct a Samsung phone—to All Pro and other third parties; and (2) designing and rigging an auction process to allow select companies, including All Pro, to obtain Samsung parts at a significant discount.  According to Samsung, All Pro compensated some of the Employee Defendants through bribes and kickbacks, including $10,000 in payments to Chung.  Samsung alleges that this scheme operated from 2012 until 2015.

Regarding the first aspect of the scheme, Samsung asserts that Chung, Porcarello, and other employees directed build kits to All Pro through a third party.  The build kits included, among other things, PBAs (the "brains" of Samsung cell phones) and OCTAs (the touch screens used on the devices.).  Samsung intended the parts to be used for servicing, and it did not authorize either part to be resold.  The OCTA also bore Samsung's registered trademark.  Samsung alleges that the third party constructed phones from the build kits and then routed them to All Pro for distribution.

The second aspect of the scheme involved an auction process to dispose of extra or obsolete parts.  According to Samsung, Porcarello and Chung played a role in establishing the process, and they rigged auctions to favor All Pro.  Samsung alleges that Chung and Porcarello suppressed competition and provided All Pro with confidential information about the process before giving it to other bidders.  This allowed All Pro to pre-sell parts that it would buy at auction and undercut the market.

After Samsung filed this lawsuit, All Pro moved to dismiss Samsung's complaint, and

Samsung moved for leave to amend.  The court denied both motions without prejudice, and it granted Samsung leave to file an amended complaint.  Samsung then filed its amended complaint, asserting these claims against All Pro: federal and state trademark infringement; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c), and (d); breach of fiduciary duties; aiding and abetting breach of fiduciary duties; tortious interference with contract; civil conspiracy; and misappropriation of confidential information under Texas law.  All Pro now moves under Rule 12(b)(6) to dismiss the amended complaint.  Samsung opposes the motion.

## II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive All Pro's motion to dismiss, Samsung must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [.]").  "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U. S. at 555).

To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986)). In other words, All Pro is not entitled to dismissal under Rule 12(b)(6) based on an affirmative defense unless Samsung "'has pleaded [it]self out of court by admitting to all of the elements of the defense.'" *Id.* (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)).

III

The court first considers whether Samsung has sufficiently pleaded trademark infringement claims under the Lanham Act, 15 U.S.C. § 114(a), and under the Texas Trademark Act ("TTA"), Tex. Bus. & Comm. Code Ann. § 16.102 (West 2015), and unfair competition by false designation claims under the Lanham Act, 15 U.S.C. § 125(a).

- 5 -

A

"To succeed on a trademark infringement claim, a plaintiff first must show ownership of a legally protectable mark, and then it must establish infringement of the mark." *TGI Friday's, Inc. v. Great Nw. Rest., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). Under the Lanham Act, infringement exists if a person

> uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

*Id.* (internal quotation marks and citations omitted).  A device built from genuine parts can still qualify as a "reproduction, counterfeit, copy, or colorable imitation" if the process used to construct it was different than that which the mark holder used to construct its genuine products.  *Mary Kay, Inc. v. Weber*, 601 F.Supp.2d 839, 853 (N.D. Tex. 2009) (Fish, J.).  In these circumstances, "the mark holder [needs] to show only that '(i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark.'"  *Id.*

A finding of "likelihood of confusion" requires "a probability of confusion" rather than a mere possibility.  *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009).  These factors are used to determine the likelihood of confusion: (1) the strength of the plaintiff's trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media similarity, (6) defendant's intent, (7) actual

confusion, and (8) care exercised by potential purchasers. *Am. Rice*, 518 F.3d at 329. "The digits are a flexible and nonexhaustive list. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004)).

B

All Pro maintains that Samsung's claims must be dismissed because the allegations of the amended complaint, taken as true, do not demonstrate that All Pro sold, offered for sale, distributed, or advertised infringing products, or that any devices All Pro sold would likely cause confusion in the marketplace, and because the first sale doctrine precludes recovery.[3] Samsung responds that All Pro misunderstands its contention under the Lanham Act as asserting that the devices that All Pro constructed and distributed are genuine.

---

[3]The "first sale" doctrine provides that

> [t]rademark law *generally* does not reach the sale of *genuine* goods bearing a true mark even though such sale is without the mark owner's consent. Once a trademark owner sells his product, the buyer ordinarily may resell the product under the original mark without incurring any trademark law liability.

*Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1303 (5th Cir. 1997) (emphasis in original) (citations and internal quotation marks omitted). All Pro alleges that "Samsung fails, beyond conclusory allegations, to allege how the resale of genuine goods bearing a true mark is precluded under 15 U.S.C. § 1114(a)." D. Br. 26. The court understands this contention to invoke the first sale doctrine. *See, e.g., Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette*, 988 F.2d 587, 590 (5th Cir. 1993) ("[T]rademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent.").

Samsung contends that, even though All Pro used genuine parts to build the devices it sold, the final products were materially different from devices that Samsung manufactured and distributed.  Samsung posits that it used rigid and consistent procedures to construct its phones, and that it would not be possible for any unauthorized third party to replicate these procedures.  And Samsung maintains that while the parts used to construct a genuine Samsung device and a device that All Pro distributed might be exactly the same, the devices All Pro distributed were counterfeit because the processes used to assemble them resulted in materially different phones.

C

The court concludes that Samsung has adequately pleaded its trademark infringement claim under the Lanham Act.  Samsung alleges the first five elements of its trademark claim: (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.  The amended complaint also alleges that a third party assembled cell phones bearing the exact registered Samsung trademark from parts that were designated for the limited purpose of repairing Samsung devices; that Samsung assembles its phones in accordance with rigid assembly protocols, and the phones made from build kits could not possibly meet these standards; that this third party sold the phones to All Pro, which distributed them to the market; and that none of these phones met Samsung's assembly protocols.

These allegations, taken as true, plausibly plead that Samsung is the owner of a trademark for the relevant devices and that its mark has been infringed. Samsung alleges that All Pro distributed devices that it did not have permission to sell.[4] It also adequately pleads that All Pro's devices likely caused confusion in the marketplace. The amended complaint alleges that the devices were sold with the Samsung mark, but did not include (1) Samsung's quality control protocol, (2) Samsung's applicable warranty, (3) genuine packaging, or (4) an assurance that the phone was built by Samsung. The court concludes that Samsung has pleaded a plausible claim for trademark infringement under the Lanham Act.

The court also concludes that All Pro has failed to meet its burden of establishing that Samsung has defeated its trademark infringement claim under § 1114 based on the first sale doctrine. The first sale doctrine is an affirmative defense. *Mary Kay*, 601 F.Supp.2d at 852. For the first sale doctrine to apply, All Pro must show that the devices it sold were not "materially different from those sold by the trademark owner." *Id.* (citing *Martin's Herald Imps., Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1302-03 (5th Cir. 1997)) (internal quotation marks omitted). Samsung has not admitted to this element in its amended

---

[4]Samsung alleges, in pertinent part:

> Chung and Porcarello improperly took all of the Samsung parts necessary to build a phone and sold them to the third party for less than fair market value. The third party assembled the parts into counterfeit phones (bypassing Samsung's rigorous assembly protocols) and sold them to All Pro. All Pro sold these assembled counterfeit phones to the market.

Am. Compl. ¶ 34.

complaint. *See Cochran*, 2011 WL 5604024, at *1. In fact, it alleges the opposite: "The counterfeit devices constructed and distributed by Defendants are materially different from Samsung's genuine phones because, among other things[,] . . . the devices were not assembled pursuant to Samsung's rigorous quality control standards[.]" Am. Compl. ¶ 77.

D

Because the court holds that Samsung has sufficiently pleaded its trademark infringement claim under § 1114, the court reaches the same conclusions as to Samsung's claims for infringement under the TTA and for unfair competition under § 1125(a). *See Choice Hotels*, 940 F.Supp.2d at 538 ("Nevertheless, the Court must only conduct one inquiry to determine the [defendants'] liability because . . . the facts that support an action for trademark infringement under the Lanham Act also support" claims for trademark infringement under Texas law and for unfair competition under § 1125(a)); *see also Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F.Supp.2d 622, 637 (N.D. Tex. 2009) (Kinkeade, J.) ("A determination of a likelihood of confusion under federal law is sufficient to prove trademark infringement under Texas law."); *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 738 n.2 (Tex. App. 2012, no pet.) ("The stated intent of the recodified version [of the TTA] was to bring Texas trademark laws 'into alignment with federal trademark infringement and dilution laws' . . . . [T]he construction given to the Lanham Act 'should be examined as persuasive authority for interpreting and construing' the Texas Act." (citations omitted)). Accordingly, the court denies All Pro's motion to dismiss Samsung's claims for infringement under the TTA and for unfair competition under §

1125(a).

IV

The court next considers All Pro's motion to dismiss Samsung's civil RICO claims, which allege violations of 18 U.S.C. § 1962(a), (c), and (d).

A

Section 1962(a) makes it unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal" to invest that income or anything derived from that income into the establishment or operation of an enterprise engaged in interstate commerce. Section 1961(1)(B) defines "racketeering activity" in part as "any act which is indictable" under several specified sections of the United States Code or state law. Section 1961(5) defines "pattern of racketeering activity" as "requir[ing] at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]" To recover for a violation of § 1962(a), a plaintiff must also plead injuries to its business or property. *See* 18 U.S.C. § 1964(c). The plaintiff's injuries must have

> resulted from the investment or use of racketeering proceeds. In other words, injuries resulting from predicate acts of "racketeering activity" themselves cannot form the basis of an investment injury for purposes of § 1962(a). Instead, the court must determine whether the injuries asserted were the result of the predicate acts or of the investment of racketeering proceeds into a RICO enterprise.

- 11 -

*Davis-Lynch, Inc. v. Moreno*, 667 F.3d 529, 550 (5th Cir. 2012) (citations omitted).

B

The court considers first whether Samsung has sufficiently pleaded that its injuries were the result of investments of racketeering proceeds into a RICO enterprise.

In its brief, Samsung maintains that defendants' conduct "reduced the number of eligible bidders and allowed All Pro to win more auctions at lower prices, saturated the market with the unlawful sale of Samsung equipment and parts, caused a loss of competition at auction and on the open market, and resulted in lost profits to Samsung." P. Br. 22 (quoting Am. Compl. ¶¶ 101-104) (internal quotation marks omitted). Samsung has failed, however, to "assert[] or present[] facts showing . . . how it was injured by the *investment* of the proceeds." *Davis-Lynch*, 667 F.3d at 551 (emphasis in original). Accordingly, Samsung's claim under § 1962(a) is dismissed.

C

Samsung also alleges a violation of § 1962(c), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" "'Reduced to their simplest terms, the essential elements of a [§ 1962(c)] claim are: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.) (quoting *Larrew v.*

- 12 -

*Barnes*, 2002 WL 32130462, at * 1 n.1 (N.D. Tex. Aug. 27, 2002) (Kaplan, J.), *rec. adopted*, 2002 WL 32130462 (N.D. Tex. Sept.17, 2002) (Fitzwater, J.)), *appeal docketed*, No. 16-11381 (5th Cir. Sept. 16, 2016).

All Pro does not dispute that it is a person for RICO purposes.[5]  The court will therefore consider in § IV(D) whether Samsung has adequately pleaded a pattern and in § IV(E) whether Samsung has adequately pleaded an enterprise.

D

"To establish a pattern of racketeering activity, [Samsung] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex*, 2012 WL 2864510 at *2 (citing *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)).  A pattern of racketeering activity must include two or more acts of racketeering activity.  *See* 18 U.S.C. § 1961(5).  "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742.  "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original) (citation and internal quotation marks omitted). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240 (citations omitted).  Samsung alleges the following predicate acts: commercial bribery, in violation of Tex. Pen. Code Ann.

_____

[5]A person under RICO "includes any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

§ 32.43(b) (West 2015); money laundering, in violation of 18 U.S.C. § 1956; participation in unlawful monetary transactions, in violation of 18 U.S.C. § 1957; trafficking in counterfeit goods or services, in violation of 18 U.S.C. § 2320; mail fraud, in violation of 18 U.S.C. § 1341; and wire fraud, in violation of 18 U.S.C. § 1343. Each qualifies as a predicate act under RICO, 18 U.S.C. § 1361(1).

The court concludes that Samsung has adequately pleaded at least two predicate acts necessary to establish a pattern of racketeering activity: commercial bribery and trafficking in counterfeit goods or services. In Texas, both the payor and payee of a bribe can be guilty of commercial bribery. An employee commits the crime of commercial bribery if "without the consent of his [employer], he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the [employee] in relation to the affairs of his [employer]." *Id.* § 32.43(b) (West 2015). A payor commits commercial bribery if he "offers, confers, or agrees to confer any benefit the acceptance of which is an offense under Subsection (b)." Tex. Pen. Code. Ann. § 32.43(c) (West 2015). Because "racketeering activity [that] does not involve fraud [does not] trigger[] the pleading requirements of Rule 9(b)," the court evaluates whether Samsung has plausibly pleaded this predicate act without reference to the pleading requirements of Rule 9(b). *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 777 (N.D. Tex. 2008) (Fitzwater, C.J.).[6]

---

[6]Some courts have suggested that *all* civil RICO claims are subject to Rule 9(b)'s heightened pleading standard, regardless of the nature of the predicate act on which the

Samsung alleges that All Pro bribed Chung and Porcarello to induce them to engage in, and compensate them for, a scheme to provide Samsung build kits to All Pro. The amended complaint also alleges that Chung accepted two payments from All Pro totaling $10,000. Taken as true, these facts give rise to a plausible predicate act of commercial bribery under § 32.43(c) of the Texas Penal Code.

Samsung also pleads that All Pro violated 18 U.S.C. § 2320(a)(1), which prohibits the intentional trafficking in goods or services and knowing use of a counterfeit mark on or in connection with such goods and services. The statute defines a counterfeit mark as

> a spurious mark . . . that is used in connection with trafficking in any goods . . . that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office . . . that is applied to or used in connection with the goods or services for which the mark is registered . . . and the use of which is likely to cause confusion, to cause mistake, or to deceive[.]

18 U.S.C. § 2320(f)(1)(A). The court has already held that Samsung has sufficiently pleaded each of these elements in relation to its Lanham Act claim. *See supra* § III(C). Accordingly, the court concludes that Samsung has adequately pleaded two predicate acts under RICO.

---

RICO claim is based. *See, e.g., Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."). This is not, however, the law in this circuit. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("[Rule] 9(b) applies to . . . RICO claims resting on allegations of fraud.") (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir.1992)); *Tel-Phonic Servs.*, 975 F.2d at 1138 (5th Cir.1992) ("[Rule 9(b)] applies to the pleading of fraud as a predicate act in a RICO claim[.]").

It is not enough, however, that the alleged predicate acts occurred.  For a series of related predicate acts to constitute a RICO "pattern of activity," a plaintiff must also allege that the acts "amount to or threaten *continuing* racketeering activity." *Burzynski*, 989 F.2d at 742 (emphasis in original).  "It is 'continuity' that assures a federal cause of action." *Id*. Continuity may be alleged as "either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *H.J. Inc.*, 492 U.S. at 241).  A closed period of conduct may be properly pleaded by alleging "a series of related predicates extending over a substantial period of time." *Id*. (quoting *H.J. Inc.*, 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.")).  An open period of conduct requires allegations of "a 'specific threat of repetition extending indefinitely into the future,'" or that "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id*. (quoting *H.J. Inc.*, 492 U.S. at 242-43) (some internal quotation marks omitted).  Courts in this circuit have repeatedly held that "[c]ontinuity cannot be established by multiple acts of fraud that are part of a single transaction." *Orthoflex*, 2012 WL 2864510, at *3 (citing *Word of Faith*, 90 F.3d at 123); *see also Word of Faith*, 90 F.3d at 123 ("It is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO.  [Fifth Circuit precedent] make[s] clear that where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown."); *Burzynski,* 989 F.2d

at 734 ("*All* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which

has ended . . . .   The conduct did not constitute or threaten long-term criminal activity."

(emphasis in original)); *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir.

1991) ("[T]here is no threat here of continued criminal acts.  [Defendant's] acts which were

alleged to have deprived [plaintiff] of a property interest were, when completed, without

threat of repetition."); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th

Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than

numerous predicate acts which were necessary segments of an otherwise legitimate

[merger]."). When this is the case, "[t]he conduct d[oes] not constitute or threaten long-term

criminal activity."   *Burzynski*, 989 F.2d at 743; *see also Calcasieu*, 943 F.2d at 1464

("Short-term criminal conduct is not the concern of RICO.").

     The two predicate acts that Samsung adequately alleges are related acts.   The

commercial bribery and the trafficking in counterfeit goods both trace back to an alleged

scheme by which the Employee Defendants unlawfully distributed Samsung parts to All Pro

and other companies.   These acts are also indicative of continuous criminal activity.   While

the two predicate acts trace back to a single scheme, they are not multiple acts that were part

of a "single, otherwise lawful transaction."  *Word of Faith*, 90 F.3d at 123.  Samsung alleges

that All Pro paid two separate bribes to Chung.  It also alleges that the Employee Defendants

provided build kits to third parties and All Pro for two years—from 2012-2014.   The

amended complaint thus alleges activity that was much broader than a single, otherwise

lawful transaction; rather, taken as true, the allegations plausibly plead that All Pro and the

Employee Defendants' predicates acts repeated over "a substantial period of time." *Word of Faith,* 90 F.3d at 122.  Moreover, the allegations permit the court to draw the reasonable inference that this transaction was not otherwise lawful; according to Samsung, All Pro and the Employee Defendants operated entirely outside of any distribution agreement between All Pro and Samsung.  *Cf., e.g., Delta Truck*, 855 F.2d at 244 (holding there was no continuity where predicate acts were necessary segments of otherwise legitimate merger); *Orthoflex*, 2012 WL 2864510, at *3 (holding that there was no continuity where alleged fraud was part of otherwise lawful distributor agreement).

Accordingly, the court concludes that Samsung has adequately alleged a pattern of racketeering for the purposes of its § 1962(c) claim.

E

The court now considers whether Samsung has sufficiently pleaded the third element—the existence of a RICO enterprise and All Pro's association with the enterprise.

"RICO defines an enterprise as 'any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'"  *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quoting 18 U.S.C. § 1961(4)).  Samsung contends that the RICO enterprise operated from within Samsung's own corporate structure.[7]  In the amended complaint, Samsung alleges that defendants "effectively hijacked Samsung's Services Operations Department and used

---

[7]"Samsung does not allege that an association-in-fact enterprise existed between All Pro and the Employee Defendants."  P. Br. 17.

Samsung to conduct racketeering activity that crossed state lines[.]"  Am. Compl. ¶ 88.

Samsung maintains that the requisite elements for an association-in-fact enterprise are

satisfied by Samsung's clear and established identity as a corporation and an apparent

hierarchy within the Services Operations Department.  Essentially, Samsung posits that it is

both the plaintiff and the RICO enterprise in this case.

Section 1964(c) provides that "[a]ny person injured in his business or property by

reason of a violation of section 1962 of this chapter may sue therefor in any appropriate

United States district court."  The statute does not exclude entities that allege that a RICO

operation exists within them.  One circuit has expressly held that neither RICO's language

nor the applicable caselaw "prohibit[s] the plaintiffs from including themselves in a

legitimate, albeit infiltrated, enterprise and has not been interpreted to limit RICO enterprises

to those persons engaged in the illegal conduct."  *United Energy Owners Comm., Inv. v. U.S.*

*Energy Mgmt. Sys., Inc.*, 837, F.2d 356, 362 (9th Cir. 1988).  The court is unaware of any

pertinent Fifth Circuit precedent.  Unless and until the Fifth Circuit rules to the contrary, the

court will join other district courts that follow *United Energy*.  *See, e.g.*, *Polymer Dynamics,*

*Inc. v. Bayer Corp.*, 2000 WL 1146622 (E.D. Pa. Aug. 14, 2000); *Edison Elec. Inst. v.*

*Henwood*, 832 F. Supp. 413, 416-17 (D.D.C. 1993); *Com-Tech Assocs. v. Computer Assocs.*

*Int'l, Inc.*, 753 F. Supp. 1078, 1088-89 (E.D.N.Y. 1990).  As the *Com-Tech* court noted,

"[t]his is consistent with the plain language of section 1962(c), as well as the policy behind

section 1962 to prevent racketeering activity from infiltrating *legitimate* business

enterprises."  *Com-Tech*, 753 F. Supp. at 1089 (emphasis in original) (internal citations and

- 19 -

quotation marks omitted).

In addition to the existence of a RICO enterprise, a violation under § 1962(c) requires that the person be employed by or associated with the enterprise, which the Supreme Court has interpreted to apply to the "operation and management" of the enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). While the Court noted that this would typically apply to those within an organization's management structure, "[a]n enterprise might also be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* at 184. As noted above, Samsung alleges that All Pro bribed Chung and Porcarello to compensate them for and induce them to redirect parts that All Pro could use to sell counterfeit phones. *See supra* § IV(D). Under *Reves* this is sufficient to plausibly plead operation and management, as required by § 1962(c).

Having concluded that Samsung has sufficiently pleaded a pattern of racketeering activity and that All Pro is connected to the control of a RICO enterprise, the court denies the motion to dismiss Samsung's § 1962(c) claim.

F

All Pro also moves to dismiss Samsung's claim for RICO conspiracy under § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of [RICO]." "To prove a RICO conspiracy, the [plaintiff] must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 625 n.11 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *United States v.*

*Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)). "A RICO conspiracy thus has RICO-specific requirements—such as an agreement by at least two conspirators to engage in a pattern of racketeering activity." *Id.* Put simply, Samsung must allege that All Pro conspired with at least one other person involved with the RICO enterprise at Samsung to commit two predicate acts that would give rise to liability under § 1962(c).

Samsung has failed to adequately plead a RICO conspiracy claim because it has not sufficiently alleged two predicate acts that All Pro conspired with another person to commit. Samsung has adequately alleged an agreement between All Pro and Chung to commit commercial bribery. Because commercial bribery under Texas law requires a showing of agreement or understanding between the parties, Tex. Pen. Code. Ann. § 32.43(b) (West 2015), the pleading of commercial bribery also satisfies the elements of a RICO conspiracy claim.

The remaining claims, however, do not sufficiently allege an agreement between All Pro and Chung (or any other employee defendant), as required for a § 1962(d) claim. The basis for the alleged predicate acts of money laundering is unclear. Under 18 U.S.C. § 1956, Samsung must show a financial transaction involving proceeds from an unlawful activity was conducted with the intent to promote the carrying on of the unlawful activity, evade federal taxes, or conceal the proceeds of the unlawful activity. Samsung's amended complaint does not point to a specific transaction that would qualify as money laundering under this statute, nor does it allege generally that All Pro possessed any of the requisite intent with respect to any financial transaction.

- 21 -

Samsung's predicate act alleging unlawful monetary transactions is also deficient.  18 U.S.C. § 1957(a) prohibits engaging in monetary transactions in criminally derived property of a value of greater than $10,000.  The statute defines a monetary transaction as "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary . . . by, through, or to a financial institution[.]"  But the amended complaint makes no allegation of any monetary transaction involving criminally derived property of a value greater than $10,000.  While the amended complaint and Samsung's brief are unclear regarding the specific transaction to which Samsung is referring, any possibilities are lacking.  Samsung does contend that All Pro used credit cards and bank accounts to facilitate sales of its completed phones, but it does not allege any transaction worth greater than $10,000, as required to trigger § 1957(a) liability.  Samsung might also be alleging that the auction process itself was an unlawful monetary transaction.  But, similarly, Samsung does not allege any auction transaction of greater than $10,000.

Samsung has not alleged any knowledge on the part of an Employee Defendant as to All Pro's alleged efforts to traffic counterfeit goods.  The amended complaint simply notes that some Employee Defendants provided third parties and All Pro with build kits that could be used to construct entire phones.  It does not allege that any specific Employee Defendant knew or had an intention that All Pro would immediately resell these phones in interstate commerce.

Samsung finally alleges that All Pro committed mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343.

> To state a claim for mail or wire fraud to support a RICO violation under § 1341 or § 1343, a plaintiff must establish three elements: (1) a scheme or artifice to defraud or to obtain money or property by means of false pretenses, representations, or promises; (2) a use of the interstate mails or wires for the purpose of executing the scheme; and (3) a specific intent to defraud either by [d]evising, participating in, or abetting the scheme.

*Vanderbilt Mortg. & Fin., Inc. v. Flores*, 746 F.Supp.2d 819, 841 (S.D. Tex. 2010) (quoting *Hewlett-Packard Co. v. Byd:Sign, Inc.*, 2007 WL 275476, at *3 (E.D. Tex. Jan. 25, 2007)) (internal quotation marks omitted).   Rule 9(b) requires particularity in pleading the "circumstances constituting fraud."  "This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim as well."  *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992) (citing *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 430 (5th Cir. 1990)).  "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)).  "Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally."  *Id.* (citing Rule 9(b)).

The sole allegation to which Samsung points the court to support mail and wire fraud by All Pro states: "All Pro . . . caused [completed phones] to be sold . . . through interstate commerce, including, but not limited to (1) advertising online; (2) using the mail to effectuate transactions; and (3) using bank accounts/credit cards to facilitate such transactions."  Am.

Compl. ¶ 40.  This allegation contains neither the time nor place of the mail and wire fraud and do not otherwise satisfy the requirements of Rule 9(b).[8]

Because Samsung has failed to plead two predicate acts involving an agreement between All Pro and another person, Samsung's claim for RICO conspiracy is dismissed.

## V

The court now turns to Samsung's claim for breach of fiduciary duties.

## A

"Under Texas law, '[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant.'" *Days Inn Worldwide, Inc. v. Sonia Invs.*, 2007 WL 1188028, at *3 (N.D. Tex. Apr. 23, 2007) (Fitzwater, J.) (alteration in original) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. 2006, pet. denied)).  Texas law recognizes two types of fiduciary relationships.  *Jones*, 196 S.W.3d at 447.  "The first is a

---

[8]Samsung maintains that the court should consider Porcarello's alleged mail and wire fraud, which does not involve All Pro, as a predicate act.  Samsung contends that, "[l]ike all predicate acts, Samsung is not required to plead specific instances of mail and wire fraud conducted by All Pro.  Instead, Samsung must only plead facts showing All Pro's contribution to the overall RICO scheme." P. Br. 14 (citations omitted).  The court disagrees with Samsung's position because it contradicts the explicit text of the statute, which makes it "unlawful for any person . . . to participate . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c).  The phrase "pattern of racketeering activity" modifies the "person['s]" participation, not the "enterprise's affairs."  Accordingly, as noted *supra* at § IV(D), Samsung must plead that All Pro itself committed two predicate acts of racketeering.

formal fiduciary relationship, which arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers." *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App. 2003, no pet.) (citing *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)).  "The second is an informal fiduciary relationship, which may arise from 'a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship.'"  *Id.* (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)).

Samsung does not attempt to demonstrate the existence of a formal fiduciary relationship; rather, it asserts an informal fiduciary relationship.  It contends that All Pro owed it a fiduciary duty because the two companies had a long lasting business relationship of trust and confidence that went beyond any specific contracts.

An informal fiduciary relationship "may arise from a variety of relationships where the parties are 'under a duty to act for or give advice for the benefit of another upon matters within the scope of their relation.'" *ARA Auto. Grp. v. Cent. Garage, Inc.*, 124 F.3d 720, 723 (5th Cir. 1997) (quoting *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 ( Tex. 1980)).  "The existence of a fiduciary relationship, outside of formal relationships that automatically give rise to fiduciary duties, is usually a fact intensive inquiry." *Id.* (citing *Moore*, 595 S.W.2d at 508). "Under Texas law, 'a fiduciary duty will not be lightly created' since 'it imposes extraordinary duties' and requires the fiduciary to 'put the interests of the beneficiary ahead of its own if the need arises.'" *Id.* (quoting *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 188 (5th Cir. 1995)).

- 25 -

B

Samsung cites *ARA* for the proposition that early Texas cases recognized an informal fiduciary duty exists where parties "were looking to profit from a shared risk, e.g., an oil and gas well, or the sale of a particular property and not where the parties' positions, harmonized for purposes of self-interest, were yet naturally antagonistic." *ARA*, 124 F.3d at 726 (quoting *Lee v. Wal-Mart Stores, Inc.*, 943 F.2d 554, 557-60 (5th Cir. 1991) (internal quotation marks omitted).   But *ARA* also notes that "[n]o Texas [or federal] case cited by [plaintiff] or uncovered in our research has affirmed a fiduciary obligation in the context of a . . . manufacturer-distributor relationship, or other transactional setting involving experienced managers . . . .   We decline to be the first." *Id.* at 726.   The court is similarly unaware of any authority that would support Samsung's claim.

Accordingly, the court concludes that Samsung has failed to plead a plausible claim for breach of fiduciary duties, and it dismisses the claim.

VI

All Pro also moves to dismiss Samsung's claim for aiding and abetting breach of fiduciary duties under Texas law.

A

"It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).  "A cause of action premised on contribution to a breach of a fiduciary

duty under *Kinzbach* must involve the knowing participation in such a breach." *Cox Tex. Newspapers, L.P. v. Wooten*, 59 S.W.3d 717, 722 (Tex. App. 2001, pet. denied) (citing *Kinzbach*, 160 S.W.2d at 514). For Samsung to state a claim for aiding and abetting breach of fiduciary duties, it must plead facts that enable the court to draw the reasonable inference that there was "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007).

B

Samsung alleges (1) that the Employee Defendants owed them fiduciary duties; (2) that All Pro knew the Employee Defendants were employees of Samsung and owed Samsung fiduciary duties because "it is commonplace in the telecom industry for companies to have policies prohibiting an employee from acting against the company's interest[,]" Am. Compl. ¶ 39; and (3) that All Pro knowingly participated in the Employees Defendants' breach by paying bribes to obtain discounted or free parts for Samsung devices. All Pro contends that these allegations are conclusory and do not prove knowledge, intent, or participation. The court disagrees.

Samsung has gone beyond mere recital of the *Kinzbach* standard and alleged facts that, if true, enable the court to draw the reasonable inference that All Pro is liable for the misconduct alleged. Samsung alleges that All Pro had knowledge based on its experience in the industry, and that All Pro actively participated in the breach of the duty through

- 27 -

bribery.  Accordingly, the court denies All Pro's motion to dismiss this claim.

VII

The court next addresses Samsung's claim for tortious interference with contract.

A

Under Texas law, the elements of tortious interference with contract are: (1) the existence of a contract, (2) willful and intentional interference, (3) interference that proximately caused damage, and (4) actual damage or loss.  *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

B

Samsung alleges that the Employee Defendants' employment contracts, and Samsung's own employee handbook, bound them to act in Samsung's best interests and to maintain confidentiality of Samsung's proprietary or confidential information.  The amended complaint also asserts that All Pro had actual knowledge of these contracts based on industry standards, and that their conflict was therefore intentional and willful.  Samsung also alleges that All Pro's payments to the Employee Defendants resulted in the Employee Defendants' selling Samsung parts at prices lower than market value, thereby proximately resulting in financial loss to Samsung.  Taking these allegations as true, the court concludes that Samsung has pleaded a plausible claim for tortious interference with contract.

VIII

The court now turns to Samsung's claim for civil conspiracy.

A

Under Texas law, a claim of civil conspiracy requires the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (quoting *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (internal quotation marks omitted)). To satisfy the "meeting of the minds" element, Samsung must allege that defendants had the "specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Id*. at 408 (quoting *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)) (internal quotation marks omitted). All Pro must have been "aware of the harm or wrongful conduct at the inception of the combination or agreement." *Id*. at 408 (quoting *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)). Samsung can establish intent by "circumstantial evidence and reasonable inference." *Id*. at 409 (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968)). Civil conspiracy is a derivative tort, meaning that "liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996). Samsung alleges six derivative torts.

B

All Pro maintains, *inter alia*, that Samsung has not adequately pleaded a meeting of

the minds.  To satisfy this requirement, Samsung must allege that there was a "preconceived

plan and unity of design and purpose."  *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex.

App.2003, no pet.).  "For a civil conspiracy to arise, the parties must be aware of the harm

or wrongful conduct at the inception of the combination or agreement."  *Triplex Commc'ns,*,

900 S.W.2d at 719.  Samsung has failed to allege a preconceived plan or a time and place at

which All Pro and other defendants had a meeting of the minds regarding the object of the

conspiracy.  *See Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 794 (N.D. Tex.

2009) (Boyle, J.) (dismissing civil conspiracy claim because, *inter alia*, "it fail[ed] to specify

who was involved, precisely what the interaction was or what actions were decided upon, or

when any meeting of the minds occurred between those parties"); *Patel v. Pac. Life Ins. Co.*,

2009 WL 1456526, at *16 (N.D. Tex. May 22, 2009) (Boyle, J.) (dismissing civil conspiracy

claim because, *inter alia*, "[t]he conspiracy claim identifie[d] no specific time or place in

which any meeting of the minds" took place).

Samsung alleges that, "[f]rom 2012-2014, Chung, Porcarello, and other Samsung

employees wrongfully provided 'build kits' to third-parties" for the purpose of diverting

counterfeit devices to All Pro, Am. Compl. ¶ 32, and, "from 2012 to 2015, All Pro won

approximately 60-70% of the [allegedly rigged] auctions," *id.* at ¶ 50.[9]  Samsung does not

---

[9]Because the elements of commercial bribery and civil conspiracy appear to be
similar, it may seem incongruous to dismiss one claim but not the other.  But civil conspiracy

make any other allegations regarding time with respect to All Pro's involvement in the conspiracy.

These allegations are insufficient. *See, e.g.*, *Berry*, 608 F.Supp.2d at 795 ("A period of years is not definitive enough in the context of the conspiracy claim as alleged to put any defendant on sufficient notice to be able to defend."); *Orthoflex*, 2012 WL 2864510, at *7 (holding insufficient allegations that "'[b]etween 2008 and present, [defendants] became aware that the other [defendants] desired to obtain ThermoTek's confidential and proprietary information,' and that 'each formed the specific intent to assist the other in obtaining the . . . information.'" (brackets in original)).

Accordingly, the court dismisses Samsung's civil conspiracy claim.

IX

Finally, the court analyzes Samsung's Texas-law claim for misappropriation of confidential information.

A

Samsung alleges that its claim for misappropriation of confidential information arises under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. § 134A.001-.008 (West 2015). But as Samsung notes in its brief, Texas common law applies

---

requires more specific pleading than does commercial bribery. For example, concerning knowledge, commercial bribery requires "an agreement or understanding that the benefit will influence the conduct," Tex. Penal Code Ann. § 32.43(b), whereas civil conspiracy requires much more specific "aware[ness] of the harm or wrongful conduct at the inception," *Triplex Commc'ns*, 900 S.W.2d at 719. Civil conspiracy also requires a specific pleading of time, which Samsung has not alleged in support of its commercial bribery claim.

- 31 -

because TUTSA took effect after the alleged misappropriation began. *See id.* § 134A.001 note (West 2015) ("A misappropriation of a trade secret made before and a continuing misappropriation beginning before the effective date of this Act are governed by the law in effect immediately before the effective date of this Act[.]"). Samsung's misplaced reliance on TUTSA is immaterial, however, because Samsung also sufficiently pleads the elements of Texas common law misappropriation of confidential information.

B

Under Texas common law, Samsung can recover for a misappropriation of confidential information if the information is kept secret. *See Alliantgroup, L.P. v. Feingold*, 803 F.Supp.2d 610, 624 n.3 (S.D. Tex. 2011) (Rosenthal, J.) (collecting cases showing that Texas common law similarly protects trade secrets and confidential information that meets certain requirements—including secrecy).[10]   To state a claim for misappropriation of confidential information, Samsung must plausibly allege (1) the existence of confidential information, (2) breach of a confidential relationship or improper discovery of confidential information, (3) use of the confidential information without the plaintiff's authorization, and (4) resulting damages. *See Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 738 (Tex.

---

[10]While Texas law is unclear as to what constitutes confidential information, Judge Rosenthal suggests that it is a less exacting standard than that for trade secrets—which is determined by looking to six "relevant" but non-exclusive factors. *Alliantgroup, L.P.*, 803 F.Supp.2d at 624-26.  At a minimum, "there is no cause of action for misappropriation of confidential information that is not either secret or, at least *substantially* secret." *Stewart v. Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 879 S.W.2d 89, 99 (Tex. App. 1994, no writ) (emphasis in original).

App. 2010, no pet.) (addressing standard for misappropriation of trade secrets).

Samsung pleads that, prior to auctions, Chung provided All Pro confidential information relating to (1) the types of parts coming up for auction and (2) other bidders at the auction. According to the amended complaint, Samsung did not distribute any of this information until closer to the auction, and the information was kept confidential until that point. Samsung alleges that All Pro used this information to pre-sell parts that it purchased at auction, thereby undercutting the market price and, in turn, Samsung's profits. Taking these facts as true, Samsung has pleaded a plausible claim for misappropriation of confidential information. It has alleged facts addressing each essential element of a misappropriation claim. Accordingly, the court denies All Pro's motion to dismiss this claim.

X

Although the court is granting in part All Pro's motion to dismiss, it will permit Samsung to replead. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).[11] There is no indication that Samsung cannot, or is unwilling to, cure the defects in its amended complaint. The court therefore grants Samsung

---

[11]Because the court did not address the merits of All Pro's prior motion to dismiss, it considers this memorandum opinion and order to be the first that alerts Samsung to the court's conclusions about the deficiencies in Samsung's pleadings and Samsung's first opportunity to cure deficiencies that the court has identified.

28 days from the date this memorandum opinion and order is filed to file a second amended

complaint.  If Samsung repleads, All Pro may move anew to dismiss the amended claims, if

it has a basis to do so.

*   *   *

For the reasons explained, the court grants All Pro's motion as to Samsung's claims

for civil RICO violations under 18 U.S.C. 1962(a) and 18 U.S.C. 1962(d), breach of

fiduciary duties, and civil conspiracy, and otherwise denies the motion.  The court also grants

Samsung leave to replead.

**SO ORDERED**.

February 16, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE