IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS AMERICA, INC., | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:15-cv-4108-D |
| YANG KUN "MICHAEL" CHUNG, THOMAS PORCARELLO, YOON-CHUL"ALEX" JANG, JIN-YOUNG SONG, and ALL PRO DISTRIBUTING, INC., | § § § § § § | **FILED UNDER SEAL** |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On March 7, 2017, the Court entered a Memorandum Opinion and Order granting in part and denying in part Defendant All Pro Distributing, Inc.'s ("All Pro") Second Motion to Compel Plaintiff to Withdraw Improper Objections and Respond Fully to Written Discovery [Dkt. No. 85] and Plaintiff Samsung Electronics America, Inc.'s ("Samsung") Opposed Motion for a Limited Protective Order [Dkt. No. 97]. *See* Dkt. No. 107.

All Pro has now filed a Motion to Compel Compliance with Court's Order and Motion for Sanctions, *see* Dkt. No. 123 (the "Sanctions Motion"), asking the Court "to compel [Samsung] to comply with Magistrate Judge Horan's March 7, 2017 discovery Order [Dkt. 107], and to issue sanctions to Samsung, including but not limited to awarding All Pro the attorneys' fees it incurred to prepare this Motion and any Reply,

and to prepare for and attend any hearing and/or conference set by the Court," *id.* at 1. United States District Judge Sidney A. Fitzwater has referred the Sanctions Motion to the undersigned United States magistrate judge for a hearing, if necessary, and for determination and/or recommendation under 28 U.S.C. § 636. *See* Dkt. No. 125. Samsung filed a response, *see* Dkt. No. 132; All Pro filed a reply, *see* Dkt. No. 141; and Defendant Jin-Young Song ("Song") has filed a Joinder in Part with All Pro's Motion to Compel Compliance with Court's Order. *See* Dkt. No. 160.

Samsung has also filed a Motion to Compel Defendant All Pro Distributing, Inc. to Withdraw Improper Objections and to Answer Plaintiff's Interrogatories, *see* Dkt. No. 126 (the "Rogs MTC"), asking the Court to "order All Pro to withdraw all objections not asserted as a basis for withholding responsive information, to withdraw all improper objections outlined above (or for the Court to overrule them), and order All Pro to provide full, complete, sworn answers to Samsung's interrogatories as set forth" in the Rogs MTC, *id.* at 18.

Samsung also filed a Motion to Compel Defendant All Pro Distributing, Inc. to Withdraw Improper Objections and Provide Responses to Plaintiff's Requests for Production That Comply with the Federal Rules of Civil Procedure, *see* Dkt. No. 128 (the "RFPs MTC"), asking the Court "to order All Pro to withdraw all improper objections and assertions of privilege, to withdraw objections not used as a basis for withholding responsive documents, to clarify what documents are being withheld and what documents have been produced, and generally to provide responses that comply with the Federal Rules of Civil Procedure," *id.* at 2.

Judge Fitzwater has referred the Rogs MTC and RFPs MTC to the undersigned for a hearing, if necessary, and determination under 28 U.S.C. § 636. *See* Dkt. Nos. 127 & 129.

All Pro filed responses to the Rogs MTC and the RFPs MTC, *see* Dkt. Nos. 133 & 137, and Samsung filed a reply in support of each motion, *see* Dkt. Nos. 142 & 152.

A few weeks after filing its responses and after Samsung had filed its reply in support of the Rogs MTC, All Pro also filed an Opposed Motion for Leave to File Supplemental Evidence in Support of All Pro's Responses to Plaintiff's Motions to Compel, *see* Dkt. No. 151 (the "Motion for Leave"), asking the Court for leave to file supplemental evidence, in the form of an affidavit, in support of All Pro's responses to the Rogs MTC and RFPs MTC. All Pro noted that "This Court has held that a party resisting discovery may satisfy its burden to substantiate its objections to discovery requests as overbroad and unduly burdensome by either (1) submitting an affidavit, or (2) by making a specific, detailed showing of how the requests are overbroad and unduly burdensome." *Id.* at 2 (internal quotation marks omitted). "All Pro contends that its sworn amended objections and answers to Samsung's Interrogatories, its amended objections and responses to Samsung's Requests for Production, and the facts set forth in its Responses to Samsung's [Rogs MTC and RFPs MTC] satisfy All Pro's burden to provide a specific, detailed showing of how Samsung's requests are overbroad and unduly burdensome," but, All Pro explains, "Samsung continues to complain that All Pro has not substantiated its objections to its discovery requests," and, "as a result of the parties' recent conferences in attempt to resolve the issues in [Samsung's Rogs

MTC and RFPs MTC], additional facts have surfaced that are relevant to All Pro's Responses to" Samsung's Rogs MTC and RFPs MTC. *Id.* "Thus, in an effort to assist the Court in resolving the issues set forth in Samsung's [Rogs MTC and RFPs MTC], All Pro asks the Court for leave to submit the 'Affidavit of Shachar 'Shawn' Shabtay' as evidentiary support in opposition to" Samsung's Rogs MTC and RFPs MTC. *Id.* (footnote omitted). Samsung filed a response opposing leave, *see* Dkt. No. 157, and All Pro filed a reply, *see* Dkt. No. 161.

On June 13, 2017, the Court heard oral argument on the Sanctions Motion, the Rogs MTC, the RFPs MTC, and the Motion for Leave. *See* Dkt. No. 165.

For the reasons and to the extent explained below, the Court DENIES All Pro's Sanctions Motion [Dkt. No. 123], GRANTS in part and DENIES in part Samsung's Rogs MTC [Dkt. No. 126], GRANTS in part and DENIES in part Samsung's RFPs MTC [Dkt. No. 128], and DENIES All Pro's Motion for Leave [Dkt. No. 151]. *See generally Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers a motion for sanctions to a magistrate judge, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the magistrate judge finds that dismissal or another sanction disposing of a claim or defense is unwarranted, the motion should be characterized as non-dispositive and may be ruled on by the magistrate judge) (followed in *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-1885-L-BN, Dkt. No. 373 at 2 (N.D. Tex. Dec. 1, 2016)).

# Background

The pertinent factual background is familiar to the parties, but the Court will recount the procedural history relevant to, and the parties' arguments in support of or opposition to, these four motions.

## I.   All Pro's Sanctions Motion

In the March 7, 2017 Memorandum Opinion and Order (the "March 7 Discovery Order"), the Court explained that,

> as Song and All Pro have both persuasively explained, Samsung has not shown good cause to withhold production of witness statements, transcripts of witness interviews, and recorded interrogations – either from the defendants who actually made the statements and were the subject of the interviews or from the other defendants, including All Pro – until after depositions are taken. The relevance of this discovery and its proportionality to the needs of the case is not in dispute. Both as to the defendants who are entitled to production under Rule 26(b)(3) and as to All Pro, which has properly requested these materials under Rule 34, Samsung "has failed to articulate why this circumstance demonstrates that [these witnesses] would not testify truthfully or would testify truthfully only because of the threat that [their] prior statements might contradict [them]," and, despite its burden under Rule 26(c)(1), Samsung "has provided the Court with no reason, other than a mere suspicion, that providing [All Pro and the Employee Defendants] with [the witnesses' statements], which [the witnesses are each] entitled to under our Federal Rules, will result in anything other than honest testimony." *Hill v. Hornbeck Offshore Servs., LLC*, Civ. A. No. 10-2121, 2011 WL 2550510, at *4 (E.D. La. June 27, 2011).
>
> At oral argument, Samsung's counsel relied heavily on the reasoning in *Gerber v. Down East Community Hospital*, 266 F.R.D. 29, 33-34 (D. Me. 2010), but the discussion there involved e-mail correspondence with potential witnesses, which the resisting party asserted was protected from disclosure as attorney work-product. Samsung is not claiming work-product protection over the witness statements, transcripts of witness interviews, and recorded interrogations at issue here.
>
> Because Samsung has not provided suitable good cause basis for delaying the production of the statements, All Pro's Second MTC will be

granted as to the witness statements, transcripts of witness interviews, and recorded interrogations responsive to All Pro's First Request for Production Nos. 3-9, 11, 15, 19, 39-44, 48-51, 56, 58, 59, 61-71, 73, 80, and 81 and All Pro's Third Requests for Production Nos. 1-12, 15, 17, 19, 20, 22-37, and 39-41, and Samsung's MPO will be denied as to these materials, which must be produced by **March 17, 2017**.

Likewise, the Court determines that Samsung has not met its burden to support a protective order against production of recorded interviews of Samsung employees other than the Terminated Employees that are responsive to some or all of All Pro's First Request for Production Nos. 3-9, 11, 15, 19, 39-44, 48-51, 56, 58, 59, 61-71, 73, 80, and 81 and All Pro's Third Requests for Production Nos. 1-12, 15, 17, 19, 20, 22-37, and 39-41. Although Samsung contends, without more, that those interviews may cover matters in addition to the subject matter of Samsung's allegations in this case and would be burdensome to produce because they were conducted in Korean, Samsung has not made the required particular and specific demonstration of fact to show that production of these interviews, which it admits include responsive and relevant material, would be unduly burdensome or expensive or oppressive by submitting affidavits or offering evidence revealing the extent of the burden. All Pro's Second MTC will be granted and Samsung's MPO denied as to these recorded interviews of nonparty Samsung employees, which must be produced by **March 21, 2017**.

Dkt. No. 107 at 39-41.

In the Sanction Motion, All Pro asserts that, "[a]fter unreasonably withholding discoverable witness statements for more than one year and unnecessarily forcing All Pro to seek court intervention, Samsung has brazenly disobeyed the Court's [March 7 Discovery Order] to produce recorded witness interviews and written statements of the individual Defendants and of non-party witnesses." Dkt. No. 123 at 1. According to All Pro, "[a]lthough Samsung did produce 190 hours of recorded interviews and 30 written statements to All Pro's counsel, Samsung improperly designated all of the materials as 'CONFIDENTIAL ATTORNEY EYES ONLY,' thereby preventing individuals at All Pro from reviewing the highly relevant evidence that purportedly incriminates them

and impeding All Pro's ability to adequately defend against Samsung's claims." *Id.* at 1-2. All Pro contends that "Samsung's blanket 'CONFIDENTIAL ATTORNEY EYES ONLY' designations defy the Court's [March 7 Discovery Order] and serve to illustrate Samsung's continual abuse of the discovery process. As such, All Pro moves this Court to intervene so Samsung will cease its improper gamesmanship and will stop wasting All Pro's and the Court's resources." *Id.* at 2.

All Pro argues that,

[a]lthough Samsung did produce recorded interviews and written statements to All Pro's counsel, Samsung improperly designated all of the materials as "CONFIDENTIAL ATTORNEY EYES ONLY" ("AEO") and falsely claimed that all of the materials "fit squarely" in the AEO category under the Agreed Protective Order for this case. This is the latest instance of shrewd gamesmanship Samsung has continually engaged during this litigation. Samsung's blanket AEO designations unfairly prevent key individuals at All Pro from reviewing the highly relevant evidence that purportedly incriminates them and, as a result, impedes All Pro from adequately defending against Samsung's claims. These actions defy the Court's [March 7 Discovery Order] and constitute an abuse of the parties' Agreed Protective Order.

The Court clearly intended for all the Defendants to have access to all of the materials Samsung was ordered to produce. [Dkt. 107 at pp.39-41]. There is absolutely no indication in the [March 7 Discovery Order] that the Court intended the recorded interviews and written statements to be withheld from any of the parties, or that the parties' use of the materials in this case should be limited. Despite numerous opportunities to do so during All Pro's year-long attempt to compel these materials, Samsung never indicated to All Pro, or to the Court in its briefing and oral arguments, of its intent to designate the materials as AEO. Samsung's failure to do so was a clear abuse of the discovery process as Samsung wasted All Pro's and the Court's time and efforts by allowing briefing and oral arguments to proceed without raising this critical issue.

Also, contrary to Samsung's representations, many of the written statements it has restricted All Pro from accessing do not fit in the AEO category. Moreover, it is preposterous for Samsung to represent that

100% of the 190 hours of recorded interviews fall in the AEO category when counsel for Samsung has not even reviewed the majority of them.

Samsung's continual attempts to gain a tactical advantage in this litigation by engaging in improper gamesmanship must cease. All Pro requests that this Court intervene so that Samsung will stop abusing the discovery process.

Dkt. No. 124 at 4-5 (emphasis removed).

All Pro contends that the Court "ordered Samsung to produce recorded interviews and witness statements of both the Employee Defendants and non-party Samsung employees" and "to produce the materials to all the Defendants" and that "[t]he [March 7 Discovery Order] certainly did not limit Samsung's production of these materials to only the parties' attorneys." *Id.* at 12-13 (emphasis removed). All Pro contends that, "[n]evertheless, Samsung boldly designated 100% of the recorded interviews and witness statements that it produced as 'CONFIDENTIAL ATTORNEYS EYES ONLY,' thereby preventing individuals at All Pro from reviewing the materials." *Id.* at 13.

All Pro further reports that "Samsung's counsel admitted to All Pro's counsel that he has not reviewed all of the recorded interviews and cannot state that the entire 190 hours of recorded interviews contain information that may be protected by an AEO designation," and All Pro asserts that "[i]t is an abuse of the discovery process for Samsung to label every one of the recorded interviews as AEO without even knowing whether they actually contain information that warrants such a designation." *Id.* at 16.

All Pro requests that the Court "1. Compel Samsung to fully comply with the Court's [March 7 Discovery Order]; 2. Compel Samsung to remove the

'CONFIDENTIAL ATTORNEY EYES ONLY' designations from the recorded interviews and written statements it has produced; 3. Award to All Pro its attorneys' fees related to the costs of preparing this [Sanction] Motion and any Reply, and to prepare for and attend any hearing and/or conference set by the Court; [and] 4. Issue any additional sanctions to Samsung that the Court deems just." Dkt. No. 123 at 2.

In his Joinder in Part with All Pro's Motion to Compel Compliance with Court's Order, Song "joins the request that the Court require Samsung to comply with the Court's [March 7 Discovery Order] [Doc 107] by either (a) removing Samsung's Attorneys' Eyes Only (AEO) designation from the 9 videos of Samsung employees or former employees who are not defendants in this case (Non-Defendant Videos) produced in response to the [March 7 Discovery Order] or (b) allowing Defendant Song to review the Non-Defendant Videos under ¶ 13(c) of the Agreed Protective Order [], which allows someone to review AEO materials despite that designation if 'counsel for the party designating the material agrees that the material may be disclosed to the person.'" Dkt. No. 160 at 1.

Song explains that, after the Court entered its March 7 Discovery Order, "[o]n or around March 17, 2017, Samsung produced various written witness statements and 12 video interviews, all of which Samsung marked AEO. The produced videos consist of 3 Defendant videos of Defendants [Yang Kun "Michael"] Chung, [Yoon-Chul "Alex"] Jang and Song, plus the 9 Non-Defendant Videos of Jin Ahn, Seol Hong, Gangho Ryu, Heedong Yun, Sunwook Nam, Alan Park, Angela Kim, Vincent Kim and Eunice Kang. After several conferences between Samsung's counsel and Song's counsel, Samsung

agreed to allow Song to review all of the written witness statements and all of the Defendants' videos [Doc 132-1, Ex. B]. Thus only the 9 Non-Defendant Videos remain at issue between Song and Samsung." *Id.* at 2-3 (citation omitted).

Song contends that, "[f]or the same reasons the Court concluded in March that Song is entitled to receive the Non-Defendant Videos – without limitation or restriction – Song remains entitled to receive and review them, not just his non-Korean speaking counsel," and that "Samsung's AEO designation of the 9 Non-Defendant Videos is not proper as to Song," who, "[j]ust like the Non-Defendant Samsung employee witnesses, ... is a former Samsung employee" and, "[a]s a former Samsung employee, ... already was privy to Samsung's internal processes, procedures, and vendors, which is the information that Samsung 'deems especially sensitive' justifying, so Samsung says, an AEO designation." *Id.* at 3. Song argues that,

> [t]hrough its AEO designations, Samsung unilaterally "grants" itself protection that the Court did not grant and, in fact, denied when deciding Samsung's Motion for Limited Protective Order and All Pro's Second Motion to Compel. That is, Samsung's unilateral AEO designation garners it much stronger and longer lasting relief than it previously requested and the Court denied. For example, the AEO designations and lack of exception for Song prevents Song from reviewing all but his own and the other Defendants statements and videos for the duration of the lawsuit or until the Court orders otherwise, despite the Court's [March 7 Discovery Order]. The AEO designation, in effect, serves as an "end-run" circumventing the Court's [March 7 Discovery Order] that Song has a right to the Non-Defendant Videos.
>
> Song has the right to defend himself and to review, study, analyze and consult with counsel about the statements of others that may directly or indirectly either implicate or vindicate him, as Samsung has suggested these videos may as to its claims generally. The AEO designation is particularly and unnecessarily cumbersome for Song because the Non-Defendant Videos each appear to be conducted in Korean. It should come as no surprise that Song's counsel does not speak or read Korean,

and Song both speaks and reads Korean. Under the circumstances, Song should not be forced to undertake the time and expense – which Samsung as the Plaintiff still apparently has not undertaken – to pay a translator to transcribe and/or watch over 110 hours of videos with Song's counsel when Song himself speaks and reads Korean. Instead, Samsung should be required to either (1) remove the AEO designation of the Non-Defendant Videos or (2) allow Song to review them under ¶ 13(c) of the [Agreed Protective Order].

*Id.* at 4-5.

Song alternatively asks the Court to order relief based on an alternative proposal that his counsel has made to Samsung regarding the Non-Defendant Videos:

Song's counsel proposed the following: if either [Samsung's counsel] Mr. Riemer, Mr. Lowenstein or Mr. Ansley "will represent to [Song's counsel] that you or someone at your direction has reviewed the non-party videos and determined that none contain information that either materially incriminates or materially exculpates Mr. Song, then that may be enough to satisfy my concern." Mr. Riemer responded that he found that alternative proposal "well taken." At that time (late March 2017), Song's counsel understood that Samsung had not yet transcribed or translated any of the universe of 12 videos. But Mr. Riemer's 04/27/17 Declaration makes clear that by that date, Mr. Riemer himself had reviewed, with the benefit of a Korean translator, 6 of the 9 Non-Defendant Videos at issue between Song and Samsung: Jin Ahn, Seol Hong, Gangho Ryu, Heedong Yun, Sunwook Nam, and Eunice Kang. Song's counsel repeated the alternative proposal and asked Mr. Riemer if he could make the requested representation about one or more of the 6 Non-Defendant Videos he had reviewed. Despite emails and calls, Song's counsel's request remains pending without a response.

In the alternative and consistent with the proportionality review set down in the 2015 Rule amendments, Song asks that the Court order Samsung to either (1) transcribe and translate the Non-Defendant Videos and produce the translations or (2) have Samsung's counsel complete the review of the Non-Defendant Videos with the benefit of a translator and, for each of the 9 Non-Defendant Videos, and (a) represent in writing whether or not the video contains anything that materially implicates or exculpates Song, and (b) with respect to any that Samsung's counsel discerns do NOT contain any such material, stipulate that Samsung will not offer such video against Song, and (c) with respect to each video, if any, that Samsung's counsel discerns DOES contain information that

implicates or exculpates Song, produce a translation of such portions implicating or exculpating Song. This alternative relief allows Samsung a procedure by which it can protect from Song any of the "highly sensitive business information" that is "wholly unrelated to this case" or unrelated to Song while also being fair to Song and the Federal Court discovery and disclosure process. Under the circumstances, it seems fair for Plaintiff Samsung to bear the responsibility to do one of these 2 options in order to allow Song and Song's counsel to review the portions, if any, that implicate or exculpate him (which surely should not properly be hidden from him), or rest comfortably knowing that although he may not have seen one or more of these videos, Samsung will not use them in its case against him and there is nothing on them that materially implicates or exculpates him. From Song's perspective, asking Samsung as Plaintiff to put its "money where its mouth is" seems particularly appropriate in this situation.

*Id.* at 5-6 (citations and footnote omitted).

In response to the Sanctions Motion, Samsung contends that:

All Pro's [Sanctions] Motion is baseless and should be denied. Notwithstanding All Pro's inflammatory and unsupported assertions, Samsung fully and timely complied with the Court's [March 7 Discovery Order]. More specifically, the Court ordered Samsung to produce all of the videos and witness statements relating to the interviews conducted during Samsung's internal investigation in summer 2015, which led up to the filing of this lawsuit. Samsung did so. And All Pro does not seriously contend otherwise.

Stripped down, All Pro's complaint is not that Samsung violated the Court's [March 7 Discovery Order]. Instead, All Pro objects to Samsung's designation of certain materials as "Confidential Attorney Eyes Only" (sometimes referred to herein as "AEO"), pursuant to the Agreed Protective Order, entered by the Court on March 29, 2016 (the "Agreed Protective Order") [Dkt. No. 35]. All Pro essentially admits in its own Motion that it has not reviewed any of the videos that it claims should not be designated as "Confidentially Attorneys Eyes Only." The videos include interviews with 12 Samsung employees, and contain roughly 190 hours of footage. The videos delve deep into non-public, intricate details of Samsung's internal operating procedures. Accordingly, it should come as no surprise that Samsung designated these materials as "Confidential Attorney Eyes Only" pursuant to the Agreed Protective Order. The materials fit squarely into the category of "Confidential Attorney Eyes Only" as defined by the Agreed Protective Order, as the

videos clearly reflect "information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade secret information."

Moreover, All Pro's Motion is also misleading to the extent it suggests that Samsung has sought to prevent All Pro employees from reviewing any portion of the subject material. All Pro failed to inform the Court of Samsung's efforts to negotiate a practical solution to the issues in the [Sanctions] Motion, which simultaneously allows All Pro access necessary materials and protects Samsung's highly sensitive information. In fact, Samsung has explicitly permitted certain All Pro employees – identified by All Pro – to review the videos of the Defendants. All Pro's counsel, of course, has the right to review all of the videos as well. In addition, All Pro has failed to articulate any reason necessitating the disclosure of the videos of the non-parties beyond All Pro's counsel. In sum, All Pro has failed to set forth a basis establishing that it is entitled to an "order to alter the confidential status of the designated information." [See Dkt. No. 35 at ¶ 7]. More to the point, All Pro has certainly failed to establish any willful disobedience to the Court's [March 7 Discovery Order] to support its request for sanctions.

Finally, the Agreed Protective Order sets forth a simple procedure for objecting to confidentiality designations. All Pro ignored that procedure, choosing instead to continue its pattern of filing inflammatory motions and accusing Samsung of committing discovery violations and seeking sanctions. This is especially improper when All Pro has filed its motions while wholly failing to ensure that its own discovery responses complied with the law cited in its own motions. [See Dkt. Nos. 126, 128]

For the foregoing reasons, the Motion should be denied in its entirety. All Pro's dispute about the confidentiality designation on the materials produced in compliance with the Court's [March 7 Discovery Order] need to be raised in a proper motion pursuant to the terms of the Agreed Protective Order. In the alternative, in the event the Court finds that any of the confidentiality designations should be altered, Samsung requests that the designations be changed to "Confidential Information," rather than removing a confidentiality designation altogether.

Dkt. No. 132 at 1-3 (emphasis removed).

Samsung explains that, "[i]f an alleged failure to comply with a discovery order is 'substantially justified' or if "other circumstances make an award of expenses unjust,' then an award of fees is not permitted by Rule 37" and asserts that, where "the only

true 'desired result' by All Pro is a change to the confidentiality designation of the materials Samsung produced in compliance with the Court's [March 7 Discovery Order]" and where "All Pro is simply attempting to achieve that result through a motion for sanctions rather than the procedures ordered by the Court in the Agreed Protective Order," "[t]here is no legal or factual basis for sanctions in this case, and all of Samsung's actions are substantially justified." *Id.* at 7-8.

Samsung contends that the Court's March 7 Discovery Order "neither contemplated nor ordered what confidentiality designation Samsung must provide to the produced materials," which matter, "[b]y Court order," "are governed by the Agreed Protective Order." *Id.* at 9. Rather, according to Samsung, the Court's March 7 Discovery Order

> essentially orders Samsung to do two things. First, the Court orders Samsung to produce to each party their own witness statements in accordance with Rule 26(b)(3) by March 17, 2017. Samsung fully complied with that [March 7 Discovery Order] on March 16, 2017, when it produced to each Defendant their respective Video and witness statement under an "Attorneys' Eyes Only" designation. Under the terms of the Agreed Protective Order, each Defendant is entitled to review their own video and witness statement even with the "Attorneys Eyes Only" designation as "the information was previously received or authored by the person...." [Dkt. No. 35 at ¶13(a)]. Thus, the "Attorneys' Eyes Only" designation fully complies with the Court's order to produce to each party their own witness statement in accordance with Rule 26(b)(3).
>
> Second, the Court's [March 7 Discovery Order] requires Samsung to produce to All Pro (and to Song, which essentially joined in the motion) a copy of all the other Defendant and non-party witness statements and recorded interviews by March 17, 2017, and March 21, 2017, respectively. On March 16, 2017, Samsung more than fully complied with the Court's [March 7 Discovery Order] when it produced all of the Defendant Videos and Defendant witness statements and all of the Non-Party Videos and Non-Party witness statements to all counsel of record (including to counsel for Defendants Porcarello and Jang, which did not join in All

Pro's Second Motion to Compel) pursuant to an "Attorneys Eyes Only" designation. When All Pro asked for Shawn Shabtay, Tamir Shabtay, and Farshad Darvish of All Pro to be permitted to review the Defendant Videos designated as "Attorneys Eyes Only," Samsung agreed. Thus, under the express terms of Paragraph 13(c) of the Agreed Protective Order, those All Pro representatives were granted access to all of the Defendant Videos.

....

Accordingly, Samsung complied with the Court's [March 7 Discovery Order]. All Pro's instant [Sanctions] Motion is nothing more than a dispute about the appropriate confidentiality designations that in no way impacts All Pro's ability to conduct its defense in this case. Those issues should be more appropriately addressed in a motion brought pursuant to the terms of the Agreed Protective Order, not a motion for sanctions.

*Id.* at 9-10 (citations and footnote omitted). Samsung contends that its "request that All Pro comply with Paragraphs 7 and 13 of the Agreed Protective Order to address any dispute concerning the 'Attorneys Eyes Only' designation is substantially justified" and, further, that "[a] glaring omission in All Pro's [Sanctions] Motion is any discussion of the actual contents of the videos or any argument that the materials are not properly designated as 'Confidential Attorneys' Eyes Only' based on those contents and the terms of the Agreed Protective Order." *Id.* at 13. Samsung argues that "the videos clearly encompass AEO materials, and Samsung has already proposed a process whereby designated All Pro employees will have access to review the Defendant Videos" and that "All Pro has failed to articulate any reason for disclosing the Non-Defendant Videos to individuals beyond All Pro's counsel," who, "of course, has the right to translate and review the videos and the witness statements to conduct its defense." *Id.* at 18-19.

Samsung also notes that Defendant Yang Kun "Michael" Chung "has not contacted Samsung regarding any challenge of the 'Attorneys Eyes Only' designation or about any request for the production of the other Defendant or Non-Party videos or witness statements." *Id.* at 5 n.3. According to Samsung, although it "did not produce the videos or witness statements of the other Defendants or Non-Party employees to *pro se* Defendant Chung, the Court did not order Samsung to produce those materials to him in the [March 7 Discovery Order]," and "Defendant Chung has raised no complaints about the production made to him following the Court's [March 7 Discovery Order]." *Id.* at 10.

All Pro replies that "Samsung essentially contends: (a) it has the right to make blanket designations of numerous materials as AEO without making a good faith effort to limit the designations to necessary portions, (b) Defendants have the burden to prove Samsung's designations are improper even when the Court's [March 7 Discovery Order] states Defendants are 'entitled' to the materials, and (c) Samsung should not be penalized for intentionally over-designating materials as AEO even though the majority of the materials clearly do not fit within the AEO category." Dkt. No. 141 at 2 (emphasis removed).

All Pro argues that "Samsung's production of the witness statements is governed by this Court's [March 7 Discovery Order], not the [Agreed Protective Order" and that "[t]he production would have been governed by the [Agreed Protective Order] had Samsung willingly produced the materials, rather than forced All Pro's year-long efforts to obtain them and forced the Court to issue an order." *Id.* at 3 (footnote

omitted). According to All Pro, "[i]n reaching its decision, the Court denied Samsung's Motion for Protective Order and specifically rejected Samsung's argument that the non-parties' statements should be withheld because they contain information that is irrelevant to this case and 'contain confidential information pertaining to Samsung's business practices,'" and "Samsung did not challenge the Court's ruling, did not request any clarification, and did not request reconsideration of the decision. Nonetheless, Samsung produced the statements in a manner that precludes All Pro's personnel from reviewing them, and prevents All Pro's counsel from effectively utilizing the materials." *Id.*

All Pro also asserts that "Samsung has made false statements to the Court about the contents of the witness statements in an attempt to justify its blanket AEO designations and improper withholding of the materials from All Pro. The majority, if not all, of the witness statements contain no 'especially sensitive' information that warrant AEO protection. Rather, the statements primarily contain (i) general facts about Samsung's operations that are not proprietary, (ii) factual information about relevant events; (iii) information that is either publically known or already known to third parties, and/or (iv) information that is directly relevant to Samsung's allegations against All Pro, which Samsung has put at issue and opened the door for discovery." *Id.* at 4.

And All Pro replies that "Samsung's criticism of All Pro for complaining about its blanket designation of every single videotaped interview, when All Pro had not reviewed the recordings, is without merit. It was not necessary for All Pro to have

reviewed the 190 hours of footage for purposes of this Motion. As set forth above, All Pro seeks to compel Samsung to comply with the Court's [March 7 Discovery Order] to provide All Pro, including its personnel, with access to the materials." *Id.* at 7.

And, All Pro asserts that, "[c]ontrary to Samsung's assertions, All Pro did follow the process set forth in the [Agreed Protective Order] for challenging Samsung's AEO designations. [See Dkt. 35 at ¶7]. All Pro objected to the blanket designations on March 20, 2017 and then participated in multiple conferences with Samsung in attempts to resolve the issues. [*Id.*; see Dkt. 124 at ¶¶12-13; *see also* Dkt. 132 at pp.5-7]. Then, All Pro waited more than two weeks for Samsung to decide whether or not it would change its designations, and finally filed its Motion on April 6, 2017, 'seek[ing] an order to alter the confidential status of the designated information.' [See Dkt. 35 at ¶7; see Dkt. 124 at IV(2)]." Dkt. No. 141 at 7.

All Pro argues that, while "Samsung also criticizes All Pro for 'refusing to accept Samsung's reasonable protocol' that would allow All Pro's personnel to review only the videotaped interviews of the Employee Defendants (which are all in Korean)," "the Court already decided that All Pro is entitled to review these materials. Samsung's AEO designations unnecessarily required All Pro to obtain special permission from Samsung to allow three members of its personnel to view the interrogations." *Id.* at 8. "Furthermore, Samsung's proposed 'protocol' failed to resolve the issue of All Pro inability to use the materials during depositions and at trial, and still precluded All Pro's personnel from viewing any written statements and from viewing the videotaped interviews of the non-party witnesses." *Id.*

All Pro maintains that "Samsung's deplorable conduct warrants sanctions:

> Samsung's conduct clearly reflects it does not believe it must adhere to the requirement that parties disclose discoverable information as quickly and efficiently as possible. Samsung has made every effort to delay the production of discoverable items. Even after being ordered to produce the materials, Samsung took steps to conceal the information contained in the materials, causing All Pro and this Court to unnecessarily waste their time, efforts, and resources.
>
> All Pro has provided the Court with ample evidence of Samsung's willful disobedience and gross indifference to the Court's [March 7 Discovery Order] and the federal rules governing discovery. Throughout All Pro's year-long attempt to obtain the witness statements, Samsung never indicated to All Pro, or to the Court, of its intent to designate the materials as AEO. This constitutes clear and intentional abuse of the discovery process as Samsung knew All Pro's intent in compelling the materials was to enable All Pro's personnel to see the evidence that purportedly incriminates them. Additionally, Samsung broadly and blindly designated all the witness statements as AEO with gross indifference to causing further delay in the progression of this suit and causing additional expenses that Samsung knew would result from its blanket designations. Moreover, Samsung knowingly and repeatedly misrepresented that every portion of every witness statement "fits squarely" in the AEO category. Further, it was an abuse of the discovery process for Samsung to label every one of the witness statements as AEO without even knowing the contents of the materials. Accordingly, the Court should exercise its authority to grant sanctions under Rule 37(b) to: (1) secure Samsung's compliance with the rules of discovery, (2) deter Samsung from violating them in the future, and (3) punish Samsung for violating the rules.

*Id.* at 8-9 (footnotes omitted).

Following the June 13, 2017 oral argument, Song filed a Notice of Samsung's Consent Pursuant to Agreed Protective Order Paragraph 13(c) Regarding Non-defendant Videos, explaining that,

> [a]s requested by Plaintiff Samsung's counsel, Defendant Jin-Young Song ("Song") gives notice that late this afternoon Samsung's counsel agreed in writing pursuant to the Agreed Protective Order ¶ 13(c) allowing the 9 videos of Samsung employees or former employees who are not

defendants in this case (Non-Defendant Videos) to be disclosed to Song under the same protocol as previously agreed by Samsung and Song with respect to all written witness statements and Defendant videos, despite Samsung's Attorneys' Eyes Only (AEO) designation of those materials. Such protocol is set forth in Exhibit "A" to Song's Joinder In Part With All Pro's Motion To Compel Compliance With Court's Order [Doc 160] that raised Song's complaints about such AEO designation.

Dkt. No. 166 at 1.

As Song's counsel explained at oral argument, with this agreement, Song's only remaining dispute with Samsung as to these materials is resolved.

II.  Samsung's Rogs MTC

According to Samsung's Rogs MTC,

1. [Samsung] served its First Set of Interrogatories on All Pro on May 20, 2016, which is nearly 11 months before the date Plaintiff is filing this motion. [Samsung] served 22 interrogatories on All Pro. A true and correct copy of Plaintiff's First Set of Interrogatories to All Pro is attached as Exhibit A.

2. Four days later, on May 24, 2016, All Pro filed a motion to compel against Samsung, setting forth All Pro's own understanding of a party's obligations when asserting objections and providing responses to discovery requests and relying heavily upon this Court's *Heller* opinion. [Dkt. Nos. 42-43]

3. On June 20, 2016, All Pro served its Objections and Answers to Plaintiff's First Set of Interrogatories, a true and correct copy of which is attached as Exhibit B. As outlined in detail below, All Pro's objections and responses do not comply with *Heller* or All Pro's own understanding of its obligations when responding to discovery. All Pro repeatedly asserts objections without stating any factual basis for them, does not explain whether it is withholding information based on an objection, and then often refuses to answer or gives only an incomplete response.

4. On August 26, 2016, Samsung's counsel sent All Pro's counsel a letter outlining certain deficiencies in All Pro's discovery responses. In response to this letter, All Pro's counsel agreed to meet and confer on All Pro's discovery responses, simultaneously asking to confer on Samsung's discovery responses. On September 13, 2017, the parties' counsel met and conferred on the parties' respective discovery responses.

5. Following the parties' meeting, on September 28, 2016, All Pro served First Supplemental Answers to Plaintiff's First Set of Interrogatories, supplementing its answers to Interrogatory Nos. 1-3, and 5-6. A true and correct copy of these supplemental answers is attached as Exhibit C. All Pro's supplemental interrogatory answers failed to correct the many deficiencies raised in All Pro's discovery responses, as outlined in detail below.

6. On February 2, 2017, All Pro filed a second motion to compel against Samsung, again invoking *Heller* and repeating its understanding of its discovery obligations and what it is required to do in order to properly assert an objection and to answer discovery. [Dkt. Nos. 85-86] Samsung spent considerable time and effort to resolve the issues raised in All Pro's motions to compel. All Pro, however, has to date never amended its own discovery responses to comply with the standards articulated in its motions to compel or those set forth by this Court or by the Federal Rules of Civil Procedure.

7. On March 20, 2017, Samsung's counsel sent All Pro's counsel an email asking All Pro to amend its discovery responses to comply with the Federal Rules. In response, All Pro's counsel played games by asking Samsung to identify which of its discovery responses should be amended, and claiming that it will not even begin to work on amending its discovery responses for at least two weeks. More than two weeks have gone by, and All Pro has failed to provide any amended discovery responses.

Dkt. No. 126 at 2-3.

Samsung contends that

[i]t has been almost a year since Samsung served All Pro with interrogatories, but All Pro has nevertheless failed to substantively answer most of Samsung's interrogatories or correct the numerous other deficiencies Samsung has repeatedly brought to its attention. In many instances, All Pro has refused to provide any response at all. In many others, All Pro's answers are evasive and incomplete. All Pro asserts boilerplate objections to most of Samsung's interrogatories without stating the factual basis for its objections, despite filing two motions with this Court taking the position that doing so is improper. For example, All Pro frequently objects to interrogatories based on breath, burden, and vagueness, but fails to explain any basis for the objections. All Pro also does not state whether it is withholding information by virtue of an objection, and has failed to withdraw any objections not being used as a basis to withhold information. All Pro's objections also lack merit. For

example, All Pro objects to interrogatories asking it to state the basis for its own affirmative defenses and its counterclaim by claiming that the requests are overly broad and unduly burdensome, and then refuses to answer. Moreover, All Pro has also failed to provide the verification for its interrogatory answers, despite serving its answers nearly ten months ago.

Samsung has attempted to confer with All Pro concerning its discovery responses, but All Pro has impeded those efforts by playing games. All Pro has engaged in delay and consistently attempted to turn attention away from its own plainly inadequate discovery responses by trying to shift the focus back onto Samsung's discovery responses. Unlike All Pro, Samsung repeatedly amended its discovery responses and spent considerable time and effort addressing All Pro's complaints. On the other hand, All Pro's responses clearly run afoul of the precedent cited in its own motions to compel against Samsung, and other than (inadequately) supplementing its answers to a small number of interrogatories, All Pro has never amended any of its discovery responses. Its failure to comply with the law cited in its own motions to compel is simply inexcusable.

In sum, All Pro's objections and interrogatory answers do not comply with the Federal Rules of Civil Procedure or the law of this Court that All Pro invoked in its motions to compel against Samsung. Samsung files this motion to get complete answers to its interrogatories, and to ask the Court to order All Pro to withdraw (or for the Court to overrule) all improper objections.

*Id.* at 1-2.

More specifically, as to Samsung's Interrogatory Nos. 1, 2, 3, 6, 8, 9, 10, 11, 12, 13, 14-19, 20, and 21, Samsung asserts that All Pro should be compelled to remove improper objections to Samsung's interrogatories and to provide full, complete, and sworn answers. And "Samsung requests that the Court order All Pro to immediately provide verifications to Samsung's supplemental Interrogatory answers, and order All Pro to provide the verification to any further amended or supplemental answers contemporaneously with serving its answers in accordance with [Federal Rule of Civil Procedure] 33." *Id.* at 18.

In response, All Pro represents that it

has been in the business of selling mobile phones, accessories, and parts since 2000. It conducts approximately 4,000-5,000 transactions each year and sells hundreds of thousands of accessories, parts, and phones each year.

2. All Pro is a small family-owned and operated company, with only 12 employees. All Pro does not have an IT department or an employee who can dedicate his/her time to litigation related tasks. Nevertheless, All Pro has been working diligently to do its best to obtain the documents and information Samsung has reasonably requested from it, especially considering the limited information Samsung has provided regarding many of its claims.

3. On August 26, 2016, Samsung sent All Pro a letter specifically stating that it was "not meant to enumerate every problem with All Pro's discovery responses and document production," but was intended to "address certain issues with the goal of starting a productive dialogue among counsel." The only specific discovery requests referred to in this letter by Samsung was Interrogatory Nos. 1 and 2.

4. The parties met in person on September 13, 2016 to confer on discovery disputes regarding both parties' responses to discovery requests. All Pro was surprised when Samsung only wished to discuss a handful of its issues with All Pro's discovery responses during this meeting as All Pro was prepared to discuss every single issue with Samsung.

5. On September 28, 2016, All Pro supplemented its answers to Samsung's Interrogatories with additional information specifically requested by Samsung.

6. Samsung did not complain about All Pro's discovery responses again until 11:16 p.m. on March 20, 2017, when counsel Benjamin Riemer sent counsel for All Pro an e-mail generally asking All Pro to amend all of its discovery responses "to comply with the Federal Rules" within four (4) days. Again, the only discovery response Samsung specifically complained of was All Pro's answer to Interrogatory No. 2.

7. On March 21, 2017, All Pro's counsel verbally told Samsung's counsel that they would work on amending All Pro's discovery responses but that because All Pro's president Shawn Shabtay was out of the country for an extended period of time, they would have to wait until he returned in order finalize the amended responses. Contrary to Samsung's misrepresentation, All Pro never stated that it would "not even begin to work on amending its discovery responses for at least two weeks." In fact in an e-mail dated March 23rd, All Pro's counsel assured Samsung's counsel in writing that they would "work diligently to revise All Pro's responses so that we can get them to you as soon as possible after our

client returns to the U.S." All Pro's counsel also stated that if the intent of Samsung's March 20th e-mail "was to make a good faith effort to confer on a potential motion to compel, and [if Samsung] truly [has] a desire to try to resolve as many issues as possible without court intervention, please kindly specify which of All Pro's 238 responses you believe should be amended."

8. Samsung did not respond to All Pro's request. Instead, on April 10, 2017, Samsung filed this [Rogs MTC], representing to the Court that Mr. Riemer "conferred with counsel for All Pro, Barry Moscowitz and Rachael Walters, concerning the relief requested in the motion" and that he put forth his "best efforts" to resolve the issues set forth in the motion, when he clearly did not. [Dkt. 126 at p.19]. However, Samsung made no such efforts. In fact, in its Motion, Samsung actually accuses All Pro of playing games because it asked Samsung to identify which of its 238 discovery responses Samsung wanted it to amend. [Id. at p.3, ¶7].

Dkt. No. 133 at 5-7 (footnotes and citations omitted).

All Pro objects to the Rogs MTC "because Samsung failed to confer with All Pro in a good-faith attempt to resolve the matters contained in its [Rogs MTC], as required by Federal Rule of Civil Procedure 37(a)(1) and the Local Rules for the Northern District of Texas Rules 7.1(a) and (b)." *Id.* at 4. According to All Pro,

"[c]onfer" means to make a genuine effort to resolve the dispute by determining (1) what the requesting party is actually seeking; (2) what the responding party is reasonably capable of producing that is responsive to the request; and (3) what specific genuine issues cannot be resolved without judicial intervention. Samsung's counsel made no such effort.

Samsung sent All Pro one letter on August 26, 2016 and one e-mail on March 20, 2017 in which Samsung generally complained of the entirety of All Pro's 238 objections and responses to Samsung's discovery requests. The only objections and answers Samsung specifically complained of were those in response to Interrogatory Nos. 1 and 2. To All Pro's surprise, at a face-to-face meeting held on September 13, 2016 to confer on discovery disputes, Samsung chose to only discuss a handful of issues with All Pro's discovery responses. After All Pro received Samsung's March 20, 2017 e-mail demanding that All Pro amend all of its discovery responses "to comply with the Federal Rules" within four (4) days, All Pro asked Samsung to specifically identify the discovery

responses it had issue with and to call counsel for All Pro to discuss the issues. Samsung never responded or complied with All Pro's request. As such, in its Motion, Samsung is unable to "explain why agreement could not be reached," as required by Local Rule 7(b).

Because Samsung failed to meet the conference requirements, the Court should exercise its right to refuse to hear Samsung's [Rogs MTC], or deny the [Rogs MTC] in its entirety, and deny Samsung's request, if any, for attorney's fees.

*Id.* at 4-5 (footnotes and citations omitted).

All Pro further responds that "[t]he Court should deny Samsung's [Rogs MTC] in its entirety for the following reasons: (1) All Pro has withdrawn its objections to Interrogatory Nos. 1, 2, 8, 9, 13, 14-19, 20, and 21; (2) Samsung cannot compel All Pro to provide information it has not requested; (3) Samsung's interrogatories are overbroad and unduly burdensome based on the facts Samsung has set forth in its Second Amended Complaint and sworn discovery answers regarding its claims; (4) the burden for All Pro to provide all the information requested by Samsung is not proportional to the needs of this case; and (5) All Pro has sufficiently responded to the based on the claims asserted in this case and the level of discovery that has been completed at this time." *Id.* at 5. And, more specifically, All Pro asserts that the Court should deny the Rogs MTC as to Interrogatory Nos. 2, 3, and 6 because All Pro has fully and completely answered them; as to Interrogatory Nos. 10, 11 and 12 because the information sought is wholly irrelevant to this case; and as to Interrogatory Nos. 14 through 19 because All Pro has sufficiently responded.

All Pro contends that, "[w]ith respect to the sufficiency of a party's interrogatory answers, where the answer as a whole disclose[s] a conscientious endeavor to

understand the question [] and to answer fully [that question], a party's obligation under Rule 33 is satisfied"; that"each answer must be read in the light of the question in deciding its sufficiency"; and that "[t]he answering party does not have to assume, infer, or predict what the requesting party intended to ask in its interrogatory but failed to adequately do so." *Id.* at 8 (footnotes and internal quotation marks omitted).

In reply, Samsung reports that, "[o]n April 21, 2017, All Pro served First Amended Objections and Answers to Samsung's Interrogatories (attached as Exhibit D)"; "[o]n May 1, 2017, All Pro filed its Response to Samsung's Motion [Dkt. No. 133]"; "[o]n May 9, 2017, All Pro served its Second Amended Objections and Answers to Samsung's Interrogatories ('Second Amended Interrogatory Answers') (attached as Exhibit E)"; and that "All Pro's Second Amended Interrogatory Answers resolve the deficiencies identified in its prior answers to Interrogatory Nos. 1, 2, 13, 18, and 21." Dkt. No. 142 at 2.

But, according to Samsung, "[a]lthough All Pro withdrew some or all of its objections to some of the other Interrogatories, it did not withdraw all improper objections, and its answers are nonetheless incomplete as to Interrogatories Nos. 3, 6, 8-12, 14- 17, 19, and 20" and, "although All Pro has provided a verification to its First Supplemental Interrogatory Answers and to its Second Amended Interrogatory Answers, it has not verified its First Amended Interrogatory Answers." *Id.*

Samsung asserts that All Pro's objection that Samsung failed to confer before filing its Rogs MTC is meritless and does not provide a basis for denying the motion:

All Pro's leading argument in its Response makes no effort to justify its plainly improper discovery responses. All Pro's initial discovery responses – which it sat on for nearly a year – were indefensible. Instead, All Pro attempts to shift focus onto the parties' communications conferring on this [Rogs MTC]. All Pro's complaints are disingenuous. All Pro does not contend that any of the problems identified in the [Rogs MTC] are issues that All Pro did not already know existed simply from reading its own briefing in its two motions to compel. Virtually none of All Pro's discovery objections complied with the legal authority cited in All Pro's own motions, and All Pro wholly failed to answer plainly appropriate Interrogatories, as shown in the [Rogs MTC].

All Pro has its own independent obligation to ensure that its own discovery responses and its own objections comply with the Federal Rules and applicable law. See FED. R. CIV. P. 26(e)(1); FED. R. CIV. P. 26(g)(1); FED. R. CIV. P. 33(b). All Pro may not shirk these duties and then wait and see if anyone complains while simultaneously filing briefing with the Court about discovery obligations that All Pro clearly made no effort to follow in its own discovery responses. *See id.* Further, as All Pro admits, Samsung made it clear to All Pro that its discovery responses do not "comply with the principles set forth in Judge Horan's recent discovery Order" and "flagrantly violate the very concepts that All Pro has been so adamantly complaining about." [*See* March 20, 2017 e-mail at Dkt. No. 133-1 at p. 3]. All Pro is again showing that it has one standard for itself, and another for everyone else. For all of these reasons, the [Rogs MTC] should be granted.

*Id.* at 9-10.

III.   Samsung's RFPs MTC

According to Samsung's RFPs MTC,

1. On May 20, 2016, Samsung served its First Requests for Production on All Pro. A true and correct copy of these Requests is attached as Exhibit A.

2. Four days later, on May 24, 2016, All Pro filed a motion to compel against Samsung, setting forth All Pro's own understanding of a party's obligations when asserting objections and providing responses to discovery requests and relying heavily upon this Court's *Heller* opinion. (Dkt. Nos. 42-43).

3. On June 20, 2016, All Pro served its objections and responses to Samsung's First Requests for Production. A true and correct copy is attached as Exhibit B. As outlined in detail [in the RFPs MTC], All Pro's

objections and responses do not comply with *Heller* or All Pro's own understanding of its obligations when responding to discovery. All Pro repeatedly asserts objections without stating any factual basis for them and does not explain whether it is withholding documents based on an objection.

4. On August 26, 2016, Samsung's counsel sent All Pro's counsel a letter outlining some of the deficiencies in All Pro's discovery responses. In response to this letter, All Pro's counsel agreed to meet with Samsung's counsel to confer on All Pro's discovery responses, simultaneously asking to confer on Samsung's discovery responses. On September 13, 2017, the parties' counsel met and conferred on the parties' respective discovery responses.

5. On February 2, 2017, All Pro filed a second motion to compel against Samsung wherein it again relied upon *Heller* and repeated its understanding of a party's discovery obligations and what is required in order to properly assert an objection and to answer discovery. (Dkt. Nos. 85-86). Samsung spent considerable time and effort resolving the issues raised in All Pro's motions to compel. All Pro, however, has to date never amended its own discovery responses to comply with its own standards or those set forth by this Court or by the Federal Rules of Civil Procedure.

6. On March 20, 2017, Samsung's counsel sent All Pro's counsel an email asking All Pro to amend its discovery responses to comply with the Federal Rules, noting that their responses do not comply with the principles set forth in Judge Horan's opinions. In response, All Pro's counsel played games by asking Samsung to identify which of its discovery responses should be amended, and claiming that it will not even begin to work on amending its discovery responses for at least two weeks. More than two weeks have gone by, and All Pro has failed to provide any amended discovery responses.

7. To date, All Pro has never supplemented or amended any of its responses to Samsung's Requests for Production.

Dkt. No. 128 at 2-4.

Samsung contends that

All Pro has refused to correct the many obvious deficiencies in its Responses to Samsung's Requests for Production, which Samsung served upon All Pro nearly a year ago. Indeed, All Pro's Responses fall far short of satisfying All Pro's own understanding of what this Court and the Federal Rules of Civil Procedure require of parties, recently outlined in two motions to compel it filed against Samsung.

First, All Pro improperly asserts boilerplate objections to most of Samsung's requests without any explanation of the factual basis of the objections. For example, All Pro claims that words and phrases such as "gifts," "PBAs" (which All Pro uses in its own discovery requests), attorney "fee statements," "internal communication," and "former employee or contractor of Samsung," are somehow vague, but completely fails to explain why. All Pro even objects to requests asking for the production of documents support All Pro's own affirmative defenses as being overly broad and unduly burdensome, but provides no facts to substantiate those objections.

Second, All Pro refuses to produce any documents at all in response to multiple requests, relying upon objections that plainly lack a legal or factual basis. For example, Samsung asks All Pro to produce documents reflecting All Pro's annual revenue on different subject matters for specified time periods. This information is relevant to Samsung's claim for damages calculations, among other things. All Pro does not object to the requests on relevance grounds. All Pro, however, nonetheless refuses to produce any documents based on boilerplate objections such as that the requests seek "privileged information of a proprietary nature" or are overly broad without explaining these objections.

Third, with respect to the requests that All Pro does not outright refuse to answer, the Responses fail to state whether All Pro is withholding documents in reliance on its boilerplate objections, and if so, what documents and why. All Pro repeatedly fails to identify what portion of any request is objectionable. For example, it claims privilege in response to some requests, but does not indicate whether it is withholding any documents based on privilege or identify applicable privileges. Nor has All Pro provided a privilege log or sought a protective order.

Samsung has attempted to confer with All Pro concerning its discovery responses, but All Pro has impeded those efforts by playing games. All Pro has engaged in delay and consistently attempted to turn attention away from its own plainly inadequate discovery responses by trying to shift the focus back onto Samsung's discovery responses. Samsung repeatedly amended its discovery responses and spent considerable time and effort to address All Pro's complaints. In the nearly ten months since All Pro first served its responses, All Pro has never amended its insufficient Responses, not even to ensure that they comply with the standards All Pro articulated in its own motions to compel. All Pro's discovery responses are inadequate and evasive based on the law cited in All Pro's own Motions to Compel. This is conduct inexcusable.

*Id.* at 1-2 (emphasis removed).

More specifically, as to Samsung's Request for Production Nos.19-24, 25-29, 30-31, 32-36, 37-38, 39-42, 43-44, 45-48, 49-50, 51-52, 57-59, 62-69, 70, 71, 73-75, 81-84, 85, 86-104, 105-107, 108-114, 115, 116-117, 118-125, 129, 132-135, and 137, Samsung asserts that All Pro should be compelled to remove improper objections to Samsung's requests for production and amend its responses to comply with the Federal Rules of Civil Procedure.

In response, All Pro represents that it

is a small family-owned and operated company with only 12 employees. All Pro does not have an IT department or an employee who can dedicate his/her time to litigation related tasks. The individuals at All Pro who search for and gather the information and documents requested in this suit are the same individuals who are in charge of running every aspect of the company. Nonetheless, All Pro has been working diligently to do its best to obtain the documents and information Samsung has reasonably requested from it, considering the limited and incorrect information Samsung has provided regarding many of its claims.

2. Since 2000, All Pro has been in the business of distributing and selling new, used, and factory refurbished wireless phones, wireless accessories, and parts for all models of wireless phones from many manufacturers, including Samsung, LG, Motorola, ZTE, Nokia and Sony Ericson. As part of its business, All Pro purchases all types of excess inventory from companies, including Samsung, that benefit from and rely on All Pro's purchases because excess and obsolete inventory is a continuous problem for them. All Pro's purchase of excess inventory saves these companies from having to spend considerable amounts of money to recycle the unwanted parts.

3. Each year, All Pro conducts approximately 4,000-5,000 transactions, and sells hundreds of thousands of accessories, parts, and phones. For the past 17 years, each of All Pro's employees have received and sent, on average, about 100 e-mails communication and documents each business day, internally and with third parties.

4. Over the years, All Pro's has had business dealings with hundreds of customers. These customers include wireless carriers, insurance companies, manufacturers, mass merchants, distributors, wholesalers, repair centers, retail stores, and online stores. All Pro has worked hard for 17 years to build good relationships with its customers. As such, the

identity and contact information of the people and companies All Pro has had business dealings with since its business began in 2000 are confidential and proprietary information that All Pro deems especially sensitive and should never be provided to Samsung. There is no reason Samsung requires documents reflecting All Pro's customer names, contact information, order history, preferences, pricing, negotiation and business methods, and other business information. Furthermore, All Pro is prohibited from disclosing such documents pursuant to non-disclosure agreements All Pro has in place with certain third parties.

....

17. On August 26, 2016, Samsung sent All Pro a letter specifically stating that it was "not meant to enumerate every problem with All Pro's discovery responses and document production," but was intended to "address certain issues with the goal of starting a productive dialogue among counsel." The only specific discovery requests referred to in this letter by Samsung was Interrogatory Nos. 1 and 2.

18. The parties met in person on September 13, 2016 to confer on discovery disputes regarding both parties' responses to discovery requests. All Pro was surprised when Samsung only wished to discuss a handful of its issues with All Pro's discovery responses during this meeting as All Pro was prepared to discuss every single issue with Samsung.

19. Samsung did not complain about All Pro's discovery responses again until 11:16 p.m. on March 20, 2017, when counsel Benjamin Riemer sent counsel for All Pro an e-mail generally asking All Pro to amend all of its discovery responses "to comply with the Federal Rules" within four (4) days. Again, the only discovery response Samsung specifically complained of was All Pro's answer to Interrogatory No. 2.

20. On March 21, 2017, All Pro's counsel verbally told Samsung's counsel that they would work on amending All Pro's discovery responses but that because All Pro's president Shawn Shabtay was out of the country for an extended period of time, they would have to wait until he returned in order finalize the amended responses. Contrary to Samsung's misrepresentation, All Pro never stated that it would "not even begin to work on amending its discovery responses for at least two weeks." In fact in an e-mail dated March 23rd, All Pro's counsel assured Samsung's counsel in writing that they would "work diligently to revise All Pro's responses so that we can get them to you as soon as possible after our client returns to the U.S." All Pro's counsel also stated that if the intent of Samsung's March 20th e-mail "was to make a good faith effort to confer on a potential motion to compel, and [if Samsung] truly [has] a desire to try to resolve as many issues as possible without court intervention,

please kindly specify which of All Pro's 238 responses you believe should be amended."

21. Samsung did not respond to All Pro's request. Instead, on April 14, 2017, Samsung filed this [RFPs MTC], representing to the Court that Mr. Riemer "conferred with counsel for All Pro, Barry Moscowitz and Rachael Walters, concerning the relief requested in the motion" and that he put forth his "best efforts" to resolve the issues set forth in the [RFPs MTC], when he clearly did not. However, Samsung made no such efforts. In fact, in its [RFPs MTC], Samsung actually accuses All Pro of playing games because it asked Samsung to identify which of its 238 discovery responses Samsung wanted it to amend.

Dkt. No. 137 at 3-4, 8-9 (citations omitted).

All Pro objects to the RFPs MTC "because Samsung failed to confer with All Pro in a good-faith attempt to resolve the matters contained in its [RFPs MTC], as required by Federal Rule of Civil Procedure 37(a)(1) and the Local Rules for the Northern District of Texas Rules 7.1(a) and (b)." *Id.* at 1. According to All Pro,

"[c]onfer" means to make a genuine effort to resolve the dispute by determining (1) what the requesting party is actually seeking; (2) what the responding party is reasonably capable of producing that is responsive to the request; and (3) what specific genuine issues cannot be resolved without judicial intervention. Samsung's counsel made no such effort.

Samsung sent All Pro one letter on August 26, 2016 and one e-mail on March 20, 2017 in which Samsung generally complained of the entirety of All Pro's 238 responses to Samsung's discovery requests. The only objections and answers Samsung specifically complained of in its correspondence were those in response to Interrogatory Nos. 1 and 2. Then, to All Pro's surprise, at a face-to-face meeting held on September 13, 2016 to confer on discovery disputes, Samsung chose to only discuss a handful of issues it had All Pro's discovery responses.

After All Pro received Samsung's March 20th e-mail demanding that All Pro amend all of its discovery responses "to comply with the Federal Rules" within four (4) days, All Pro asked Samsung to specifically identify the discovery responses it had issue with and to call counsel for All Pro to discuss the issues. Samsung never responded to All Pro's request for clarification. Hence, in its [RFPs MTC], Samsung is unable to "explain why agreement could not be reached," as required by Local Rule

7(b). Because Samsung failed to meet the conference requirements, the Court should exercise its right to refuse to hear Samsung's [RFPs MTC], or deny the [RFPs MTC] in its entirety, and deny Samsung's request, if any, for attorney's fees.

*Id.* at 1-2 (footnotes and citations omitted).

All Pro further responds that "[t]he Court should deny Samsung's [RFPs MTC] in its entirety for the following reasons: (1) All Pro has withdrawn its objections to Request Nos. 25-29, 32-36, 39-42, 45-50, 59, 67, 68, 70, 81, 86-115, 117, 129, and 137; (2) Samsung's requests are overbroad and unduly burdensome based on the facts set forth in the pleadings Samsung filed with this Court and its sworn discovery answers; (3) All Pro has fully responded to the reasonable portions of the requests; (4) the burden for All Pro to provide all the documents responsive to Samsung's requests as they are written is not proportional to the needs of this case; and (5) Samsung cannot prove the reasonableness of its requests based on the proportionality factors because it has not provided a damage calculation or evidence of its damages." *Id.* at 5 (footnote omitted). And, more specifically, All Pro asserts:

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 19-24 because All Pro's objections are valid and All Pro has fully responded";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 30, 31, 37, 38, 43, 44, 49, and 50 because the documents sought are wholly irrelevant to Plaintiff's claims and the request unduly burdensome";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 51, 52, 57 & 58 because the requests are overbroad and not proportional to the needs of this case";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 62-66 & 69 because the documents sought are wholly irrelevant to Plaintiff's claims and the requests are not proportional to the needs of this case";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request No. 71 because All Pro's objection is valid and it has fully responded";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 73-75 because the requests are overbroad and unduly burdensome";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 82 & 83 because they seek documents that are completely irrelevant to this suit";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request No. 84 because it is overbroad, unduly burdensome, and harassing";

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 85 & 118-121 because they are overbroad, unduly burdensome, and harassing"; and

- "The Court should deny Plaintiff's Motion to Compel with respect to Request Nos. 122-125 & 132-135 because they are overbroad, unduly burdensome, and harassing."

*Id.* at 11-28.

In reply, Samsung contends that

All Pro filed its Response to Samsung's Motion on May 5, 2017. [Dkt. No. 137] All Pro's Response misleadingly suggests that All Pro had already amended its discovery responses by that date. It had not. Eleven days later, on May 16, 2017, All Pro served its First Amended Objections and Responses to Plaintiff's First Requests for Production ("Amended Discovery Responses"), attached as Exhibit C. Significantly, All Pro improperly attempts to assert new objections to Request Nos. 30, 31, 37, 38, 51, 52, 57, 58, 62-66, 69, 85, and 118-121, long after its deadline for timely asserting objections. All Pro waived these untimely objections nearly a year ago.

....

On May 23, 2017, the parties' counsel conferred via telephone for roughly two hours. The parties reached some agreements, and Samsung's counsel followed-up with an email to summarize Samsung's

understanding of those agreements. .... All Pro confirmed Samsung's understanding of certain agreements, but disputes remain with respect to certain issues.

Dkt. No. 152 at 1 (footnotes omitted).

Samsung explains that "All Pro's Amended Discovery Responses resolve the parties' disputes regarding Request Nos. 25-29, 32-36, 39-42, 45-50, 67, 68, 70, 81, 86-117, and 129. Samsung withdraws its Motion with respect to these requests without prejudice. In reliance upon the agreements and representations reflected in Exhibit E regarding Request Nos. 19-24, 71, 82-84, Samsung withdraws its Motion with respect to these requests without prejudice. Samsung further withdraws its Motion with respect to Request Nos. 74 and 75 without prejudice." *Id.* at 3.

But, according to Samsung, the allegations in Part III of All Pro's response should be disregarded as unsubstantiated, improper boilerplate, or irrelevant:

All Pro has not provided evidence supporting the allegations set forth in Part III.A, III.B, and III.D of All Pro's Response relating to its objections, and those allegations, therefore, should not be considered by the Court. Further, All Pro fails to explain how any specific facts within these general allegations impact its ability to produce any documents requested in a specific request. *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (discussing prohibition of general objections). Part III.B of the Response is irrelevant as it is nothing more than All Pro disputing liability for Samsung's claims. This Court states, "a party cannot refuse to produce a requested document or information simply because it is relevant to a claim or defense on which the producing party believes that it will prevail." *Id.* at 489. As to the relevant time period discussed in Part III.C, it is true that auction rigging allegations are limited to the 2012-2015 time period. But Samsung's allegations relating to other conduct, such as counterfeiting and trademark infringement, pre-date 2012 and exceed beyond 2015 as they are ongoing issues.

*Id.* at 3-4 (footnote omitted).

Samsung contends that All Pro's remaining objections should be overruled and that All Pro should be ordered to produce responsive documents in response to Request for Production Nos. 30-31, 37-38, 43-44, 51-52, 57-58, 62-69, 73, 85, 118-125, 132-135, and 137. *See id.* at 4-15.

Finally, Samsung asserts that All Pro's objection that Samsung failed to confer before filing its RFPs MTC "is both moot by parties' continuing conferences and was also without merit initially for the same reasons stated in Part III.B of Plaintiff's Reply in Support of Motion to Compel Defendant All Pro Distributing, Inc. to Withdraw Improper Objections and to Answer Plaintiff's Interrogatories [Dkt. No. 142]." *Id.* at 4 n.5.

IV.    <u>All Pro's Motion for Leave</u>

In its Motion for Leave, All Pro explains:

1. On April 10, 2017, Plaintiff filed its Motion to Compel Defendant All Pro Distributing, Inc. to Withdraw Improper Objections and To Answer Plaintiff's Interrogatories [Dkt. 126]. In that [Rogs MTC], Plaintiff complained that All Pro's objections to specific interrogatories as unduly burdensome were unsubstantiated because All Pro did not provide "affidavits or other evidence revealing the nature of the burden."
2. On May 1, 2017, All Pro filed its Brief in Response to Plaintiff's Motion to Compel [Dkt. 133] wherein All Pro provided a "specific, detailed showing" of how Samsung's requests are unduly burdensome. Moreover, on May 9, 2017, All Pro served Samsung with its verified Second Amended Objections and Answers to Plaintiff's Interrogatories [Dkt. 142-2] wherein All Pro also provided a "specific, detailed showing" of how Samsung's requests are unduly burdensome by providing factual support for and explanations of its objections.
3. Nevertheless, in Plaintiff's Reply Brief in support of its [Rogs MTC], Samsung complained that All Pro has not substantiated its objections with affidavits or any evidence regarding the undue burden imposed on All Pro in order to respond to Plaintiff's requests. [Dkt. 142 at p.7].

4. All Pro anticipates Samsung will make the same argument in its Reply Brief in Support of its Motion to Compel Defendant All Pro Distributing, Inc. to Withdraw Improper Objections and Provide Responses to Plaintiff's Requests for Production, which Samsung will file on May 26, 2017.

5. On May 24, 2017, counsel for Samsung and counsel for All Pro participated in a two-hour telephone conference in an effort to resolve as many issues relating to Samsung's Motions to Compel as possible. Counsel for both parties continued their efforts by continuing to confer in writing and by telephone on May 25, 2017. During the process of conferring, Samsung posed numerous questions to All Pro regarding All Pro's record keeping systems. The information Samsung elicited from All Pro is not contained in All Pro's Responses but appears to be relevant to Samsung's [Rogs MTC and RFPs MTC].

Dkt. No. 151 at 2-3 (citations and footnote omitted).

All Pro argues that, while "Samsung argues that All Pro did not provide affidavits or other evidence revealing the nature of the burden that would be imposed on All Pro if it were forced to respond to Plaintiff's discovery requests as they are currently written without any limitation in scope," "Samsung's argument is misleading as All Pro has already provided Plaintiff and the Court with substantial information about the burden involved in responding to [Samsung's] discovery requests in its amended discovery responses and its Responses to" Samsung's Rogs MTC and RFPs MTC. *Id.* at 4 (internal quotation marks omitted). According to All Pro, "[d]espite significant supplements and amendments to All Pro's responses to written discovery, as well as All Pros' presentation of facts in support of All Pro's Responses to [Samsung's Rogs MTC and RFPs MTC], Samsung complains that All Pro's objections are unsubstantiated." *Id.*

"All Pro maintains that its verified amended objections and answers to Samsung's Interrogatories, its amended objections and responses to Samsung's Requests for Production, and its Responses to Samsung's [Rogs MTC and RFPs MTC] substantiate its objections and reflect thoughtful consideration as to whether, based on a reasonable inquiry, there is a factual basis for an objection to the requests" and that, "[t]herefore, All Pro's burden to provide a specific, detailed showing of how Samsung's requests are overbroad and unduly burdensome is satisfied, and no additional evidence or explanation is necessary to substantiate All Pro's objections." *Id.* at 4-5 (internal quotation marks omitted).

But "All Pro wishes to offer supplemental evidence specifically addressing Samsung's complaints that All Pro failed to offer affidavits, and All Pro wishes to provide Samsung and the Court with a succinct and sworn summary of the factual evidence that supports All Pro's objections to Samsung's requests as overbroad and, therefore, unduly burdensome. This factual summary will aid the Court in its decisions regarding" Samsung's Rogs MTC and RFPs MTC. *Id.* at 5.

According to All Pro, its Motion for Leave "is not filed for the purpose of delay and is not the type of supplementation that would necessarily solicit a reply from" Samsung, and "Samsung will not be prejudiced by the granting of Defendant's Motion for Leave, for the following reasons: (1) the Affidavit [of Shachar "Shawn" Shabtay] provides Samsung precisely what it complains All Pro has not provided to it; (2) the hearing on [Samsung's Rogs MTC and RFPs MTC] has been reset to June 13, 2017, providing Samsung with plenty of time to prepare any necessary arguments in

response to the Affidavit, and (3) the supplemental Affidavit will not surprise Samsung because it contains facts that All Pro has already conveyed to Samsung during its conferences with Samsung's counsel, through communications with Samsung's counsel, through its responses to written discovery, and in its Responses to Samsung's [Rogs MTC and RFPs MTC]." *Id.* at 5.

All Pro "requests the Court grant All Pro leave to supplement evidence in support of its Responses to Plaintiff's Motions to Compel [Dkts. 133 and 137] with the Affidavit of Shachar 'Shawn' Shabtay, that such supplement be deemed filed as of the date of the entry of an Order granting leave to supplement the same." *Id.* at 6.

Samsung opposes the request for leave, arguing that "[t]he Court should deny All Pro's long-delayed request for leave to file untimely evidence in support of its opposition to Samsung's [Rogs MTC and RFPs MTC] because All Pro has failed to provide the Court with any viable basis for permitting it to file late evidence, and the untimely evidence would significantly prejudice Samsung." Dkt. No. 157 at 2 (footnote omitted).

According to Samsung, "All Pro's Motion [for Leave] provides no explanation for its failure to provide evidence at the time the Responses to Samsung's [Rogs MTC and RFPs MTC] were initially due, especially when the information in the proposed affidavit was certainly within All Pro's knowledge at the time." *Id.* Samsung notes that "[t]he only evidence attached to All Pro's response [to Samsung's Rogs MTC] was evidence relating to All Pro's unfounded complaints regarding the parties' conferences

on All Pro's discovery responses" and that, in its response to the RFPs MTC, "All Pro again attached no evidence to substantiate any discovery objection." *Id.* at 5.

Samsung contends that "All Pro has also failed to explain why it waited until weeks after the briefing on the [Rogs MTC] was complete to seek leave. In fact, All Pro waited to file its Motion [for Leave] until the night before Samsung's deadline to file a reply in support of the [RFPs MTC]." *Id.* at 2. Samsung explains that,

> [o]n May 18, 2017, All Pro refused to agree to an extension of Samsung's deadline to file a Reply in support of its [RFPs MTC] – an extension necessitated by All Pro's late amendment of its discovery responses – unless Samsung would agree that All Pro could supplement its evidence in opposition to Samsung's [Rogs MTC and RFPs MTC]. [Dkt. No. 147-1] In other words, All Pro attempted to exploit Samsung's need for additional time to address All Pro's amended discovery responses as leverage to force Samsung into agreeing that All Pro could untimely supplement its Responses with evidence. Samsung refused. The Court granted an extension. [Dkt. No. 150]
> 11. On May 23, 2017, counsel for Samsung and counsel for All Pro conferred for roughly 2 hours on All Pro's amended responses to Samsung's requests for production. During that conference, the parties discussed the objections and responses that were not resolved by All Pro's amended discovery responses. Contrary to All Pro's assertion that "the supplemental Affidavit will not surprise Samsung because it contains facts that All Pro has already conveyed to Samsung during its conferences with Samsung's counsel," All Pro did not provide any detailed information regarding its record keeping systems during that call. For instance, All Pro asserts a new objection to Request Nos. 85 and 118-121 in the amended discovery responses on the grounds that the request requires the creation of a document as "it does not track revenue by [part sales to distributors, part sales, phone sales, Samsung part sales, or Samsung phone sales]." [Dkt. No. 152-1 at pp. 36, 43-47] Based on Samsung's counsel's recollection, All Pro's counsel did not provide information about how the requested information is recorded or any other specific information about its record keeping systems during the conference call beyond stating generally that All Pro does not keep segregated spreadsheets separating revenue from phone and part sales.

*Id.* at 5-6 (emphasis removed; footnote omitted).

Samsung further asserts that "granting All Pro leave to file late evidence – after all of the briefing on these motions has been completed – would significantly prejudice Samsung for any number of reasons." *Id.*

> Samsung, of course, has not had the opportunity to respond to All Pro's proposed and currently unfiled evidence. Indeed, at this time, Samsung has no way to ascertain what statements in All Pro's proposed affidavit apply to any specific discovery request because All Pro has not incorporated any of those statements into its Responses. All Pro has simply sought leave to file an untimely affidavit, without connecting it to any specific discovery request and leaving Samsung to guess how to address it.
>
> ....
>
> At 7:45 p.m. on May 25, 2017, the day before Samsung's Reply supporting its [RFPs MTC] was due, All Pro filed its motion seeking leave to supplement its Responses to both of Samsung's Motions to Compel with the Affidavit of Shachar "Shawn" Shabtay ("Shabtay Affidavit"). [Dkt. No. 151]
>
> 13. Samsung filed its Reply in support of the [RFPs MTC] the next day, May 26, 2017. [Dkt. No. 152] All Pro's "supplemental" evidence was not before the Court at that time and Samsung had insufficient time to review it. Samsung's Reply, therefore, does not address the Shabtay Affidavit.

*Id.* at 2-3, 7.

And, Samsung argues, "All Pro's failure to timely provide evidence in support of its opposition is particularly inappropriate given that the requirement to support objections with evidence is the standard All Pro has so vigorously demanded of Samsung for over a year. All Pro should not be held to different standards than those it has so strenuously demanded of Samsung." *Id.* at 3.

According to Samsung, "[s]imply put, All Pro has no valid grounds for filing late evidence, and the Court should deny the Motion" for Leave. *Id.*

All Pro replies "[t]he purpose of the rules permitting a party to supplement evidence in support of a pleading is to promote as complete an adjudication of the dispute between the parties as is possible" and that "the Court should grant All Pro's [Motion for Leave] because the 'Affidavit of Shachar 'Shawn' Shabtay' ('Affidavit') contains factual information that will assist the Court in justly adjudicating Samsung's" Rogs MTC and RFPs MTC. Dkt. No. 161 at 1 (internal quotation marks omitted).

All Pro contends "that Samsung had knowledge of an overwhelming majority of the facts contained in the Affidavit for a sufficient period of time; Samsung had a fair opportunity to address the facts contained in the Affidavit in its Reply briefs; and Samsung will not be prejudiced if the Court permits All Pro to supplement the Affidavit for purposes of adjudicating Samsung's" Rogs MTC and RFPs MTC. *Id.* at 2.

As All Pro seeks to show through a highlighted copy of the Affidavit, "[a]pproximately ninety percent (90%) of the relevant facts contained in the [Affidavit] haven been known by Samsung for a sufficient period of time" where the highlighted information "appear, nearly verbatim, in (a) All Pro's sworn Second Amended Objections and Answers to Samsung's Interrogatories [Dkt. 142-2]; (b) All Pro's First Amended Objections and Responses to Samsung's Requests for Production [Dkt. 152-1]; (c) All Pro's Responses to Samsung's Motions to Compel ("Responses") [Dkts. 133 and 137]; and/or (d) an e-mail communication exchanged between counsel for All Pro to counsel for Samsung, dated May 24, 2017 [See Dkt. 152-3]. As such, Samsung clearly

had sufficient time to assess the facts in the Affidavit and had a fair opportunity to respond to the Affidavit in its Reply briefs." *Id.*

All Pro further asserts that "there is no reason Samsung cannot easily ascertain which of All Pro's discovery responses the Affidavit supports. The facts contained in the Affidavit are essentially recitations of the facts contained in All Pro's written discovery responses, its Responses to Samsung's [Rogs MTC and RFPs MTC], and the May 24th e-mail communication between counsel for Samsung and All Pro." *Id.* at 2-3.

According to All Pro, "[t]here is a minimal amount of information contained in the Affidavit that does not appear in All Pro's discovery responses, its responsive pleadings, or the May 24th e-mail communication. This 'new' information consists of specific facts responsive to inquiries that counsel for Samsung made during the two-hour telephone conference on May 23rd, which counsel for All Pro obtained from All Pro on May 24th. These facts relate to search results for specific terms and All Pro's recordkeeping systems and may be helpful to the Court in resolving the issues set forth in Samsung's [Rogs MTC and RFPs MTC]. The information does not warrant any reply by Samsung and, thus, does not result in any prejudice to Samsung." *Id.* at 4-5.

## Legal Standards

I.     <u>All Pro's Sanctions Motion</u>

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for

purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; [or] (vi) rendering a default judgment against the disobedient party." FED. R. CIV. P. 37(b)(2)(A)(i)-(vi).

Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). "A party's discovery conduct is found to be "substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action."" *S.E.C. v. Kiselak Capital Grp., LLC*, No. 4:09-cv-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (quoting *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (in turn quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* at *3 (footnote omitted).

The undersigned has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37. *See* 28 U.S.C.

§ 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam).

Rule 37(b)(2) "empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, FED. R. CIV. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions.").

"The district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith*, 685 F.3d at 488 (internal quotation marks omitted). "This discretion, however, is limited" based on the type of sanctions imposed. *Id.* "[U]sually, ... a finding of bad faith or willful misconduct [is required] to support the severest remedies under Rule 37(b) – striking pleadings or dismissal of a case." *Id.* (internal quotation marks omitted); *accord Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to be employed only when the failure to comply with the court's order results from wilfullness or bad faith rather than from an inability to comply. Nevertheless, deliberate, repeated refusals to obey discovery orders have been held to warrant the use of this ultimate sanction." (footnote omitted)); *Brinkmann v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 749

-45-

(5th Cir. 1987) (explaining that, "if the refusal to comply results from honest confusion or sincere misunderstanding of the order, the inability to comply, or the nonfrivolous assertion of a constitutional privilege, dismissal is almost always an abuse of discretion."); *Tech. Chem. Co. v. IG-LO Prod. Corp.*, 812 F.2d 222, 224 (5th Cir. 1987) ("Entry of a default judgment is an appropriate sanction when the disobedient party has failed to comply with a court order because of willfulness, bad faith, or other fault on its part, as opposed to its inability to comply with the court's order."); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) ("[D]ismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply.").

But "[l]esser sanctions do not require a finding of willfulness." *Smith*, 685 F.3d at 488. "Of course, the flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed," but "the lack of willful, contumacious, or prolonged misconduct [does not] prohibit[] all sanctions." *Chilcutt*, 4 F.3d at 1322 n.23. Even where a party was "unable to comply with the discovery requests, the district court still ha[s] broad discretion to mete out a lesser sanction than dismissal." *Id.* (emphasis removed). That is because "the type of conduct displayed by a party had no bearing on whether sanctions should be imposed, but only on the type of sanctions imposed," and "[t]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply." *Id.* (internal quotation marks omitted; emphasis removed).

Rule 37(b) "is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions." *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). "Sanctions under Rule 37 serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986). Rule 37(b)(2) sanctions "must be both just and specifically related to the claim at issue in the discovery order." *Vicknair v. Louisiana Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014). The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *See Smith*, 685 F.3d at 488-90.

II.    <u>Samsung's Rogs MTC and RFPs MTC</u>

"Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).

Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements. *See Rocha v.*

*S.P. Richards Co.*, No. 5:16-CV-411-XR, 2016 WL 6876576, at \*1 (W.D. Tex. Nov. 17, 2016) ("Pursuant to the amended Federal Rules of Civil Procedure, requested discovery must be both relevant and proportional."); *In re Application of XPO Logistics, Inc.*, No. 15MISC205PARTI, 2016 WL 3528195, at \*3 (S.D.N.Y. June 22, 2016) ("Rule 26 allows discovery only when it is both relevant to a claim or defense and proportional to the needs of the case."), *appeal dismissed sub nom. XPO Logistics, Inc. v. Elliott Capital Advisors, L.P.*, 673 F. App'x 85 (2d Cir. 2016); *Callahan v. Toys "R" Us–Delaware, Inc.*, No. CV 15-2815-JKB, 2016 WL 8671848, at \*2 (D. Md. May 6, 2016) ("The most recent changes to Rule 26 of the Federal Rules of Civil Procedure emphasize that to fall within the scope of permissible discovery, the information sought must be both relevant and proportional to the needs of the case."); *Walker v. Pioneer Prod. Servs., Inc.*, No. CV 15-0645, 2016 WL 1244510, at \*3 (E.D. La. Mar. 30, 2016) ("In the simplest terms, under Rule 26, the requested discovery must be both relevant <u>and</u> proportional. Because the record before this Court establishes that the information sought is not relevant to any claim or defense in the case, it is not necessary to determine whether it would be proportional if it <u>were</u> relevant." (emphasis in original)); *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. 32, 36 (E.D. La. 2016) ("Rule 26(b) commands that all discovery be both relevant and proportional.").

To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to

consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues.

And Rule 26(b)(1) defines the scope of what is discoverable not as any nonprivileged facts but, more broadly, as "any nonprivileged matter." FED. R. CIV. P. 26(b)(1). That is, "the scope of discovery is not limited simply to 'facts,' but may entail other 'matters' that remain relevant to a party's claims or defenses, even if not strictly fact-based." *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2015 WL 9694792, at *2 (N.D. Ala. Dec. 9, 2015). For example, "[i]nformation relevant to a party's credibility may fall within Rule 26(b)'s scope." *Ramos v. Capitan Corp.*, No. MO16CV00075RAJDC, 2017 WL 1278737, at *3 (W.D. Tex. Feb. 2, 2017) (citing *Murillo Modular Grp., Ltd. v. Sullivan*, No. 3:13-cv-3020-M, 2016 WL 6139096, at *9 (N.D. Tex. Oct. 20, 2016)); FED. R. CIV. P. 26, 2015 comm. note ("Proportional discovery relevant to any party's claim or defense suffices, given a proper understanding of what is relevant to a claim or defense. The distinction between matter relevant to a claim or defense and matter relevant to the subject matter was introduced in 2000. The 2000 Note offered three examples of information that, suitably focused, would be relevant to the parties' claims or defenses. The examples were 'other incidents of the same type, or involving the same product'; 'information about organizational arrangements or filing systems'; and 'information that could be used to impeach a likely witness.' Such discovery is not foreclosed by the amendments.").

Further, "[d]iscovery that is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the

scope of discovery." FED. R. CIV. P. 26, 2015 comm. note. "The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves." *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009); *see also Waste Mgmt. of La., LLC v. River Birch, Inc.*, No. CV 11-2405, 2017 WL 2271982, at *4 (E.D. La. May 24, 2017) ("Federal Rule of Civil Procedure 26(b)(1) makes clear that any discovery must be relevant to a party's claim or defense. Moreover, '[t]he Committee Comments to [Rule 26] confirm that requiring relevance to a claim or defense 'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.'" (quoting *Whitney v. Krystal Co.*, No. 10-773, 2012 WL 777161, at *1 (M.D. Ala. Mar. 7, 2012))); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 7, 8-9 (D.D.C. 2016) ("Claimant cannot lead a fishing expedition to find material that might possibly become relevant to an as-yet unpleaded specific performance or unclean hands defense. .... Claimant seeks discovery 'which does not presently appear germane on the theory that it might conceivably become so.' *Food Lion Inc. v. United Food and Commercial Workers Intern. Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (quotation marks omitted); *see also United States v. $70,990,605*, 305 F.R.D. 20, 26 (D.D.C. 2015) (denying as premature discovery relating to unpleaded constitutional defenses). Claimant urges the Court to grant him this discovery because he needs it in order to determine whether he should plead these defenses. Opp. at 13. But Claimant has the

matter backwards – by seeking discovery on these issues prior to pleading them, he would force Plaintiff to produce documents and discovery responses while robbing it of the ability to seek an early disposition of the viability of the defenses through an opposition to his motion to amend or a motion to dismiss or to strike. Requiring Claimant to plead a defense before he can seek discovery on it does not promote form over substance where, as here, the merits of those defenses – as a matter of fact and of law – would be hotly contested. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) ('The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim.') (emphasis in original).").

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv); *accord Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received. FED. R. CIV. P. 37(a). Yet, a court may decline to compel, and, at its option or on motion, 'may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden ..., including ... forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.' FED. R. CIV. P.

26(c)(1)(D); *see also* FED. R. CIV. P. 37(a)(5)(B)."). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

Federal Rule of Civil Procedure 34(a)(1) provides that "[a] party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilation – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things." FED. R. CIV. P. 34(a). Any discovery requests under Rule 34(a), then, are "'subject to the scope and limitations of Rule 26(b).'" *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, ___ F.R.D. ____, No. 3:15-CV-2766-B, 2016 WL 4427488, at *8 (N.D. Tex. Aug. 22, 2016) (quoting *Colsan v. Cincinnati Ins. Co.*, Civ. A. No. 13-495-BAJ-RLB, 2013 WL 6531917, at *3 (M.D. La. Dec. 12, 2013)). Further, Federal Rule of Civil Procedure 34(b) provides that a request for production or inspection "must describe with reasonable particularity each item or category of items to be inspected" or produced. FED. R. CIV. P. 34(b)(1)(A).

In response to a Rule 34(a) request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."

FED. R. CIV. P. 34(b)(2)(B). General or boilerplate objections are invalid, and "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. Amended Federal Rule of Civil Procedure 34(b)(2) effectively codifies this requirement, at least in part: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.'" *OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); quoting FED. R. CIV. P. 34(b)(2)(C)), *objections overruled*, No. 3:13-cv-2110-KS, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

As to interrogatories, Federal Rule of Civil Procedure 33(a)(2) provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." FED. R. CIV. P. 33(a)(2). "Generally, an interrogatory may relate to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Pilver v. Hillsborough Cty.*, No. 8:15-CV-2327-T-23JSS, 2016 WL 4129282, at *3 (M.D. Fla. Aug. 3, 2016).

In response to interrogatories under Rule 33, "[t]he interrogatories must be answered: (A) by the party to whom they are directed; or (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party." FED. R. CIV. P. 33(b)(1). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath," and "[t]he grounds for objecting to an

interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(3)-(4). "Answers to interrogatories must be written, and signed under oath by the party to whom the interrogatories were directed – not his or her attorney." *Crum & Forster Specialty Ins. Co. v. Explo Sys., Inc.*, No. 12-3080, 2015 WL 7736650, at *3 n.7 (W.D. La. Nov. 30, 2015) (emphasis in original omitted).

In sum, "[a] party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Heller*, 303 F.R.D. at 485.

Federal Rule of Civil Procedure 33(d) further provides that, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." FED. R. CIV. P. 33(d). "Thus, in relying on Rule 33(d) in an interrogatory answer, [an answering party] must specify the information

that [the requesting party] should review in sufficient detail to enable [the requesting party] to locate and identify the information in the documents [at least] as readily as [an answering party] could." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 WL 2997744, at *9 (N.D. Tex. May 25, 2016). This generally requires an answering party "to point to specific documents, by name or bates number," and not pointing the requesting party generally to document productions. *Id.* at *10.

> As to the sufficiency of an interrogatory answer,
>
>> as the Fifth Circuit has observed, "[d]iscovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977). The fact that an interrogatory calls for a thorough response – one that will take time and effort to answer – does not make it improper. *See Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307-08 (5th Cir. 1973). Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to understand the question[] and to answer fully [that question],'" a party's obligation under Rule 33 is satisfied. *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. A-11-cv-542-LY, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2177 (3d ed. 2010)). [An answering party] is not required to make an extensive investigation in responding to an interrogatory, but he must pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him. *See* 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013).

*Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016). And Federal Rule of Civil Procedure 33(a)(2) specifically explains that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the

application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." FED. R. CIV. P. 33(a)(2).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

And the Court has previously explained that "responding to interrogatories and document[] requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure"; "this manner of responding to a document request or interrogatory leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be"; "outside of the privilege and work product context..., responding to a document request or interrogatory 'subject to' and 'without waiving' objections is not consistent with the

Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; "a responding party has a duty to respond to or answer a discovery request to the extent that it is not objectionable" and "must describe what portions of the interrogatory or document request it is, and what portions it is not, answering or responding to based on its objections and why"; "if the request is truly objectionable – that is, the information or documents sought are not properly discoverable under the Federal Rules – the responding party should stand on an objection so far as it goes"; and, "as a general matter, if an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made." *Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 470 (N.D. Tex. 2015) (quoting *Heller*, 303 F.R.D. at 487-88 (internal quotation marks omitted)).

Further, "as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). In response to a Rule 33 interrogatory, "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(4). And, "[i]f a party fails to timely respond in writing after being served with a request for production of documents, it is appropriate for the Court to find that the party's objections are waived, unless the court finds good cause and excuses [that] failure." *Richmond v. SW Closeouts, Inc.*, No. 3:14-cv-4298-K, 2016 WL 3090672, at *5 (N.D. Tex. June 2, 2016); *accord Henderson v. Union Pac. R.R. Co.*, No. CV 15-0669, 2016 WL 5936889, at *2

(W.D. La. Oct. 11, 2016) ("Although Rule 34 does not provide that untimely objections are waived, the Fifth Circuit has found that the waiver provision applies equally to Rule 34." (citing *In re United States*, 864 F.2d at 1156)). And, even where the responding party has timely served some objections to a Rule 34(a) request, this waiver extends to any grounds not stated in a timely objection. *See* FED. R. CIV. P. 34(b)(2)(B).

A party who has objected to a discovery request then must, in response to a Rule 37(a) motion to compel, urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection. *See OrchestrateHR*, 178 F. Supp. 3d at 507 (citing *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999)).

Federal Rules of Civil Procedure 26(b) and 34 have been amended, effective December 1, 2015. These amendments govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rules 26 and 34, as amended, in resolving the Samsung's Rogs MTC and RFPs MTC is both just and practicable.

For the reasons the Court has previously explained, the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr*, 312 F.R.D. at 463-69. Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that any discovery request that is relevant to any party's claim or defense fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Accord First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. CV 15-638, 2017 WL 2267149, at *1 (E.D. La. May 24, 2017) ("In this instance, defendant has offered nothing more than

a boilerplate proportionality objection, without providing any information concerning burden or expense that the court would expect to be within defendant's own knowledge.").

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is also subject to Federal Rule of Civil Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller*, 303 F.R.D. at 475-77, 493-95.

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or fails the required proportionality calculation or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Additionally, "a proper Rule 37(a) motion to compel ... must include a certification that the movant has made a good faith effort to meet and confer regarding the specific discovery disputes at issue, and to resolve them without court intervention, as required by Federal Rule of Civil Procedure 37(a)(1) and Northern District of Texas Local Civil Rule 7.1." *Samsung Elecs. Am. Inc. v. Chung*, No. 3:15-cv-4108-D, 2017 WL 896897, at *13 (N.D. Tex. Mar. 7, 2017) (internal quotation marks omitted); *accord* FED. R. CIV. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); *Brown v. Bridges*, No. 12-cv-4947-P, 2015 WL 11121361, at *4 (N.D. Tex. Jan. 30, 2015) ("Conference requirements encourage resolving discovery disputes without judicial involvement. Failure to confer or attempt to confer may result in unnecessary motions. When the court must resolve a dispute that the parties themselves could have resolved, it must needlessly expend resources that it could better utilize elsewhere. Failure to confer generally serves as a basis for denying a discovery motion." (internal quotation marks and citations omitted)), *on reconsideration in part*, 2015 WL 12532137 (N.D.

Tex. June 22, 2015); *Brown v. Bridges*, No. 3:12-cv-4947-P, 2014 WL 2777373, at *2 (N.D. Tex. June 19, 2014) ("[T]he conference requirement is in place to require the parties to communicate and coordinate in good faith to attempt to resolve any nondispositive dispute without court intervention. The requirement is part and parcel of the ethical rules governing attorneys and the court rules governing all parties, including pro se parties, that require all parties to engage in meaningful discussions in an attempt to resolve matters without court intervention. *See Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284, 289-90 (N.D. Tex.1988)."). "When a motion to compel addresses a number of matters, a good faith effort to confer typically requires that the parties discuss each matter in good faith to comply with conference requirements. When it may require several hours of court time to resolve the numerous issues raised; it seems logical that the parties will have spent an equal or greater amount of time attempting to resolve the issues without judicial involvement." *Brown*, 2015 WL 11121361, at *4 (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without

court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A); *accord Washington v. M. Hanna Const. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C); *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008).

"[A] motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *De Angelis*, 265 F. App'x at 398 (internal quotation marks omitted); *see also Heller*, 303 F.R.D. at 477 ("The United States Supreme Court has defined 'substantially justified' to mean 'justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person.' 'Substantial justification' entails a 'reasonable basis in

-63-

both law and fact,' such that 'there is a genuine dispute ... or if reasonable people could differ [as to the appropriateness of the contested action].'" (citations omitted)).

Federal Rule of Civil Procedure 26(c)(3) provides that, in connection with a motion under Rule 26(c) for a protective order, Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses." FED. R. CIV. P. 26(c)(3).

## Discussion

I.   <u>All Pro's Sanctions Motion</u>

As a preliminary matter, Song's remaining dispute with Samsung has been resolved based on the agreement reported in Song's Notice of Samsung's Consent Pursuant to Agreed Protective Order Paragraph 13(c) Regarding Non-defendant Videos [Dkt. No. 166]. And that moots Song's Joinder in Part with All Pro's Motion to Compel Compliance with Court's Order [Dkt. No. 160].

As to All Pro's Sanctions Motion, the Court's March 7 Discovery Order did not address confidentiality designations or limit the general application of the Agreed Protective Order in this case in connection with the materials that the Court ordered Samsung to produce to Defendants. Although Song did not join in All Pro's sanctions request, his counsel at the hearing may have best summarized the complaint with Samsung's AEO designations when she explained that, by designating all of the produced witness statements, transcripts of witness interviews, and recorded interrogations and interviews as AEO under the Agreed Protective Order, Samsung – although technically allowed to make confidentiality designations under the Agreed Protective Order – granted itself greater protection over the produced materials than

the protections that Samsung asked for – and the Court rejected – in Samsung's Opposed Motion for a Limited Protective Order [Dkt. No. 97].

Be that as it may, an AEO designation is a protection that Samsung was entitled to invoke under the Agreed Protective Order and that Samsung was not foreclosed from invoking by the March 7 Discovery Order. Samsung complied with pertinent requirements of the Court's March 7 Discovery Order by producing the required materials to Defendants' counsel, which is all that the March 7 Discovery Order requires. The Court finds no basis for Rule 37(b) sanctions or sanctions for discovery abuse.

All Pro complains of the collateral effects of Samsung's AEO designations, but Samsung's making those designations – even as to all of these produced materials – does not itself establish that any particular confidentiality designation was improper. While All Pro's Sanctions Motion may technically comply with timing requirements for a confidentiality designation challenge under Paragraph 7 of the Agreed Protective Order, the Sanctions Motion does not actually show or – despite providing a few examples from a sampling of the produced materials – even really attempt to show or give the Court a basis to determine that – each particular document or recording or portion of the recordings is not properly designated as AEO.

In its reply, All Pro candidly explains that, even if it had not complied with the Agreed Protective Order's protocol for a confidentiality designation challenge motion, "All Pro would not be prohibited from filing or prevailing on this [Sanctions Motion] which attempts to enforce Samsung's compliance with the Court's Order. The 'protocol'

set forth in the [Agreed Protective Order] assumes there is no Court order requiring [S]amsung to produce the subject documents to All Pro in a manner that actually enables All Pro's personnel to review the documents. The purpose of the [Agreed Protective Order]'s procedure for challenging designations is to offer a means to resolve legitimate disputes regarding the confidentiality of information. The procedure is not intended to be an exercise for revealing how much information Samsung designated as confidential or AEO with absolute indifference to whether the information actually falls into such categories." Dkt. No. 141 at 7-8; *see also id.* at 7 ("Samsung's criticism of All Pro for complaining about its blanket designation of every single videotaped interview, when All Pro had not reviewed the recordings, is without merit. It was not necessary for All Pro to have reviewed the 190 hours of footage for purposes of this [Sanctions Motion]. As set forth above, All Pro seeks to compel Samsung to comply with the Court's Order to provide All Pro, including its personnel, with access to the materials. Moreover, it was not necessary for All Pro to have reviewed the recordings to know that it is impossible for the entire 190 hours of footage to warrant AEO protection. We can safely assume that the videotaped interviews contain some, if not all, of the non-AEO type of information contained in the written statements."). Based on the March 7 Discovery Order, not the standards set by the Agreed Protective Order applied to particular portions of the recordings or statements, All Pro asks the Court to "[c]ompel Samsung to remove the 'CONFIDENTIAL ATTORNEY EYES ONLY' designations from all recorded interviews and written statements it has produced." Dkt. No. 141 at 10.

To the extent that All Pro is seeking, under Paragraph 7 of the Agreed Protective Order, an order to alter the confidential status of designated information, its motion is denied without prejudice to filing a motion, after properly conferring as to each item in dispute, that addresses designations as to specific materials and provides the Court with a basis under the Agreed Protective Order to evaluate each specific document or recording at issue. To the extent that All Pro seeks to have its employees or principals themselves given access to particular AEO-designated materials, All Pro must either obtain Samsung's agreement under Paragraph 13(c) of the Agreed Protective Order or must file an appropriate motion for modification of or relief from the Agreed Protective Order.

For the reasons explained above, the Court DENIES All Pro's Motion to Compel Compliance with Court's Order and Motion for Sanctions [Dkt. No. 123].

II.     Samsung's failure to satisfy the pre-filing conference requirement

Turning to the issues raised by Samsung's Rogs MTC and RFPs MTC, Samsung did not properly confer on the issues in those motions in advance of filing them – and it essentially admits as much. It is no excuse for failing to satisfy the pre-filing conference requirement for Samsung, as the requesting party, to say that the responding party All Pro should know what is wrong with All Pro's discovery responses based on All Pro's own motions to compel discovery responses from Samsung. *Cf. Genentech, Inc. v. Trustees of Univ. of Pa.*, No. C 10-02037, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011) ("The Court does not look favorably upon a 'tit-for-tat' approach to discovery. A party may not withhold relevant discovery simply on the basis

that the other side has not been forthcoming with discovery. A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent. Nor may a party condition its compliance with its discovery obligations on receiving discovery from its opponent." (internal quotations and citations omitted)).

Neither does Samsung's pointing to All Pro's obligations under Federal Rules of Civil Procedure 26(e)(1), 26(g)(1), and 33(b) to ensure that its discovery responses and objections comply with the Federal Rules and applicable law excuse Samsung from conferring as required by Rule 37(a)(1) and Local Civil Rule 7.1 – a requirement that the Court noted in its March 7, 2017 Memorandum Opinion and Order. *See Samsung*, 2017 WL 896897, at *13. All of these obligations coexist, and a party considering a motion to compel is not excused from conferring in advance simply because the responding party in fact has not been complying with the Federal Rules. The prefiling conference requirement is not confined only to baseless motions to compel. As another judge in this district has explained:

> A failure to satisfy conference requirements does not, however, mandate summary denial of their motions because the Court retains discretion to "waive strict compliance with the conference requirements" and to consider the motions on their merits. The Court may deem a failure to confer excusable when the conference would merely be "a waste of time," *Vinewood Capital, L.L.C. v. Al Islami*, No. 4:06-cv-316-Y, 2006 WL 3151535, at *2 (N.D. Tex. Nov. 2, 2006), or when "it is clear that the motion is opposed and that a conference would neither have eliminated nor narrowed the parties' dispute," *Obregon v. Melton*, No. 3:02-cv-1009-D, 2002 WL 1792086, at *1 n.3 (N.D. Tex. Aug. 2, 2002). But the Court will not presume that a conference will be unproductive and a waste of time simply because the parties have a bitter history and an apparent inability to get along well. The conference requirements of the Federal Rules of Civil Procedure and the local rules of this Court serve the important function of

narrowing or eliminating issues before a party seeks judicial involvement. This function is particularly important when the parties consistently seek sanctions for alleged non-compliance with discovery or court-imposed obligations.

*Brown*, 2015 WL 11121361, at *5.

Yet, under the particular circumstances here, where the parties have conferred at length after filing and All Pro has amended its RFP responses and interrogatory answers, the Court concludes, as did another judge under somewhat similar circumstances, that "further delay in addressing the motions to compel would not comport with the overriding principle set forth in Fed. R. Civ. P. 1 that the courts construe and administer the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action and proceeding.' Consequently, the Court will overlook the failures to confer. Of course, the failures to confer may impact the availability of sanctions should the Court grant the motions, *see* FED. R. CIV. P. 37(a)(5)(A)(i), and an exhibited lack of cooperation by [Samsung] may constitute 'other circumstances [that] make an award of expenses unjust,' *see* FED. R. CIV. P. 37(a)(5)(B)." *Id.*; *accord Mitchell v. Univ. of La. Sys.*, No. Civ. A. 13-820-JWD, 2015 WL 1540532, at *5 (M.D. La. Apr. 7, 2015) ("Defendant's failure to conduct or attempt to conduct a proper Rule 37(a) conference prior to filing its Motion to Compel is grounds for denial. *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, No. 12-257, 2014 WL 4373197, at *3 (M.D. La. Sept. 3, 2014). Defendant should have first met and conferred with Plaintiff and then, if the discovery issues could not be resolved between the parties, sought leave of court to file an untimely Motion to Compel. Nevertheless, in light of Plaintiff's voluminous productions and untimely written discovery responses, the court will

proceed to the merits of Defendant's Motion to Compel and consider Defendant's failure to conduct a proper Rule 37(a) conference when determining whether to award any sanctions.").

III. All Pro's Motion for Leave

As a further threshold matter, All Pro's supplemental affidavit in opposition to Samsung's Rogs MTC and RFPs MTC is functionally a sur-reply. It was filed after Samsung filed its reply in support of the Rogs MTC and – despite having been the subject of dispute in whether All Pro would oppose a one-week extension for Samsung to file a reply in support of its RFPs MTC – was filed with the Motion for Leave the night before Samsung's extended deadline to reply in support of its RFPs MTC.

All Pro offers no explanation for its failure to present this evidence sooner other than its believing – and professing still to believe – that it was unnecessary before seeing Samsung's reply in support of its Rogs MTC (filed 10 days before All Pro filed the Motion for Leave) and before a two-hour telephone conference between All Pro's and Samsung's counsel on May 24, 2017. If this evidence is necessary for All Pro's opposition, there is no basis here to find that All Pro should not have known that sooner and could not have presented it with its responses to Samsung's motions and certainly before Samsung filed its replies.

That Samsung may have been aware of some of the information – but admittedly not all of the information – in the Affidavit of Shachar "Shawn" Shabtay does not alter the prejudice in Samsung's lack of awareness of its need to respond to this as-yet-unfiled evidence when replying in support of its Rogs MTC and RFPs MTC. And the

Court cannot credit All Pro's unsupported assertion that the new "information does not warrant any reply by Samsung" or that Samsung should have fully replied to the factual information that All Pro failed to substantiate with evidence in its responses to the Rogs MTC and RFPs MTC.

If this evidence is not necessary for All Pro's opposition to those motions, All Pro has no need to file what amounts to a sur-reply. All Pro does not contend that Samsung's reply in support of its Rogs MTC included any new evidence or legal theories that All Pro, in fairness, must be given an opportunity to address. *See Austin v. Kroger Texas, L.P.*, ___ F.3d ___, No. 16-10502, 2017 WL 1379453, at *8 (5th Cir. Apr. 14, 2017) ("As to Austin's motion to file a surreply, the district court did not abuse its discretion because Kroger did not raise any new arguments in its reply brief, and Austin did not discuss his expert report on causation.").

Accordingly, the Court DENIES All Pro's Opposed Motion for Leave to File Supplemental Evidence in Support of All Pro's Responses to Plaintiff's Motions to Compel [Dkt. No. 151].

IV.     <u>Samsung's Rogs MTC</u>

A.     Interrogatory Nos. 3 and 6

Samsung's Interrogatory No. 3 asks All Pro to "[i]dentify all non-monetary gifts provided by All Pro or [Shachar "Shawn"] Shabtay to Chung," and Interrogatory No. 6 asks All Pro to "[i]dentify all non-monetary gifts provided by All Pro or Shabtay to any individual Samsung employee other than Chung."

All Pro objects that "non-monetary gifts" is vague and ambiguous and based on a concern for whether certain business lunches or dinners were intended by All Pro to be a gift or present.

The Court has previously explained that a "party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity"; that "[a] party objecting on these grounds must explain the specific and particular way in which a request is vague"; that "[t]he responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories. If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue"; and that, "[i]f a party believes that the request is vague, that party [should] attempt to obtain clarification [by conferring with the requesting party] prior to objecting on this ground." *Heller*, 303 F.R.D. at 491-92 (internal quotation marks and citations omitted). A vague and ambiguous objection does not justify a complete refusal to respond or answer unless a request is so vague or ambiguous as to be incapable of reasonable interpretation and prohibit a response. *See id.* at 492.

All Pro's vague and ambiguous objection to "non-monetary gifts" is overruled because the record makes clear that Samsung's counsel explained to All Pro's counsel that, for purposes of these interrogatories, the term includes meals and gift baskets.

Samsung contends that "[t]he only information that All Pro provides about lunches and dinners is to state generally that it took Defendant Chung to business lunches and dinners on a 'number of occasions,' and that All Pro took employees from

the Accessories and Parts Departments to business lunches and dinners on a 'number of occasions'"; that "All Pro provides zero information regarding the frequency or dates of or participants in each meal"; that, "[a]lthough All Pro refers to a number of documents as purportedly 'reflecting' the information requested, the documents referenced do not provide the missing, requested information"; and that "All Pro's amended answers to Interrogatory Nos. 3 and 6 do not provide the information requested with respect to lunches or dinners, or (as to Interrogatory No. 6) for gift baskets," where All Pro's "comment that it has provided gift baskets 'each year during the holiday season' is vague." Dkt. No. 142 at 3, 4.

Samsung defined "'[i]dentify' when used in reference to a fact, event, instance, occurrence or nonoccurrence ... [to mean] to provide (i) a chronological description of each individual or separate circumstance that makes up, forms a part of, or references the fact, event, occurrence or nonoccurrence inquired about, and (ii) an identification of each person who participated in or has knowledge relevant to each such circumstance." Dkt. No. 126-1 at 5 of 11. All Pro did not object to this definition but asserts that the additional information that Samsung seeks are not called for by these interrogatories.

The Court disagrees. All Pro's amended answer makes clear that it does not agree with what Samsung considers to be a gift or present but also makes clear that it understands that Samsung is asking about all meals and gift baskets that All Pro or Shabtay provided to Chung or any other individual Samsung employee. Having qualified its answers with its understandings and concerns about what may or may not

be intended to be a gift or present, All Pro must fully answer the questions asked. The Court GRANTS the Rogs MTC as to Interrogatory Nos 3 and 6 and ORDERS that All Pro must, in response to Interrogatory Nos. 3 and 6, review all sources of responsive information reasonably available to it and, by **July 14, 2017**, serve amended answers that provide the responsive, relevant facts reasonably available to it, including the frequency, dates of, and participants in each meal, as well as how much was spent on the meal, and the years and holiday seasons in which each gift basket was given.

B.      Interrogatory Nos. 8 and 9

Samsung's Interrogatory No. 8 asks All Pro to "[i]dentify each instance in which you purchased parts from Samsung through an auction, including the date, the type of parts purchased, the quantity of the parts purchased, your bidding history for each auction, and the amounts you paid for the parts," and Interrogatory No. 6 asks All Pro to, "[f]or each auction identified in your response to Interrogatory No. 8 above, identify and describe all information you received from any Samsung employee about the auction prior to the time you placed a bid. In your response, please include the source of the information, how you received the information, and when you received the information."

All Pro answered these interrogatories by, under Rule 33(d), pointing to specific documents. Samsung contends that "[i]t remains unclear if All Pro has provided a full, complete answer. Samsung asks the Court to order All Pro to supplement its answer to verify, under oath, that the documents referenced provide a complete and full

answer to Interrogatory No. 8.4 If they do not, then Samsung asks the Court to order All Pro to provide a full and complete answer." Dkt. No. 143 at 4-5 (footnote omitted).

As to Interrogatory No. 9, Samsung contends that "All Pro answers by providing a description of the type of information generally made available to auction participants, and by again referring to a long list of documents '[i]n further response'"; that "[o]ne of the core issues in this case is Samsung's claim that All Pro participated in auction-rigging by obtaining unauthorized information about items up for auction before the auctions"; that "[n]othing in the substance of All Pro's answer even attempts to address these allegations, which Interrogatory No. 9 is plainly delving into"; and that "Samsung has no way of determining whether the many documents referenced provide a full and complete answer to the Interrogatory, and All Pro's reference to documents does not comply with Rule 33(d)." *Id.* at 5.

At oral argument, All Pro's counsel confirmed that Samsung can derive all of the requested information from the produced documents to which All Pro points – which All Pro points out are, in part, documents produced by Samsung and apparently created by Samsung's third-party auction administrator – and that All Pro has provided all responsive information, including as to information that All Pro alone may have received.

The Court disagrees that All Pro has not properly invoked Rule 33(d) or that All Pro must provide evidence, such as an affidavit, to establish that the burden of deriving or ascertaining the answer from the documents will be substantially the same for All Pro or Samsung. Answering an interrogatory as Rule 33(d) permits is not the

same as objecting – and refusing to answer – based on an alleged undue burden. In conjunction with All Pro's counsel's Rule 26(g)(1) certification that All Pro's amended answers are complete and consistent with the Federal Rules, All Pro's pointing to specific documents by bates number and confirming at oral argument that, by doing so, it has fully answered these interrogatories based on all sources of responsive information reasonably available to it satisfy All Pro's obligations under Rule 33.

Accordingly, the Court DENIES the Rogs MTC as to Interrogatory Nos. 8 and 9. The Court enters a protective order precluding any requirement for All Pro to further answer Interrogatory Nos. 8 and 9, subject to its supplementation obligations under Federal Rule of Civil Procedure 26(e).

C.      Interrogatory Nos. 10, 11, and 12

Samsung's Interrogatory No. 10 asks All Pro to "[i]dentify and describe each instance in which you have purchased, sold, or distributed Samsung devices that were not assembled by Samsung, including the dates of such purchase, sale, or distribution, the identity of the person or entity from whom you purchased such devices, and the identity of the person or entity to whom you sold or distributed such devices"; Interrogatory No. 11 asks All Pro to "[i]dentify and describe each instance in which you have purchased new, or purportedly new, Samsung devices from any person or entity other than Samsung"; and Interrogatory No. 12 asks All Pro to "[i]dentify each person or entity from whom you have purchased Samsung parts or devices other than Samsung."

The Court overrules All Pro's objections to the words "devices" as vague and ambiguous because, at oral argument, it was clear that All Pro understands that Samsung is referring to any Samsung devices and not only phones.

All Pro in turn asserts that requests for information as to all devices and all "parts" are overbroad and not relevant to Samsung's claims in this case. Samsung admits it is seeking discovery to ascertain possible additional factual bases for its trademark infringement and unfair competition claims beyond what it already knows and has pleaded, which focus on Samsung phones and PBAs and OTCAs. Samsung asserts that, "[w]hile the claims as currently pled focus on phones that were assembled using 'build kits,' Samsung is entitled to discovery to determine how extensive and pervasive All Pro's counterfeiting and trademark infringing efforts reach, as this is information relevant to Samsung's claims under the Lanham Act and corresponding state law." Dkt. No. 142 at 6. According to Samsung, "Interrogatory Nos. 10-12 request information regarding the source from which All Pro has acquired 'Samsung' devices and parts," which "information is clearly relevant to Samsung's claims based on All Pro's use and dissemination of counterfeit Samsung products." *Id.* at 6. And Samsung asserts that All Pro has not provided evidence of undue burden, even if it is clear that All Pro's reviewing all sources of responsive information reasonably available to it and serving amended answers that provide all of the responsive, relevant facts reasonably available to it will involve a lot of work.

All Pro responds its primary objections are to relevance and that even providing all of this information will not tell Samsung if a particular part or device sold or

purchased or distributed by All Pro was counterfeit and therefore the information is not relevant to Samsung's claims, no matter how broadly defined for Rule 26(b)(1)'s purposes, and further that Samsung's claims do not justify the release of All Pro's confidential and proprietary customer list.

Samsung explains that it "has offered to limit the time period to 2012 to the present," which "is a reasonable time limitation for the claims as currently pled," and that "All Pro's attempt to limit the interrogatories to transactions only with [CVE Technology Group, Inc.], and to limit 'devices' to phones and 'parts' to PBAs and OCTAs is without merit," where "All Pro may not shield discovery of its counterfeiting activities – all counterfeiting activities are relevant to this case." Dkt. No. 142 at 6 (emphasis removed).

Under Rule 26(b)(1) and Fifth Circuit case law, discovery requests must seek information that is relevant to the parties' claims or defenses as pleaded and may not be used only to find new claims or defenses. The parties' dispute raises difficult issues, but the Court does not believe that Samsung is simply casting about for new or different (and unpleaded) causes of action but rather – put most sympathetically for Samsung's position – for additional factual bases for those causes of action that it has already pleaded. Nevertheless, there is a line between additional factual support for a cause of action pleaded as an existing claim and an entirely new or independent factual basis for pleading a cause of action – the latter of which would generally count as a new claim for Rule 26(b)(1)'s purposes. For example, a plaintiff alleging a cause of action of breach of contract based on defendant's violating a particular agreement

generally could not justify seeking discovery of every other contract that the defendant has with the plaintiff – and might also have breached – on the basis that it would be relevant to the existing, pleaded breach of contract claim.

The Court further cannot credit All Pro's argument that information sought in Interrogatory Nos. 10, 11, and 12 is not relevant to Samsung's claims under Rule 26(b)(1) because it will not itself identify for Samsung whether a particular transaction involved a counterfeit device.

Further, the Agreed Protective Order and the confidentiality designations that it authorizes provide sufficient protections for All Pro's concerns regarding its confidential and proprietary customer list.

But, even with the date limitation of 2012 to the present as Samsung offers, the Court determines that the information sought by Interrogatory Nos. 10, 11, and 12 is not proportional to the needs of the case, and even after considering the importance of the issues at stake in the action (All Pro's use and dissemination of counterfeit Samsung products), the amount in controversy, and the access that All Pro has to this information that Samsung does not. Samsung does not deny what is clear on the record – even without considering Shabtay's affidavit – that Samsung devices and parts number into the hundreds or thousands. Samsung's counsel report that they believe that All Pro's use and dissemination of counterfeit Samsung products and infringement of Samsung's trademarks is not limited to that which Samsung now knows about and has pleaded – that is, phones that were assembled using "build kits" through or in connection with CVE. But that belief alone is not sufficient to justify the wide-ranging

information that Samsung is seeking through these facially overbroad requests, considering the rather obvious differences in the parties' resources and burden and expense that All Pro would incur to fully answer these interrogatories.

Accordingly, the Court determines that, beyond the information that All Pro has already provided, the information that Samsung seeks in these interrogatories exceeds the scope of proper discovery under Rule 26(b)(1) and that the burden or expense of the discovery outweighs its likely benefit and therefore DENIES the Rogs MTC as to Interrogatory Nos 10, 11, and 12. The Court enters a protective order precluding any requirement for All Pro to further answer Interrogatory Nos. 10, 11, and 12, subject to its supplementation obligations under Rule 26(e).

D.      Interrogatory Nos. 14, 15, 16, 17, 19, and 20

Samsung's Interrogatory No. 14 asks All Pro to "[i]dentify and describe all legal and factual bases that you contend support your assertion of the affirmative defense of 'Fraud on the part of Samsung,' set forth in Paragraph 106 of your Answer"; Interrogatory No. 15 asks All Pro to "[i]dentify and describe all legal and factual bases that you contend support your assertion of the estoppel affirmative defenses, set forth in Paragraphs 105, 107, 111, 112 and 115 of your Answer"; Interrogatory No. 16 asks All Pro to "[i]dentify and describe all legal and factual bases that you contend support your assertion of the contributory negligence affirmative defense, set forth in Paragraph 120 of your Answer"; Interrogatory No. 17 asks All Pro to "[i]dentify and describe all legal and factual bases that you contend support your assertion of the economic loss rule affirmative defense, set forth in Paragraph 113 of your Answer";

Interrogatory No. 19 asks All Pro to "[i]dentify and describe all legal and factual bases that you contend support your assertion of the affirmative defense of consent, set forth in Paragraphs 117 and 118 of your Answer"; and Samsung's Interrogatory No. 20 asks All Pro to "[i]dentify and describe all legal and factual bases that you contend support your Counterclaim for business disparagement, alleged in Paragraphs 122 and 123 of your Answer, including: (1) the date of any allegedly disparaging remarks; (2) the identity of the individual who made such allegedly disparaging remarks; (3) how and to whom such allegedly disparaging remarks were published or communicated; (4) all bases to support your contention that such allegedly disparaging remarks were untrue; and (5) the damages allegedly suffered by All Pro as a result of such remarks and the method of calculating such damages."

At oral argument, All Pro's counsel admitted that All Pro could provide additional responsive information in answer to these contention interrogatories.

The Court determines that All Pro should do so and that, given the nature of what these interrogatories ask about, it is not appropriate to order the interrogatories need not be further answered until more discovery is complete. *See* FED. R. CIV. P. 33(a)(2).

The Court GRANTS the Rogs MTC as to Interrogatory Nos. 14, 15, 16, 17, 19, and 20 and ORDERS that All Pro must, in response to Interrogatory Nos. 14, 15, 16, 17, 19, and 20, review all sources of responsive information reasonably available to it and, by **July 14, 2017**, serve amended answers that, in compliance with Rule 33's requirements, provide the responsive, relevant facts reasonably available to it.

E.    Verification of All Pro's Second Amended Objections and Answers to Samsung's Interrogatories

Finally, to the extent that All Pro has not yet served a verification of its First Amended Interrogatory Answers, All Pro must serve a verification or certification that complies with Rule 33(b)(3)'s "under oath" requirement by **July 7, 2017**.

V.    Samsung's RFPs MTC

A.    Request for Production Nos. 30, 31, 37, and 38

Samsung's Request for Production No. 30 seeks "[a]ll internal communications relating to Samsung OCTAs"; Request for Production No. 31 seeks "[a]ll communications with any third party relating to Samsung OCTAs"; Request for Production No. 37 seeks "[a]ll internal communications relating to Samsung PBAs"; and Request for Production No. 38 seeks "[a]ll communications with any third party relating to Samsung PBAs."

Samsung contends that "All Pro's primary arguments are new objections based on undue burden/burden disproportionate to the needs of the case" and that "All Pro waived these objections, as it did not assert them in its initial written discovery responses." Dkt. No. 152 at 4 (emphasis removed). Samsung further reports that it "agrees to limit the time period of these requests to 2012 – present" but that "All Pro objects to the scope by claiming that (1) third-party communications should be limited to CVE, (2) Samsung should limit the request to specific part numbers, model numbers and colors for OCTAs, and (3) the request should be limited to OCTAs for phones and not for tablets," which limitations, Samsung contends "are improper" where "[t]he

documents sought are relevant to Samsung's claims based on All Pro's use and dissemination of counterfeit Samsung products, and its internal discussions relating to same." *Id.* at 5. Samsung asserts that it "is entitled to discovery to determine how extensive and pervasive All Pro's counterfeiting and trademark infringing efforts reach, as this is information relevant to Samsung's claims under the Lanham Act and corresponding state law," and that, "[a]lthough Samsung's claims are initially based on counterfeit phones involving CVE, Samsung has reason to believe, and does believe that All Pro's counterfeiting and trademark infringement activities go far beyond phones obtained from CVE and extends to other entities and possibly to other devices, such as tablets." *Id.* at 5-6. And, Samsung argues, "it is certainly relevant to Samsung's counterfeiting and trademark infringement claims to discover what customers All Pro has acquired, sold, purchased, or disseminated any counterfeit products/parts to or from, including the resulting damages its counterfeiting and infringement activities have caused Samsung. Further, as stated in the Motion, if, for example, All Pro communicated with a third party, claiming that they bribed one of Samsung's employees to get discounted parts at auction and, thus, can sell those parts or associated devices to the third party for a low price, then it would be relevant." *Id.* at 7.

As the Court discussed with counsel at oral argument, the Agreed Protective Order's protections suffice to address All Pro's concerns as to confidential and proprietary customer-related information, including documents that may be subject to non-disclosure agreements – even assuming any objections based on those concerns

were not waived. And, based on the discussion with counsel at oral argument, the Court overrules any objection to "PBAs" as vague, where it is clear that Samsung means PBAs for any and all of its devices.

But, for essentially the same reasons explained above as to Interrogatory Nos. 10, 11, and 12, the Court determines that these requests are facially overbroad and seek a scope of documents and information that is not proportional to the needs of the case. Samsung has claims based on factual allegations regarding particular phones or parts and a particular third party (CVE). That Samsung reports that it believes All Pro has been engaged in more bad conduct that it just does not yet know about is not a basis for requiring All Pro to turn over every communication that it has internally or with any other third party regarding two kinds of components for hundreds or thousands of devices. But the requests are proper as to the roughly 16,318 model numbers for the phones referenced in Samsung's operative complaint. The relevance of this information as to those phones cannot be doubted, and the burden or expense of that discovery does not outweigh its likely benefit.

The Court therefore GRANTS in part and DENIES in part Samsung's RFPs MTC as to as to Request for Production Nos. 30, 31, 37, and 38 and ORDERS that All Pro must, in response to Request for Production Nos. 30, 31, 37, and 38, produce all internal communications and communications with any third party relating to Samsung OTCAs and PBAs in connection with the 16,318 model numbers for the phones referenced in Samsung's operative complaint, which model numbers must be provided to All Pro by Samsung, after which All Pro will be given 21 days to produce

all responsive documents and electronically stored information as ordered here. The Court enters a protective order precluding any requirement for All Pro to further respond to Request for Production Nos. 30, 31, 37, and 38 beyond what it has already produced and is ordered here to produce, subject to its supplementation obligations under Rule 26(e).

B.      Request for Production Nos. 43 and 44

Samsung's Request for Production No. 43 seeks "[a]ll internal communications relating to Samsung build kits," and Request for Production No. 44 seeks "[a]ll communications with any third party relating to Samsung build kits."

Samsung reports that "[t]he issue remaining is whether All Pro will perform a search for the terms 'build', 'built', and 'kit' and produce the resulting documents, and to produce internal communications and communications with any third party other than CVE," where "[t]here is no basis for All Pro's limitation to producing communications only with CVE relating to building phones." Dkt. No. 152 at 7.

The Court disagrees in part for the reasons explained above. Samsung's pleaded claims are currently so limited to counterfeit phones and build kits connected in some way to CVE. As explained above, discovery that is relevant to Samsung's pleaded claims may also support amendment of its pleadings to add a new claim that affects – and expands – the scope of discovery under Rule 26(b)(1), but discovery as currently authorized is not find the claims themselves. Further, the search terms "build," "built," and "kit" appear too common to produce a reasonable scope of documents, particularly in light of All Pro's counsel's repeated explanation to the Court that no documents

within All Pro or from Samsung appear to use the phrase "build kit" and that All Pro instead searched for and produced to Samsung all documents referencing "building a phone" or "phone build" – which All Pro's counsel reports are terms used in documents – that All Pro exchanged with CVE or with Samsung. That is a reasonable approach except that All Pro offers no basis for not producing any internal communications that likewise use these terms and are related to Samsung phones.

The Court therefore DENIES Samsung's RFPs MTC as to as to Request for Production No. 44 and GRANTS in part and DENIES in part the RFPs MTC as to as to Request for Production No. 43 and ORDERS that, by **July 14, 2017**, All Pro must, in response to Request for Production No. 43, produce all internal communications that reference "building a phone" or "phone build" and relate to Samsung phones. The Court enters a protective order precluding any requirement for All Pro to further respond to Request for Production Nos. 43 and 44 beyond what it has already produced and is ordered here to produce, subject to its supplementation obligations under Rule 26(e).

C.     Request for Production Nos. 51, 52, 57, and 58

Samsung's Request for Production No. 51 seeks "[a]ll documents regarding any Samsung auction for which you had winning bid"; Request for Production No. 52 seeks "[a]ll documents regarding any Samsung auction for which you placed a bid"; Request for Production No. 57 seeks "[a]ll communications with any third party relating to any Samsung auction from the date the auction process was implemented by Samsung to current"; and Request for Production No. 58 seeks "[a]ll internal communications

relating to any Samsung auction from the date the auction process was implemented by Samsung to current."

"Samsung agrees to limit the time frame to 2012-2015" for these requests but asserts that, "[f]or Request Nos. 51 and 52, All Pro limits its production to documents dated between 2012-2015 that reflect All Pro's participation in auctions, and communications only with Samsung relating to auction lots for which All Pro placed a winning bid," but "is vague about what documents it is withholding based on its objections," and that, "[f]or Request Nos. 57 and 58, All Pro says, 'To the extent this request seeks communications with third parties regarding auction 'rigging,' unauthorized discounting of auction parts, or bribing Samsung employees, none.'" Dkt. No. 152 at 10. Samsung argues that "All Pro may not limit its production to documents it unilaterally believes show bad conduct by All Pro." *Id.*

The Court agrees in part. Samsung's claims relate to alleged rigging of Samsung auctions in All Pro's favor. The categories of documents these requests seek are generally relevant to those claims and proportional to the needs of the case, with the with the date limitation of 2012-2015 as Samsung offers and considering the importance of the issues at stake in the action, the amount in controversy, and the access that All Pro has to this information that Samsung does not. Relevant documents are not limited to only Samsung auctions for which All Pro had the winning bid because Samsung alleges that "Chung rigged the auction process to reduce the number of companies All Pro needed to compete against in order to win the parts auctions" and "also provided All Pro with Samsung's confidential information during the auctions."

Dkt. No. 117 at 16. But discovery of all documents and communications with any third party relating to any Samsung auction is not relevant and proportional to the needs of the case. Rather, All Pro should search for and produce all documents and internal communications and communications with Samsung or its employees regarding All Pro's bid at any Samsung Action, regarding the bidding process and who was permitted to compete in a Samsung auction, and regarding information that Chung provided to Samsung in connection with All Pro's bid at a Samsung auction, all limited to 2012 through 2015.

As with other requests, the Agreed Protective Order's protections will address All Pro's concerns as to confidential and proprietary customer-related information, including documents that may be subject to non-disclosure agreements – even assuming any objections based on those concerns were not waived.

The Court therefore GRANTS in part and DENIES in part the RFPs MTC as to as to Request for Production Nos. 51, 52, 57, and 58 and ORDERS that, by **July 14, 2017**, All Pro must, in response to Request for Production Nos. 51, 52, 57, and 58, produce all documents and electronically stored information, including internal communications and communications with Samsung or its employees, regarding All Pro's bid at any Samsung Action, regarding the bidding process and who was permitted to compete in a Samsung auction, and regarding information that Chung provided to Samsung in connection with All Pro's bid at a Samsung auction, all limited to 2012 through 2015. The Court enters a protective order precluding any requirement for All Pro to further respond to Request for Production Nos. 51, 52, 57, and 58 beyond what

it has already produced and is ordered here to produce, subject to its supplementation obligations under Rule 26(e).

D.      Request for Production Nos. 62-66, 69, 73, 122-125, and 132-135

Samsung's Request for Production No. 62 seeks "[d]ocuments evidencing the purchase or attempted purchase of Samsung phones from vendors other than Samsung from January 1, 2011 – current"; Request for Production No. 63 seeks "[d]ocuments evidencing the purchase or attempted purchase of Samsung parts from vendors other than Samsung from January 1, 2011 – current"; Request for Production No. 64 seeks "[c]ommunications regarding the purchase or attempted purchase of Samsung phones from vendors other than Samsung from January 1, 2011 – current"; Request for Production No. 65 seeks "[c]ommunications regarding the purchase or attempted purchase of Samsung parts from vendors other than Samsung from January 1, 2011 – current"; Request for Production No. 66 seeks "[c]ommunications regarding the purchase or attempted purchase of Samsung OCTAs from vendors other than Samsung from January 1, 2011 – current"; and Request for Production No. 69 seeks "[c]ommunications regarding the purchase or attempted purchase of Samsung PBAs from Samsung from January 1, 2011 – current."

And   Samsung's Request for Production No. 73 seeks "[a]ll documents including, receipts, purchase orders, invoices, terms and conditions, and warranties evidencing All Pro's sale of Samsung devices to third parties during the years 2009 to current."

Finally, Request for Production No. 122 seeks "[a]ll documents reflecting the companies or individuals All Pro sold Samsung phones from 2011-2015"; Request for Production No. 123 seeks "[a]ll documents reflecting the companies or individuals All Pro sold Samsung parts from 2011-2015"; Request for Production No. 124 seeks "[a]ll documents reflecting the companies or individuals All Pro sold Samsung OCTAs from 2011-2015"; Request for Production No. 125 seeks "[a]ll documents reflecting the companies or individuals All Pro sold Samsung PBAs from 2011-2015"; Request for Production No. 132 seeks "[a]ll documents identifying the purchasers of Samsung OCTAs sold by All Pro from January 1, 2011-present"; Request for Production No. 133 seeks "[a]ll documents identifying the purchasers of Samsung PBAs sold by All Pro from January 1, 2011-present"; Request for Production No. 134 seeks "[a]ll documents identifying the purchasers of Samsung phone parts sold by All Pro from January 1, 2011-present"; and Request for Production No. 135 seeks "[a]ll documents identifying the purchasers of Samsung phones sold by All Pro from January 1, 2011-present."

All Pro originally served largely non-specific, boilerplate objections to many of these requests. *See* Dkt. No. 128-2 at 23-25 of 56. All Pro added objections and greater explanation in its amended objections and answers. *See* Dkt. No. 152-1 at 22-30 of 62. As explained above, that is not how the discovery process properly works, but All Pro's untimely objections are not waived if the Court finds good cause to excuse the failure. And, as explained above, under Rules 26(b)(1) and 26(b)(2)(C)(iii), the Court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, even without a motion or timely objection.

In support of its RFPs MTC as to these requests, Samsung states that

[t]hese Requests ask for documents and communications evidencing All Pro's purchase of Samsung phones, Samsung parts, OCTAs, and PBAs from January 1, 2011 to the present. These documents are relevant to All Pro's involvement in the sale of counterfeit Samsung devices. As explained in Part II.B.1, *supra*, Samsung is entitled to know where All Pro is getting these parts and phones from and communications with those third parties as they are relevant to whether All Pro knows the parts or phones are counterfeit. This is especially true now that All Pro is attempting to assert counterclaims based on an allegation that it supposedly did not know the items it has acquired were counterfeit. [Dkt. No. 139 at ¶¶28-56]. ....

All Pro limits its production to documents evidencing its purchase of Samsung phones or OCTAs only from CVE or Nuku (a CVE subsidiary) – and excludes any other parts and any information relating to third parties other than CVE or Nuku.12 (Ex. C at pp. 21-29) Samsung knows that All Pro obtains parts (other than OCTAs) and that it obtains them from entities other than CVE or Nuku. All Pro also appears to be withholding all internal communications.
....

All Pro argues Request Nos. 66 and 69 are not relevant because Samsung supposedly does not assert a claim based on the unauthorized purchase or sale of OCTAs or PBAs, (Ex. C at pp. 26-28), Samsung does allege All Pro's participation in the scheme to sell unauthorized OCTAs and PBAs. [Dkt. No. 117 at ¶¶32-41] The documents are also relevant to Samsung's claims based on counterfeiting and trademark infringement, as explained above.

Dkt. 152 at 9-11. Samsung contends that All Pro wrongly asserts "that the requests should be limited to 2012-2015 and limited to (1) only documents pertaining to CVE and Nuku, (2) only documents pertaining to OCTAs and not any other parts, and (3) only to specific models numbers, colors, and carriers for phones." *Id.* at 11 n.13.

As to Request for Production No. 73, Samsung explains that,

[a]ccording to All Pro at the May 23, 2017 conference, it has produced some documents and communications relating to the sale of phones it acquired from CVE or Nuku, but is not producing documents relating to

phones All Pro purchased from any other entity and is not producing documents relating to any device other than phones. Based on that representation, Samsung continues to seek the production of any terms and conditions and warranties relating to All Pro's sale of Samsung phones or other Samsung devices to third parties since 2011. Samsung is entitled to discover what terms, conditions, and warranties All Pro is representing go along with all purported Samsung devices in connection with Samsung's counterfeiting and trademark infringement claims. FED. R. CIV. P. 26(b)(1). This is a relevant time period, and all devices bearing Samsung's purported trademark are relevant to these claims.

Samsung further seeks the necessary documents, such as invoices and purchase orders, to be able to track how much All Pro obtained from the sale of Samsung phones because this information is needed to calculate damages. Samsung must have sales documents identifying the specific devices sold so that it can trace the individual device to the conduct at issue – that is, a device identified as containing counterfeit parts or a phone that is generally identified as being counterfeit or bearing a false Samsung trademark. All Pro has no evidence of any purported burden (especially none disproportionate to the needs of the case) that prevents Samsung from obtaining this material evidence under Rule 26(b)(1).

*Id.* at 12-13 (footnote omitted). "Samsung withdraws the remainder of its [RFPs MTC] regarding Request No. 73 without prejudice," *id.* at 13 n.17, and explained at oral argument that it would agree to a time period of period of January 2012 to August 2015 if the scope of the request is limited as All Pro seeks.

As with other requests, the Agreed Protective Order's protections will address All Pro's concerns as to confidential and proprietary customer-related information, including documents that may be subject to non-disclosure agreements.

And the Court otherwise agrees with Samsung only in part. As discussed more fully above, Samsung's claims are limited to allegations regarding phones in connection with CVE, and the Court does not find that All Pro's counterclaims regarding its knowledge of those devices or parts at issue in Samsung's current allegations changes

the scope of discovery under Rule 26(b)(1). As the Court ordered above in connection with Request Nos. 30-31 and 37-38, Request Nos. 62-66, 69, 73, 122-125, and 132-135 are proper as to the roughly 16,318 model numbers for the phones referenced in Samsung's operative complaint.

The Court therefore GRANTS in part and DENIES in part Samsung's RFPs MTC as to as to Request for Production Nos. 62-66, 69, 73, 122-125, and 132-135 and ORDERS that All Pro must, in response to Request for Production Nos. 62-66, 69, 73, 122-125, and 132-135, produce all responsive documents and communications, internally or with any third party, from January 2012 to August 2015, relating to All Pro's purchase or sale of Samsung phones, OTCAs, or PBAs in connection with the 16,318 model numbers for the phones referenced in Samsung's operative complaint. Samsung must provide these model numbers to All Pro by Samsung, after which All Pro will be given 21 days to produce all responsive documents and electronically stored information as ordered here. The Court enters a protective order precluding any requirement for All Pro to further respond to Request for Production Nos. 62-66, 69, 73, 122-125, and 132-135 beyond what it has already produced and is ordered here to produce, subject to its supplementation obligations under Rule 26(e).

E.    Request for Production Nos. 85 and 118-121

Samsung's Request for Production No. 85 seeks "[a]ll documents reflecting All Pro's annual revenue for parts sales to distributors from 2008-2015"; Request for Production No. 118 seeks "[a]ll documents reflecting All Pro's annual revenue for parts sales from 2008-2015"; Request for Production No. 119 seeks "[a]ll documents reflecting

All Pro's annual revenue for phone sales from 2008-2015"; Request for Production No. 120 seeks "[a]ll documents reflecting All Pro's annual revenue for Samsung parts sales from 2008-2015"; and Request for Production No. 121 seeks "[a]ll documents reflecting All Pro's annual revenue for Samsung phone sales from 2008-2015."

Samsung argues that "[a]t the very core of this lawsuit lies Samsung's allegations that All Pro wrongfully profited by obtaining parts through unlawful means. These requests ask for documents showing All Pro's annual revenue for part sales and phone sales. All Pro has produced no documents." Dkt. No. 152 at 13. "To the extent these requests seek revenue relating to the parts acquired at auction, Samsung will limit the time period to 2012-2015, and limits the scope to revenue drive from the parts acquired at auction and revenue derived from any and all similar Samsung parts that All Pro obtained through other means." *Id.* And "Samsung agrees to exclude the 2008-2009 time period from these requests. But the requests cannot be limited to specific phones or to even Samsung phones because Samsung needs the comparison data." *Id.* at 14.

Samsung further asserts that, although "All Pro claims that it does not keep segregated spreadsheets separating out revenue made from phone sales or part sales in order to produce responsive information," "[t]he fact remains that this information exists in All Pro's records in some fashion," and "[i]n whatever manner in which this information is in All Pro's records, it should be produced so Samsung can calculate its damages." *Id.*

The Court agrees. All Pro explained at oral argument that its recordkeeping through QuickBooks does not allow for the kind of separate reporting that Samsung seeks. But that is not a reason to withhold this data altogether from Samsung, whose counsel explained that it likely will need to retain a forensic accountant but needs the information in any event to evaluate and support its alleged damages. And, the Court notes, under the Agreed Protective Order, "Confidential Attorney Eyes Only Information may be disclosed by the receiving party [to] ... experts or consultants." Dkt. No. 32 at 6.

Just as a responding party cannot withhold a 50-page report because only two pages contain responsive information – and cannot redact nonprivileged information from any responsive document because the information is not itself responsiveness – a responding party cannot properly refuse to produce any financial information because it cannot generate a report showing the specific revenue requested rather than a report that includes that and other revenue.

The Court determines that the requested information as stored in Quickbooks is relevant to Samsung's claims for damages and proportional to the needs of the case. If All Pro must produce a broader scope of revenue data that includes the requested data and additional date, that is what it is required to do. Accordingly, the Court GRANTS Samsung's RFPs MTC as to as to Request for Production Nos. 85 and 118-121 and ORDERS that, by **July 14, 2017**, All Pro must, in response to Request for Production Nos. 85 and 118-121, all responsive documents and electronically stored information.

F.      Request for Production No. 137

Samsung's Request for Production No. 137 seeks "[a]ll documents identifying former employees or contractors of Samsung who have received money or any other benefit from All Pro from January 1, 2011 - present."

Samsung explains that "All Pro initially refused to produce any documents showing benefits it provided to former Samsung employees or contractors based on a litany of objections" but "now asserts no objections and answers 'none.'" Dkt. No. 152 at 15. According to Samsung, "[t]here is no question that All Pro has provided benefits to former employees – including two cash payments of $5,000 to Chung" – and "All Pro should produce all responsive documents." *Id.*

At oral argument, All Pro's confirmed that there are no responsive documents and, in particular, there are no documents reflecting the $5,000 paid to Chung. However incredible Samsung may find that to be, a party "cannot produce what it does not have," and "so, "[c]learly, the court cannot compel [a party] to produce non-existent documents." *ORIX USA Corp. v. Armentrout*, No. 3:16-mc-63-N-BN, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016) (internal quotation marks omitted) (collecting cases).

The Court therefore DENIES Samsung's RFPs MTC as to as to Request for Production No. 137 and enters a protective order precluding any requirement for All Pro to further respond to Request for Production No. 137, subject to its supplementation obligations under Rule 26(e).

VI.    Award of expenses

Considering all of the circumstances here – including Samsung's failure to properly confer before filing its Rogs MTC and RFPs MTC, as discussed more fully above – and the Court's rulings above on those motions, the parties will bear their own expenses, including attorneys' fees, in connection with Samsung's Rogs MTC and RFPs MTC.

## Conclusion

For the reasons and to the extent explained above, the Court DENIES Defendant All Pro Distributing, Inc.'s Motion to Compel Compliance with Court's Order and Motion for Sanctions [Dkt. No. 123], GRANTS in part and DENIES in part Plaintiff Samsung Electronics America, Inc.'s Motion to Compel Defendant All Pro Distributing, Inc. to Withdraw Improper Objections and to Answer Plaintiff's Interrogatories [Dkt. No. 126], GRANTS in part and DENIES in part Plaintiff Samsung Electronics America, Inc.'s Motion to Compel Defendant All Pro Distributing, Inc. to Withdraw Improper Objections and Provide Responses to Plaintiff's Requests for Production That Comply with the Federal Rules of Civil Procedure [Dkt. No. 128], and DENIES Defendant All Pro Distributing, Inc.'s Opposed Motion for Leave to File Supplemental Evidence in Support of All Pro's Responses to Plaintiff's Motions to Compel [Dkt. No. 151].

Finally, out of an abundance of caution, the Court will enter this Memorandum Opinion and Order under seal because some of the underlying motion papers [Dkt. No. 132 & 141], from which the Court quoted what appear to be only non-confidential

passages, were filed under seal. The parties are further ORDERED to file a joint status report by **June 29, 2017** setting forth their views on whether this Memorandum Opinion and Order contains any confidential information – and, if so, where – and should remain sealed.

SO ORDERED.

DATED: June 26, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE