IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS AMERICA, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civil Action No. 3:15-CV-4108-D |
| YANG KUN "MICHAEL" CHUNG, THOMAS PORCARELLO, YOON-CHUL "ALEX" JANG, JIN-YOUNG SONG, | § § § § § | |
| Defendants, | § § | |
| and | § § | |
| ALL PRO DISTRIBUTING, INC., | § § § | |
| Defendant-Third-Party Plaintiff, | § § § | |
| VS. | § § | |
| CVE TECHNOLOGY GROUP, INC., | § § | |
| Third-Party Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In a prior opinion in this case—*Samsung Electronics America, Inc. v. Chung*, 2017 WL 635031, at *15 (N.D. Tex. Feb. 16, 2017) (Fitzwater, J.) ("*Samsung I*")—the court granted in part and denied in part defendant-third-party plaintiff All Pro Distributing, Inc.'s ("All Pro's") motion to dismiss under Fed. R. Civ. P. 9(b) and 12(b)(6), but it also granted

plaintiff Samsung Electronics America, Inc. ("Samsung")[1] leave to replead. Samsung filed a second amended complaint.[2] All Pro, with leave of court, filed a first amended counterclaim against Samsung and a third-party action against third-party defendant CVE Technology Group, Inc. ("CVE"), a repair facility that provided services in connection with certain Samsung products. Samsung now moves under Rule 12(b)(6) to dismiss several of All Pro's counterclaims for failure to state a claim on which relief can be granted. CVE moves under Rule 12(b)(6) and Rule 14 to dismiss All Pro's action against it. All Pro opposes both motions, and it moves in the alternative to amend its counterclaim and third-party complaint. For the reasons that follow, the court grants Samsung's motion, grants in part and denies in part CVE's motion, and grants All Pro leave to file a second amended counterclaim and first amended third-party complaint.

I

Because this case is the subject of the court's memorandum opinion and order in *Samsung I*, the court will recount only the facts and procedural history that are pertinent to

---

[1]Samsung is the U.S. subsidiary of the Korean company Samsung Electronics Co., Ltd. ("Samsung Ltd."). It merged with Samsung Telecommunications America, LLC ("Samsung Telecom"), another Samsung Ltd. subsidiary. The two subsidiaries now operate as one unit in the United States, but during the events giving rise to this case, Samsung Telecom was a separate entity. For ease of reference, the court will refer to the new, consolidated company rather than differentiate between the subsidiaries.

[2]Samsung filed a third amended complaint on March 9, 2018, after the briefing on these motions was completed. Because the filing of the third amended complaint does not alter the court's analysis, the court will refer to the second amended complaint in this memorandum opinion and order.

this decision.

This is an action by Samsung against All Pro and four Samsung employees—Yang Kun "Michael" Chung ("Chung"), Thomas Porcarello ("Porcarello"), Yoon-Chul "Alex" Jang, and Jin-Young Song (collectively, the "Employee Defendants")—whose employment involved the management and sale of Samsung parts. Samsung alleges that the Employee Defendants exerted control over Samsung's Services Operations Department and were involved in an unlawful scheme centering on service parts.[3] As it relates to All Pro, Samsung asserts that Chung, Porcarello, and other Samsung employees directed build kits to All Pro through a third party.[4] The build kits included, among other things, PBAs (the "brains" of Samsung cell phones) and OCTAs (the touch screens used on the devices.). Although the OCTAs bore Samsung's registered trademark, Samsung intended the parts to be used for servicing, and it did not authorize either part to be resold. Samsung alleges that the third party constructed phones from the build kits and then routed them to All Pro for distribution.

---

[3]In deciding this Rule 12(b)(6) motion, the court construes All Pro's first amended counterclaim and third-party complaint in the light most favorable to All Pro, accepts all well-pleaded factual allegations, and draws all reasonable inferences in its favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

[4]Samsung also alleges that the scheme involved designing and rigging an auction process to allow select companies, including All Pro, to obtain Samsung parts at a significant discount.

In Samsung's second amended complaint,[5] it asserts claims against All Pro for violating the Lanham Act and the Texas Trademark Act ("TTA"), violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), aiding and abetting breach of fiduciary duties, tortious interference with contract, civil conspiracy, and misappropriation of trade secrets.[6]  In All Pro's first amended counterclaim, it asserts counterclaims for fraudulent misrepresentation, fraud by non-disclosure, and negligent misrepresentation, in addition to its original counterclaims for frivolous lawsuit and business disparagement.  All Pro's counterclaims all rely on the premise that it purchased allegedly counterfeit mobile devices based on Samsung's representations that such devices were authentic.

After obtaining leave of court, All Pro filed a third-party action against CVE.  In its third-party complaint, All Pro asserts claims against CVE for contribution, under Tex. Civ. Prac. & Rem. Code Ann. § 33.015 (West 2018) ("Chapter 33"), and statutory indemnity, under Tex. Civ. Prac. & Rem. Code Ann. § 82 (West 2018) ("Chapter 82").  All Pro alleges that it acquired the purportedly counterfeit phones from CVE, and that CVE is the "third-party" to which Samsung refers in its second amended complaint.  All Pro alleges that CVE illegally assembled the phones, represented that they were authentic, and sold them to All

---

[5]The second amended complaint has been amended.  *See supra* note 2.

[6]The second amended complaint also alleges against the Employee Defendants claims of federal trademark infringement, Texas trademark infringement, civil RICO, breach of contract, breach of fiduciary duties, civil conspiracy, and misappropriation of trade secrets.

Pro.[7]

Samsung now moves under Rules 12(b)(6) and 9(b) to dismiss All Pro's counterclaims for fraudulent misrepresentation, fraud by non-disclosure, and negligent misrepresentation. CVE moves under Rules 12(b)(6) and 14 to dismiss All Pro's claims against it. All Pro opposes both motions, and, in the alternative, requests leave to file a second amended counterclaim and first amended third-party complaint.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive Samsung's motion to dismiss, All Pro must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be

---

[7]It is unclear from the pleadings to what extent CVE was authorized to deal in Samsung products. All Pro alleges that it believed CVE was an authorized Samsung private service center, providing services for Samsung only. *See* 3d Party Compl. ¶ 21.

enough to raise a right to relief above the speculative level [.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U. S. at 555).

## III

Samsung moves to dismiss All Pro's counterclaims for fraudulent misrepresentation, fraud by non-disclosure, and negligent misrepresentation, contending that All Pro has not pleaded facts sufficient to meet the heightened pleading standard of Rule 9(b).

## A

"[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008) (citations omitted). "Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud."  *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013).  "At a minimum, Rule 9(b) requires allegations of the particulars of time,

place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted). More colloquially, All Pro must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Because Rule 9(b) must be "read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief," "punctilious pleading detail" is not required. *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (Fitzwater, J.) (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL–CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)) (internal quotation marks omitted). "The court's key concern in assessing a complaint under Rule 9(b) is to determine whether the plaintiff seeks to redress specific wrongs or whether the plaintiff instead seeks the opportunity to search out actionable wrongs." *Garcia v. Boyar & Miller, P.C.*, 2007 WL 2428572, at *4 (N.D. Tex. Aug. 28, 2007) (Fitzwater, J.) (quoting *FDIC v. Gaubert*, No. 3-90-1196-D, slip op. at 7 (N.D. Tex. Sept. 4, 1990) (Fitzwater, J.)).

## B

The court first examines All Pro's fraudulent misrepresentation counterclaim. All Pro's first amended counterclaim alleges:

> Samsung represented to All Pro that the mobile devices sold to All Pro were assembled by CVE and/or TDI using original parts provided by Samsung. Thus, All Pro justifiably believed it acquired authentic Samsung products, and sold the same authentic products on the open market. All Pro did not have any reason to know or to suspect that the mobile devices assembled by CVE, that it purchased from Samsung and CVE, were allegedly counterfeit, nor did Samsung ever inform All Pro that those Samsung mobile devices or products were counterfeit.

1st Am. Countercl. ¶ 26. All Pro also avers:

> [a]t all relevant times, Samsung represented to All Pro that mobile devices offered for sale by Samsung and an unnamed third party were authentic Samsung mobile devices. Samsung knowingly made these material representations, as a positive assertion, in connection with offering to sell (and selling) the mobile devices to All Pro.

*Id.* ¶ 28.

These paragraphs in the first amended counterclaim allege the content of the false representations, but they do not connect the content to the date and location of the representations, the identity of the person making the representations, and what the person obtained thereby. All Pro merely alleges that these representations were made "[a]t all relevant times," and it does not point to a single specific misrepresentation made at a particular time by a particular person.

All Pro cites portions of the first amended counterclaim that identify various employees or divisions of Samsung. For example, All Pro alleges:

> [i]n or about February 2009, All Pro met with Lynn Bond, Vice President/GM of Samsung's Service and Operations Divisions, at the Reverse Logistics Association tradeshow. Mr. Bond informed All Pro that Samsung was looking for a company to

> purchase its excess and obsolete inventory instead of paying third party companies to scrap and dispose of the inventory.

*Id.* ¶ 6. And All Pro avers that, "[i]n or about March 2009, Samsung's Accessory Division contacted All Pro regarding All Pro purchasing products that Samsung considered excess and/or obsolete. All Pro responded affirmatively that it was willing to purchase Samsung's unwanted inventory." *Id.* ¶ 7. But these paragraphs do not specify what representations were made about Samsung products and inventory at those times. All Pro also fails to allege what the person making the misrepresentation obtained thereby. The court therefore holds that All Pro's counterclaim for fraudulent misrepresentation does not comply with the requirements of Rule 9(b).

C

All Pro's counterclaim for fraud by non-disclosure is similarly defective. For example, All Pro alleges the general content of misrepresentations by omission: "all of All Pro's business transactions with Samsung were with the reasonable understanding that the Samsung products offered for sale to and sold to All Pro, and the Samsung products purchased by All Pro from Samsung and CVE were authentic and not counterfeit." *Id.* ¶ 38. But All Pro fails once again to specify the date and location of the non-disclosure, the identity of the person who failed to make the disclosure, and what the person obtained thereby. Instead, All Pro generally asserts:

> [b]ased on Samsung's false representations, All Pro believed that all Samsung mobile devices offered for sale by Samsung and CVE were authentic. The authenticity of the Samsung mobile devices sold by Samsung and CVE to All Pro was and is

> a material fact. (Samsung's representations regarding the
> authenticity of the mobile devices sold to All Pro are referred to
> as the "Phone Representations".)

*Id.* ¶ 29. All Pro's designation of relevant interactions as "Phone Representations" does not allege any particular instance of a misrepresentation by omission with the degree of specificity that Rule 9(b) requires.

The court therefore holds that All Pro has not met the heightened pleading standard of Rule 9(b) with respect to its counterclaim for fraudulent misrepresentation by omission of fact.

## D

The court next addresses All Pro's negligent misrepresentation claim. "Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs.*, 343 F.3d at 723.

Here, it is undisputed that All Pro's negligent misrepresentation claim depends on the same factual basis as its fraudulent misrepresentation claim. *See id.* (holding that Rule 9(b) applies when "fraud and negligent misrepresentation claims are based on the same set of alleged facts"). Thus in pleading its negligent misrepresentation claim, All Pro must allege facts with the particularity required by Rule 9(b). The court holds that All Pro has failed to do so for the reasons specified *supra* in § III(B) concerning All Pro's fraudulent misrepresentation claim.

Accordingly, Samsung's motion to dismiss All Pro's counterclaims for fraudulent

misrepresentation, fraudulent non-disclosure, and negligent misrepresentation is granted.[8]

E

All Pro moves in the alternative for leave to replead its counterclaims. Samsung maintains that, because the alleged fraudulent acts fall outside the four-year statute of limitations, leave to amend would be futile and should not be granted.

The court recognizes that futility of amendment is properly considered when deciding whether to grant leave to amend. *See F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) ("leave to amend need not be granted when it would be futile to do so"). Nevertheless, the court's almost unvarying practice when futility is raised is to address the merits of the claim in the context of a Rule 12(b)(6) or Rule 56 motion.

> The court only infrequently considers the merits of new causes of action in the context of Rule 15(a). The court prefers instead to do so in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer. Therefore, the court suggests no view regarding the merits of these claims, leaving that question to a decision in response to an appropriate motion.

*Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *2 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.).

Although the court is dismissing All Pro's counterclaims, it will permit All Pro to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure

---

[8]Because the court holds that All Pro's counterclaims based on fraud do not satisfy the requirements of Rule 9(b), it does not address Samsung's other arguments for contending that All Pro's counterclaims are deficient.

- 11 -

pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") (internal quotation marks and citation omitted). Plaintiffs are often able to state plausible claims for relief when amending after a motion to dismiss has been filed. *See, e.g., Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (after twice granting motions to dismiss, concluding that plaintiff's second amended complaint stated claim on which relief could be granted).[9] Because All Pro has stated that it is willing to cure any defects that the court identifies, the court grants All Pro 28 days from the date this memorandum opinion and order is filed to file a second amended counterclaim.

IV

The court now considers CVE's motion to dismiss All Pro's third-party complaint for failure to state a claim under Rule 12(b)(6) and as an improper third-party action under Rule 14. The court first determines whether All Pro has sufficiently pleaded a contribution claim under Chapter 33 and a statutory indemnity claim under Chapter 82.

A

"Contribution is allowed in Texas only among joint tortfeasors." *CBI NA-CON, Inc. v. UOP Inc.*, 961 S.W.2d 336, 339 (Tex. App. 1997, pet. denied) (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)). Where contribution is available, for the

---

[9]These principles apply to counterplaintiffs as well.

party seeking contribution to have a right to it, the party from whom contribution is sought "must have some real or potential liability in damages to the plaintiff." *CBI NA-CON, Inc.*, 961 S.W.2d at 339 (citing Tex. Civ. Prac. & Rem. Code Ann. § 33.016(a)). "A defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought." *CBI NA-CON, Inc.*, 961 S.W.2d at 339 (citing *Shoemake v. Fogel*, 826 S.W.2d 933, 935 (Tex. 1992)). Thus Chapter 33 only applies to this case if Samsung could bring any of its original claims against CVE. *See CBI NA-CON, Inc.*, 961 S.W.2d at 339 (stating that only way Chapter 33 could apply was if plaintiff could also bring its claims of negligence, breach of warranty, or strict products liability, originally asserted against defendants, against party from whom defendants sought contribution).

B

CVE maintains that All Pro's contribution claim must be dismissed because the allegations of the third-party complaint, taken as true, do not demonstrate that Samsung could bring against CVE any of the claims that Samsung originally alleged against All Pro. The court therefore considers whether Samsung could have brought any of its original claims against CVE, turning first to Samsung's trademark infringement claim under the TTA.

The court applies the elements of a federal trademark violation when analyzing a claim under the TTA. *See Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 738 (Tex. App. 2012, no pet.) ("[T]he Texas common law elements of unfair competition, including trademark, are no different than those under federal trademark law. Courts therefore look to the Lanham Act and cases thereunder for generally accepted principles of substantive

trademark law and to discern meaning and interpretation of the state law provisions.")
(citations omitted); *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App. 2001, pet. denied) ("A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'") (quoting *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App. 1992, no writ)).

"To succeed on a trademark infringement claim, a plaintiff first must show ownership of a legally protectable mark, and then it must establish infringement of the mark." *TGI Friday's, Inc. v. Great Nw. Rest., Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). Under the Lanham Act, infringement exists if a person

> uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive.

*Id.* (internal quotation marks and citations omitted). A device built from genuine parts can still qualify as a "reproduction, counterfeit, copy, or colorable imitation" if the process used to construct it was different from that which the mark holder used to construct its genuine products. *Mary Kay, Inc. v. Weber*, 601 F.Supp.2d 839, 853 (N.D. Tex. 2009) (Fish, J.). In these circumstances, the "mark holder [needs] to show only that '(i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark.'" *Id.*

Relevant, in part, to a potential trademark claim by Samsung against CVE, All Pro alleges:

> [i]n the Second Amended Complaint, Samsung alleges that a "third party" received genuine Samsung component parts directly from Samsung and assembled the parts into at least 16,318 purportedly counterfeit Samsung mobile devices, which the "third party" thereafter sold.

3d Party Compl. ¶ 17.

> Samsung further claims the "third party" did not use the same procedures, facilities, skilled and trained workers, equipment and technology that Samsung uses to assemble its phones, and the allegedly counterfeit phones are not genuine because they purportedly do not meet Samsung's rigorous technical and quality specifications. (2d. Am. Compl. at ¶¶ 36-37).

*Id.* ¶ 18. All Pro also asserts that, "in written discovery Samsung named CVE as one of the third parties that allegedly assembled and sold the counterfeit phones to All Pro." *Id.* ¶ 19.

And All Pro alleges:

> [u]pon further information and belief, CVE possessed all of the equipment and technology needed to assemble the mobile devices according to Samsung's allegedly rigorous conditions and specifications. Moreover, upon information and belief, CVE's employees are trained and instructed by Samsung with a Samsung supervisor/engineer present at CVE's facility at all times, such that the mobile devices CVE assembled are genuine Samsung products and are not counterfeit.

*Id.* ¶ 20.

CVE contends that All Pro's third-party complaint repeatedly alleges that CVE is an authorized provider of Samsung products. CVE argues that All Pro cannot assert simultaneously that CVE is an authorized provider and that it sold counterfeit phones without

Samsung's consent.  CVE thus maintains that All Pro has not alleged facts that show an element necessary to a trademark violation: that CVE used Samsung's mark without its consent.  The court disagrees.

Under Rule 8(d), a party should not assert inconsistent or alternative allegations "unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses."  5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1285, at 741 (3d ed. 2004); *see also Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.").  But here, All Pro has explained the apparent conflict in its two positions: All Pro believed the phones were authentic when they were acquired from CVE,[10] but if it is determined that All Pro purchased counterfeit phones, it seeks contribution from CVE, as the seller of the phones.[11]  At this point in the process, with limited discovery, All Pro could

---

[10]The third party complaint alleges:

> All Pro denies it purchased counterfeit Samsung phones from CVE (or anyone else), and disputes Samsung's claims that CVE did not have authority to assemble Samsung phones and does not use the same procedures, facilities, skilled and trained workers, equipment and technology that Samsung uses to assemble its phones.

3d Party Compl. ¶ 24.

[11]The third party complaint alleges:

> [a]lthough All Pro denies all liability whatsoever to Samsung, to

remain legitimately in doubt about the facts in question.

All Pro's pleading of inconsistent facts does not undermine its assertion of CVE's potential liability to Samsung based on a state trademark infringement claim. Taking the well-pleaded facts in the third-party complaint as true, and viewing them in the light most favorable to All Pro, All Pro has pleaded all necessary elements of a trademark claim by Samsung against CVE. It has alleged: (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive. The third-party complaint asserts that CVE sold phones to All Pro that "[did] not meet Samsung's rigorous technical and quality specifications." 3d Party Compl. ¶ 18. The third-party complaint also alleges that CVE assembled cell phones bearing the exact registered Samsung trademark from parts that were designated for the limited purpose of repairing Samsung devices; that Samsung

---

the extent All Pro is held liable for any damages, All Pro is informed and believes, and based thereon alleges, it is entitled to equitable contribution from CVE proportionate to its share of liability . . . Any liability on the part of All Pro, if any, is derivative only, arising not from All Pro's conduct, but solely from the acts, breaches and omissions of CVE in light of Samsung's disclosures in discovery regarding CVE, the allegations that CVE improperly and illegally assembled counterfeit phones and sold them to All Pro, and because CVE represented to All Pro that the phones it purchased from CVE were authentic.

3d Party Compl. ¶ 25.

assembles its phones in accordance with rigid assembly protocols, and the phones made from build kits could not possibly meet these standards; that CVE sold the phones to All Pro, which distributed them to the market; and that none of these phones met Samsung's assembly protocols. *See id.* ¶ 18 (citing 2d Am. Compl. ¶ 32-35); *see also Samsung I*, 2017 WL 635031, at *4 (holding same on same pleaded facts).

These allegations, taken as true, plausibly plead that Samsung is the owner of a trademark for the relevant devices and that its mark has been infringed. *See id.* ¶ 18 (citing 2d Am. Compl. ¶ 37) ("The assembled phones contained Samsung's signature mark 'Samsung'"). The use of the Samsung trademark and parts in the phones would likely cause confusion in buyers in the marketplace. *See id.* Moreover, CVE's failure to comply with Samsung's standard quality specifications indicates that the allegedly counterfeit phones were sold without Samsung's consent. The court thus concludes that All Pro has pleaded a plausible claim against CVE for trademark infringement under the TTA.

CVE maintains that All Pro is precluded from seeking contribution based on a TTA claim because the TTA is patterned after the Lanham Act, which specifically forecloses contribution claims. The court disagrees. "[T]he construction given to the Lanham Act should be examined as persuasive authority for interpreting and construing the Texas Act." *Condom Sense, Inc.*, 390 S.W.3d at 738 n.2. But CVE offers no rationale for applying this principle to invalidate a separate substantive right to contribution arising from a statute that exists apart from the TTA. And the court knows of no authority supporting such a reading

of the interaction between Chapter 33 and the TTA.[12]  The court thus holds that CVE has not shown that All Pro is precluded from seeking recovery under Chapter 33.

Because All Pro has alleged facts indicating that Samsung, at the very least, could have brought its state trademark claim against CVE, the court holds that All Pro has alleged facts that plausibly plead a contribution claim against CVE.[13]  Accordingly, the court denies CVE's motion to dismiss All Pro's contribution claim under Chapter 33.

C

The court now turns to All Pro's statutory indemnity claim under Chapter 82, which provides:

> [a] manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

Tex. Civ. Prac. & Rem. Code Ann. § 82.002 (West 2018).  "[A] manufacturer's duty to indemnify under Chapter 82 is established when the plaintiff is a seller, the party the plaintiff seeks indemnification from is a manufacturer, and the underlying litigation, in which the seller has incurred a loss, is a products liability action."  *Manufacturers Collection Co. v.*

---

[12]All Pro maintains that CVE has offered no argument regarding why Chapter 33 should be preempted by federal trademark law.  Preemption does not apply where the contribution claim is based on a violation of a state law: the TTA.  The court thus does not address the preemption arguments.

[13]The court therefore does not address the pleading of the contribution claim based on the other claims in the underlying suit.

*Precision Airmotive, LLC*, 2015 WL 3456620, at *14 (N.D. Tex. June 1, 2015) (Lindsay, J.) (citing *FLS Miljo, Inc. v. Munters Corp.*, 682 F.Supp.2d at 689 (citing Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a))).

A "products liability action" is defined as

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem. Code Ann. § 82.001 (West 2018). In a products liability suit, liability is imposed "only for products sold in a defective condition *unreasonably dangerous* to the user or consumer." *See Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995) (citing Restatement (Second) of Torts § 402A(1) (1965)) (emphasis added). "A product may be unreasonably dangerous because of a defect in manufacturing, design, or marketing." *Caterpillar, Inc.*, 911 S.W.2d at 382.

CVE maintains that All Pro's Chapter 82 indemnity claim must be dismissed because the allegations of the third-party complaint, taken as true, do not demonstrate that Chapter 82 applies because the underlying lawsuit does not involve products liability claims. All Pro responds that Samsung's claims represent a products liability action because the counterfeit phones are defective products that caused economic loss to Samsung. All Pro therefore maintains that, as a seller of mobile devices, it has a duty to be indemnified by CVE, a manufacturer of the devices.

All Pro has not alleged personal injury, death, or property damages. And All Pro pleads no facts that, taken as true, enable the court to draw the reasonable inference that the counterfeit phones were dangerous. The court thus holds that All Pro has not adequately pleaded that any of the claims in the underlying litigation qualify as products liability claims, and Chapter 82 does not apply to the suit. Because All Pro has not plausibly pleaded a claim for statutory contribution against CVE, the court dismisses the claim. The court grants All Pro leave to amend for the same reasons discussed *supra* in § III(E).

D

CVE also maintains that All Pro's third-party complaint should be dismissed under Rule 14 because All Pro has not established that its contribution and indemnity claims are derivative of CVE's liability to Samsung.

Rule 14(a) provides that a defending party, as a third-party plaintiff, may sue "a nonparty who is or may be liable to it for all or part of the claim against it." The policy underlying Rule 14 is to promote judicial economy by eliminating circuitous actions. *See* 6 Wright & Miller, *supra*, § 1442, at 339. Impleader is appropriate, however, "only in cases where the third party's liability [is] in some way derivative of the outcome of the main claim." *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir. 1967); *see also Am. Express Travel Related Servs. Co. v. Beaumont*, 2002 WL 31298867, at *2 (N.D. Tex. Oct. 9, 2002) (Buchmeyer, J.) ("[T]he procedural device of impleader [may only be used] when the third party defendant's potential liability is dependent upon the outcome of the main claim."). In other words, "the third party must necessarily be liable over to the

defendant for all or part of the plaintiff's recovery." *Joe Grasso & Son*, 380 F.2d at 751.

"The third-party procedure is not designed as a vehicle for the trying together of separate and distinct causes of action, or for the introduction, into the main action, of several parallel, but independent, actions, or separate and independent claims [.]" *Majors v. Am. Nat'l Bank of Huntsville*, 426 F.2d 566, 568 (5th Cir. 1970) (per curiam) (internal quotation marks and citations omitted). If the third-party claim is an entirely independent claim, it will be dismissed even if it arises from the same set of facts as the original claim. *See Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, 2005 WL 2124126, at *4 (N.D. Tex. Sept. 1, 2005) (Fish, C.J.) (citing *Joe Grasso & Son*, 380 F.2d at 751).

> The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against [him] by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.

6 Wright & Miller, *supra*, § 1446, at 431-34.

In this case, All Pro's contribution and indemnity claims against Samsung depend on the outcome of Samsung's claims against All Pro. "The secondary or derivative liability notion is central [to Rule 14] and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity [or] contribution[.]" *Id.* § 1446, at 415-21. Because All Pro's claims are properly brought under Rule 14, the court denies CVE's motion to dismiss the third-party complaint on this ground.

\* \* \*

For the reasons explained, the court grants Samsung's motion to dismiss All Pro's fraudulent misrepresentation, fraud by non-disclosure, and negligent misrepresentation counterclaims in its first amended counterclaim, and it grants in part and denies in part CVE's motion to dismiss All Pro's third-party complaint. The court grants All Pro 28 days from the date this memorandum opinion and order is filed to file a second amended counterclaim and a first amended third-party complaint.

**SO ORDERED**.

March 29, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE